IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDRIA NICOL RIVERA;<br>ARGM GLOBAL LLC;<br>CITIBANK, N.A.;<br>COMMUNITY FEDERAL SAVINGS BANK;<br>FORIS DAX, INC. d/b/a CRYPTO.COM; and<br>CROSS RIVER BANK,<br><br>Defendants. | Civil Action No. 6:25-cv-12713-TMC<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Jury Trial Requested) |

Plaintiff Allen Temple Community Economic Development Corporation ("ATCEDC"), by and through undersigned counsel, alleges as follows:

## PARTIES

1. Plaintiff ATCEDC is a South Carolina non-profit corporation with its principal place of business in Greenville, South Carolina. ATCEDC provides affordable housing to 83 low-income families in the Greenville, South Carolina area.

2. Defendant Alexandria Nicol Rivera ("Rivera") is, upon information and belief, an individual residing at 25064 SW 107th Avenue, Homestead, Florida 33032. Rivera is the sole member and authorized signatory of Defendant ARGM Global LLC, and the sole account holder of a personal Citibank checking account ending in 6895 and a cryptocurrency account at Foris DAX, Inc. d/b/a Crypto.com, through which the fraud proceeds described herein were received, distributed, and laundered.

3. Defendant ARGM Global LLC ("ARGM Global") is a Florida limited liability company formed on or about May 19, 2025, with its registered address at 25064 SW 107th Avenue, Homestead, Florida 33032. ARGM Global held a Citibank CitiBusiness checking account ending in 8217 through which the full $310,583.74 in stolen funds was received. Rivera is the purported 100% owner and sole authorized signer of ARGM Global.

4. Defendant Citibank, N.A. ("Citibank") is a national banking association chartered under federal law with its main office in New York, New York, and offices and branches throughout the United States, including in the State of Florida. Citibank opened and maintained the ARGM Global LLC business checking account ending in 8217 into which Plaintiff's stolen funds were deposited on August 8, 2025, as well as the personal checking account of Rivera ending in 6895 through which those funds were subsequently redistributed to other accounts. Citibank may be served through its registered agent.

5. Defendant Community Federal Savings Bank ("CFSB") is a federally chartered savings bank with its principal office at 5 Penn Plaza, 14th Floor, New York, New York 10001. CFSB serves as the program bank and charter partner for the Foris DAX, Inc. d/b/a Crypto.com fiat wallet product and received wire transfers of $17,400.00 and $95,000.00 in stolen funds from Rivera's personal Citibank account. CFSB may be served through its registered agent or legal department.

6. Defendant Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com") is a corporation registered as a money services business with the Financial Crimes Enforcement Network, with its principal U.S. address at 1111 Brickell Avenue, Suite 2725, Miami, Florida 33131. Crypto.com operates an online cryptocurrency exchange and fiat wallet platform through which Rivera held an account bearing CFSB account number ending in 3556, and through which $112,400.00 of Plaintiff's stolen funds was converted to XRP cryptocurrency and withdrawn to an external blockchain wallet address. Crypto.com may be served through its registered agent, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

7. Defendant Cross River Bank ("Cross River") is a New Jersey state-chartered bank with its principal office at 885 Teaneck Road, Teaneck, New Jersey 07666. Cross River received at least $210,000.00 in wire transfers originating from Plaintiff's stolen funds on August 13–

14, 2025. Cross River may be served through its legal department at 885 Teaneck Road, Teaneck, New Jersey 07666.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part under 18 U.S.C. § 1030 and under Uniform Commercial Code Article 4A as adopted in South Carolina, S.C. Code Ann. § 36-4A-101 et seq. This Court has supplemental jurisdiction over all related state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over all Defendants because they directed their fraudulent activities at a South Carolina non-profit corporation, caused injury in this District, and committed acts in furtherance of their scheme with direct effects in South Carolina. Defendants Citibank, CFSB, Crypto.com, and Cross River each regularly conduct and solicit business in South Carolina and are subject to this Court's jurisdiction.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District, Plaintiff is headquartered in this District, and Plaintiff suffered all damages here.

## FACTS

11. ATCEDC provides affordable housing to 83 low-income families in the Greenville, South Carolina area.

12. ATCEDC held a mortgage loan with Greenville Housing Fund ("GHF"), secured by residential rental properties. The loan contained a five-year balloon provision that matured in 2025. Rather than refinance the loan, ATCEDC decided to pay it off in full.

13. On or about August 6, 2025, ATCEDC requested from GHF the payoff amount and wiring instructions for the loan payoff.

14. On or about August 8, 2025, ATCEDC received what appeared to be a legitimate PDF attachment from GHF containing payoff information and wiring instructions.

15. Unknown to ATCEDC, Defendants had unlawfully accessed, intercepted, and modified the email communications between ATCEDC and GHF, substituting a fraudulent PDF attachment containing wiring instructions directing payment to an account controlled by

Defendants, specifically the Citibank CitiBusiness checking account of Defendant ARGM Global LLC, account ending in 8217, a newly formed shell limited liability company controlled by Defendant Rivera.

16. The fraudulent wiring instructions directed ATCEDC to wire its loan payoff funds to Citibank, N.A., for the benefit of ARGM Global LLC, account ending in 8217.

17. In reliance on those instructions, ATCEDC authorized United Community Bank to wire $310,583.74 from ATCEDC's account to the ARGM Global Citibank account on August 8, 2025.

18. The wire was completed and the funds were credited to the ARGM Global Citibank account. The Fedwire payment order transmitted to Citibank identified the beneficiary as "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609" and stated the purpose as "PAYOFF LOAN GHF20190906," which on its face described a loan payoff payment to Greenville Housing Fund, not a payment to ARGM Global LLC.

19. On or about August 14, 2025, after ATCEDC contacted GHF to confirm receipt of the payoff, GHF advised that it had not received any funds and had not sent the wire instructions ATCEDC received. ATCEDC then realized it had been the victim of a Business Email Compromise fraud scheme and reported the matter to the Greenville Police Department and the FBI.

20. The fraudulent scheme resulted in ATCEDC losing $310,583.74, a devastating financial blow to this small non-profit organization that threatens its ability to maintain affordable housing for 83 low-income families.

21. ARGM Global was a newly formed shell company with no legitimate business operations at the time it received Plaintiff's funds. ARGM Global was formed on May 19, 2025, less than three months before it received the $310,583.74 wire from ATCEDC. Citibank's records show the ARGM Global account carried a negative balance of $70.95 as of June 30, 2025, and a balance of only $88.94 as of July 31, 2025.

22. The Citibank account opening documents for ARGM Global identified Rivera as the 100% owner, sole member, and sole authorized signer, using her name, date of birth, driver's

license ending in 5530, Social Security number, address, email, and phone number, the same identity information that appears across the financial accounts used in the fraud scheme described herein.

23. Citibank also held a personal checking account for Rivera ending in 6895 linked to the same address, phone number, and Social Security number as the ARGM Global business account. Both accounts, the business account that received the stolen wire and the personal account used to distribute the proceeds, were held within Citibank's systems under the same customer identity.

24. Immediately after receiving Plaintiff's $310,583.74 on August 8, 2025, Rivera began distributing the stolen funds from the ARGM Global Citibank account to her personal Citibank account ending in 6895 through a series of internal transfers.

25. On August 8, 2025, approximately $300,000.00 was transferred from the ARGM Global account to Rivera's personal Citibank account. From there, Rivera distributed the funds in a series of outgoing wire transfers to multiple institutions.

26. Among other transfers, $17,400.00 was wired to Rivera's fiat wallet account at Crypto.com, bearing CFSB account ending in 3556, which she had opened on August 5, 2024. This account had a consistent history of receiving wire deposits and immediately converting those funds to cryptocurrency for withdrawal to external wallets.

27. When Crypto.com opened this account on August 5, 2024, its Know Your Customer identity verification system, powered by vendor Onfido, detected a mismatch between the name on Rivera's government-issued identification document and the name provided during account registration. Rather than flagging or rejecting the application, Crypto.com's internal procedures bypassed the mismatch, as reflected in Crypto.com's records, which carry the internal account tag "*bypass_doc_name_mismatched*" for this account.

28. Upon receipt of the $17,400.00 wire on August 6, 2025, Crypto.com converted the entire deposit to 5,653.717 XRP and allowed the immediate withdrawal of those XRP to an external blockchain wallet address on August 7, 2025.

29. Upon receipt of a $95,000.00 wire on August 12, 2025, Crypto.com converted the entire deposit to 28,089.958 XRP and allowed the immediate withdrawal of those XRP to the same

external blockchain wallet address within approximately two hours of receipt, on August 12, 2025.

30. In total, $112,400.00 of Plaintiff's stolen funds was converted into approximately 33,743 XRP and withdrawn from Crypto.com to the external wallet address identified above. Crypto.com earned exchange-rate spread and fee revenue from the conversion of Plaintiff's stolen funds to XRP. The converted funds remain traceable on the public XRP Ledger blockchain.

31. On August 14, 2025, Citibank's Wire Investigations Unit sent an email to CFSB's fraud department attaching an HHL notice bearing reference numbers CIT250814-010214 and CIT250814-010261, identifying the two wire transfers as unauthorized BEC fraud and explicitly requesting that CFSB advise whether funds were available for recall. The notice stated that the wires were sent with fraud funding and that the BEC wire had been credited to the remitting account before the outgoing wires were sent.

32. By August 14, 2025, all $112,400.00 had already been converted to XRP and withdrawn from the Crypto.com platform. CFSB did not substantively respond to this wire recall request for approximately five months. On January 5, 2026, CFSB's Fraud/Risk Analyst, Shraddha Nyati, CAMS, responded by asking Citibank to share more details about the transactions and the fraud event, despite having had months to investigate.

33. On August 15, 2025, three days after the $95,000.00 wire had been converted to XRP and withdrawn, Crypto.com sent an automated email to Rivera's account stating it was limiting account features in response to a dispute notification from the issuer. All crypto withdrawals were suspended at that point, but all $112,400.00 of Plaintiff's funds had already been withdrawn.

34. The Rivera Crypto.com account did not begin with the Allen Temple fraud. Records produced by Crypto.com show that from August 5, 2024 through August 12, 2025, the account engaged in a consistent pattern of receiving wire deposits and immediately converting those funds to Bitcoin or XRP for withdrawal to at least ten different external cryptocurrency wallet addresses. This 13-month pattern of suspicious activity was never flagged or reported by Crypto.com or CFSB, and no Suspicious Activity Report appears to have been filed.

35. All activity in the Rivera Crypto.com account during this 13-month period was conducted from a single Android device, operating from the Eastern time zone, using two AT&T subscriber IP addresses. The identities of the AT&T subscribers associated with those IP addresses remain unknown and are the subject of ongoing discovery. A T-Mobile IP address was used on the account creation date and may identify a different actor who established the account.

36. When Citibank received Plaintiff's $310,583.74 wire on August 8, 2025, the payment order before it listed both "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609" in the beneficiary field, stated the purpose as "PAYOFF LOAN GHF20190906," and identified the beneficiary account as the newly opened ARGM Global business account with a prior near-zero balance.

37. At the same time, Citibank held in its records Rivera's personal checking account ending in 6895, linked to the same address, phone number, and Social Security number as the ARGM Global business account, showing that both accounts were operated under Rivera's identity, not Greenville Housing Fund's.

38. The simultaneous appearance of "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND" in the beneficiary field, coupled with the loan payoff purpose and the newly opened ARGM Global account with a minimal prior balance, placed Citibank on actual notice that the name of the intended beneficiary and the account identified in the order referred to different persons.

39. Upon information and belief, one or more Citibank employees responsible for reviewing or processing the August 8, 2025 Fedwire payment order actually recognized, before acceptance, that "Greenville Housing Fund" and the ARGM Global account identified different persons, yet processed the payment order and credited $310,583.74 to the ARGM Global account anyway.

40. Despite this actual knowledge, Citibank processed the payment order and credited $310,583.74 to the ARGM Global account, enabling the loss of those funds to Plaintiff.

## FOR A FIRST CAUSE OF ACTION

**Violation of UCC Article 4A, S.C. Code Ann. § 36-4A-207(b)(2)**

***(Against Defendant Citibank, N.A.)***

41. Plaintiff repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

42. S.C. Code Ann. § 36-4A-207(b)(2) provides that a beneficiary's bank is liable for losses from a funds transfer where it processes a payment order knowing that the name of the beneficiary stated in the order and the account number identified in the order identify different persons.

43. Citibank was the beneficiary's bank for the August 8, 2025 payment order transmitting $310,583.74 from United Community Bank to ARGM Global LLC account ending in 8217.

44. The payment order received by Citibank identified two different names, "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND," with the address of Greenville Housing Fund and a stated purpose of paying off a GHF mortgage loan, so the name on the account and the stated beneficiary and purpose identified different entities.

45. Citibank had actual knowledge of this misdescription when it accepted the payment order, as shown by the facial conflict between "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND" in the beneficiary field, the explicit purpose field stating "PAYOFF LOAN GHF20190906," Citibank's internal records linking the ARGM Global account and Rivera's personal account by the same address, phone number, and Social Security number, the newly opened, near-zero-balance status of the ARGM Global account, and the actual recognition of the mismatch by one or more Citibank employees responsible for reviewing or processing the order.

46. Notwithstanding this actual knowledge, Citibank processed the order and credited $310,583.74 to the ARGM Global account, in violation of S.C. Code Ann. § 36-4A-207(b)(2).

47. As a direct and proximate result of Citibank's violation of S.C. Code Ann. § 36-4A-207(b)(2), Plaintiff suffered damages of $310,583.74, plus interest, costs, and fees.

## SECOND CAUSE OF ACTION

**Violation of the South Carolina Unfair Trade Practices Act**

**S.C. Code Ann. § 39-5-10 et seq.**

**(*Against Defendants Citibank, N.A.; Community Federal Savings Bank; Foris DAX, Inc. d/b/a Crypto.com; and Cross River Bank)***

48. Plaintiff repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49. S.C. Code Ann. § 39-5-20(a) declares unlawful unfair or deceptive acts or practices in the conduct of trade or commerce.

50. Each of Citibank, CFSB, Crypto.com, and Cross River engaged in trade or commerce directed at the general public in South Carolina and elsewhere.

51. Citibank engaged in unfair and deceptive acts or practices in its consumer and commercial banking business by opening and maintaining a business checking account for ARGM Global, a newly formed shell entity with a negligible prior balance, accepting a $310,583.74 loan-payoff wire that facially identified Greenville Housing Fund as the intended beneficiary, crediting that wire to the ARGM Global account despite the misdescription, and failing to detect or respond appropriately to obvious red flags that the ARGM Global account was being used as a conduit for BEC fraud and money laundering.

52. CFSB engaged in unfair and deceptive acts or practices in its banking business by onboarding and maintaining the Rivera Crypto.com fiat wallet account ending in 3556 despite a 13-month pattern of repeated wire deposits followed by immediate conversion to cryptocurrency and withdrawal to multiple external wallets, receiving $17,400.00 and $95,000.00 in stolen funds without implementing or enforcing adequate fraud detection or anti-money-laundering controls, and failing to timely respond to Citibank's August 14, 2025 recall notice.

53. Crypto.com engaged in unfair and deceptive acts or practices in its money services and cryptocurrency exchange business by bypassing its own KYC system's detection of a name mismatch between Rivera's identification document and the account registration information, permitting a 13-month pattern of repeated wire deposits, immediate conversion to cryptocurrency, and rapid withdrawals to multiple external wallets to continue without

effective monitoring or reporting, and allowing $112,400.00 of Plaintiff's stolen funds to be converted to XRP and withdrawn before imposing any account restrictions.

54. Cross River engaged in unfair and deceptive acts or practices in its banking business by receiving at least $210,000.00 in wire transfers on August 13 and 14, 2025, funds originating directly from Plaintiff's stolen proceeds, without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds of a reported BEC fraud scheme.

55. The conduct of each financial institution Defendant has the potential for repetition affecting the public interest because BEC wire fraud schemes are systemic, the onboarding, monitoring, KYC, AML, and recall practices described herein are capable of recurring, and similar customers and transactions would be treated in the same way under Defendants' current procedures.

56. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff suffered actual damages of $310,583.74.

57. Plaintiff is entitled to recover actual damages, treble damages if Defendants' conduct is found willful or knowing, and reasonable attorney's fees and costs pursuant to S.C. Code Ann. § 39-5-140.

## <u>THIRD CAUSE OF ACTION</u>

### Conversion

***(Against Defendants Alexandria Nicol Rivera; ARGM Global LLC; Citibank, N.A.; Community Federal Savings Bank; Foris DAX, Inc. d/b/a Crypto.com; and Cross River Bank)***

58. Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59. Plaintiff owned and had the right to possession of $310,583.74 in funds held in its account at United Community Bank and designated for payment of its mortgage loan to Greenville Housing Fund.

60. Defendants wrongfully exercised dominion and control over Plaintiff's funds, without authorization and inconsistent with Plaintiff's ownership rights, by receiving, retaining, transferring, or dissipating those funds as described herein.

61. Rivera and ARGM Global received $310,583.74 in Plaintiff's stolen funds into the ARGM Global Citibank business account and transferred those funds to Rivera's personal Citibank account and to other institutions.

62. Citibank, CFSB, Crypto.com, and Cross River each received, processed, transferred, retained, or benefitted from Plaintiff's stolen funds after they left Plaintiff's account, including through fees, spreads, and other revenue generated by handling those funds.

63. As a direct and proximate result of Defendants' conversion of Plaintiff's property, Plaintiff suffered damages of $310,583.74, plus interest.

## <u>FOURTH CAUSE OF ACTION</u>

**Unjust Enrichment**

***(Against Defendants Alexandria Nicol Rivera; ARGM Global LLC; Citibank, N.A.; Community Federal Savings Bank; Foris DAX, Inc. d/b/a Crypto.com; and Cross River Bank)***

64. Plaintiff repeats and realleges paragraphs 1 through 63 as if fully set forth herein.

65. Defendants were enriched by receiving and retaining the benefit of Plaintiff's stolen funds and the revenue derived from those funds, under circumstances that make it unjust for them to retain those benefits without restitution to Plaintiff.

66. Rivera and ARGM Global received and dissipated $310,583.74 of Plaintiff's stolen funds without compensating Plaintiff.

67. Citibank, CFSB, Crypto.com, and Cross River retained fees, spreads, or other financial benefits associated with handling Plaintiff's stolen funds, including exchange fees, account-related charges, or other transaction-based revenue.

68. Plaintiff is entitled to restitution from each Defendant in the amount of that Defendant's unjust enrichment.

## <u>FIFTH CAUSE OF ACTION</u>

**Civil Conspiracy**

***(Against Defendants Alexandria Nicol Rivera and ARGM Global LLC)***

69. Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70. Rivera and ARGM Global entered into a combination or agreement to accomplish an unlawful purpose, to defraud ATCEDC and obtain and launder the proceeds of the fraudulent wire transfer, or to accomplish a lawful purpose by unlawful means.

71. In furtherance of the conspiracy, Rivera and ARGM Global committed overt acts, including receiving the stolen wire into the ARGM Global account, transferring the proceeds internally to Rivera's personal Citibank account, directing the proceeds to other financial institutions and cryptocurrency channels, and participating in the concealment and dissipation of the proceeds.

72. As a direct and proximate result of this conspiracy, Plaintiff suffered damages of $310,583.74.

## SIXTH CAUSE OF ACTION

### Constructive Trust

***(Against All Defendants)***

73. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

74. Defendants hold, or have held, legal title to funds or assets traceable to Plaintiff's $310,583.74 in stolen funds, or to proceeds derived from those funds, as a result of the fraudulent scheme described herein.

75. It would be inequitable and unjust to allow Defendants to retain those funds or the benefit derived from them.

76. Plaintiff is entitled to the imposition of a constructive trust over all funds or assets, wherever located and in whomever's name held, that are traceable to Plaintiff's stolen funds or the proceeds thereof, and to an order requiring Defendants to transfer those funds or assets to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allen Temple Community Economic Development Corporation respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against each Defendant, jointly and severally where permitted by law.

B. Award Plaintiff actual damages in the amount of $310,583.74, plus pre- and post-judgment interest.

C. Award treble damages, attorney's fees, and costs under the South Carolina Unfair Trade Practices Act.

D. Impose a constructive trust over all funds or assets traceable to Plaintiff's stolen funds or the proceeds thereof.

E. Order restitution and disgorgement of all sums by which Defendants have been unjustly enriched.

F. Award Plaintiff its costs of this action, including reasonable attorney's fees where allowed by law.

G. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,
DAVE MAXFIELD, ATTORNEY, LLC

*s/ David A. Maxfield*

Dave Maxfield, Esq., FED ID 6293
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

April 7, 2026