**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

Plaintiff,

v.

ALEXANDRIA NICOL RIVERA; ARGM GLOBAL LLC; CITIBANK, N.A.; COMMUNITY FEDERAL SAVINGS BANK; FORIS DAX, INC. d/b/a CRYPTO.COM; AND CROSS RIVER BANK,

Defendants.

Civil Action No. 6:25-cv-12713-TMC-SVH

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ... 1

STATEMENT OF FACTS ... 2

STANDARD OF REVIEW ... 3

ARGUMENT ... 3

I. THIS COURT LACKS PERSONAL JURISDICTION OVER CITIBANK BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF ANY CITIBANK CONDUCT DIRECTED AT SOUTH CAROLINA. ... 3

A. The Court lacks general jurisdiction over Citibank. ... 4

B. The Court lacks specific jurisdiction over Citibank. ... 5

II. THE COURT SHOULD DISMISS PLAINTIFF'S COMMON LAW CLAIMS FOR CONVERSION (COUNT III), UNJUST ENRICHMENT (COUNT IV), AND CONSTRUCTIVE TRUST (COUNT VI) BECAUSE THEY ARE PREEMPTED BY ARTICLE 4A OF THE UCC. ... 7

III. THE COURT SHOULD DISMISS THE UCC ARTICLE 4A CLAIM (COUNT I) BECAUSE THE FAC FAILS FOR LACK OF PRIVITY AND DEFICIENT PLEADING ... 10

A. The Lack of Privity Between Plaintiff and Citibank Dooms the Section 36-4A-207 Claim ... 10

B. Citibank Had No Obligation To Match Names And Account Numbers. ... 12

C. There Is No Mismatch. ... 15

IV. THE COURT SHOULD DISMISS THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT CLAIM (COUNT II) BECAUSE PLAINTIFF FAILS TO ALLEGE AN UNFAIR OR DECEPTIVE ACT CAPABLE OF REPETITION ... 16

V. PLAINTIFF'S COMMON LAW CLAIMS FAIL FOR INDEPENDENT REASONS. ... 17

A. The Conversion Claim (Count III) Should Be Dismissed Because Citibank Did Not Exercise Wrongful Dominion Or Control Over Plaintiff's Funds ... 17

B. The Unjust Enrichment Claim (Count IV) Should Be Dismissed Because Plaintiff Has An Adequate Remedy At Law And Citibank Was Not Unjustly Enriched. ... 18

C. The Constructive Trust Claim (Count VI) Should Be Dismissed Because It Is A Remedy, Not An Independent Cause Of Action, And The Underlying Claims Fail. ... 19

CONCLUSION ... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AmpliTech Grp., Inc. v. Truist Bank*,
746 F. Supp. 3d 1384 (S.D. Fla. 2024) ....................................................11

*Approved Mortg. Corp. v. Truist Bank*,
106 F.4th 582 (7th Cir. 2024) ....................................................10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................3, 14

*Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*,
53 F. Supp. 3d 810 (D.S.C. 2014)....................................................8

*Becker v. Chandler Oaks, LLC*,
No. 7:18-cv-670-TMC, 2021 WL 11745351 (D.S.C. Feb. 2, 2021) ....................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................3

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................................................5

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) ....................................................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................................................4, 5

*Doe v. Roe*,
475 S.E.2d 783 (D.S.C. 1996) ....................................................20

*Ethox Chem., LLC v. Coca-Cola Co.*,
No. 6:12-CV-01682-TMC, 2013 WL 41001 (D.S.C. Jan. 3, 2013) ....................................................17

*Eustache v. Citi/CitiGrp./Citibank*,
No. 24-cv-2372-ABA, 2025 WL 2659877 (D. Md. Sept. 17, 2025)....................................................5

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ....................................................4, 5

*Gilbert v. Wells Fargo Bank, N.A.*,
No. 2:23-CV-04448-RMG, 698 F. Supp. 3d 844 (D.S.C. Oct. 17, 2023) ....................................................17

*Gillins v. Celadon Trucking Servs.*,
No. 2:16-cv-00795-DCN, 2016 WL 4455018 (D.S.C. Aug. 24, 2016)....................................18

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)....................................11, 12

*Harris v. Lloyds TSB Bank, PLC*,
281 F. App'x 489 (6th Cir. 2008)....................................7

*Havird Oil Co. v. Marathon Oil Co.*,
149 F.3d 283 (4th Cir. 1998) ....................................16

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)....................................4

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
597 F.3d 84 (2d Cir. 2010)....................................8

*Maghsoudnia v. Citibank, N.A.*,
No. 25-CV-06526-NW, 2026 WL 172505 (N.D. Cal. Jan. 22, 2026)....................................5

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ....................................7

*Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*,
No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022) ....................................8

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
974 F.2d 502 (4th Cir. 1992) ....................................17

*Schmitt v. Bank of Am.*,
No. 1:24-CV-611, 2024 WL 4902416 (W.D. Mich. Nov. 26, 2024) ....................................5

*Skin Studio Day Spa, LLC v. Wells Fargo Bank, N.A.*,
711 F. Supp. 3d 593, 596 (D.S.C. 2024).................................... *passim*

*Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*,
133 F.4th 264 (4th Cir. 2025) ....................................13, 14

*Thuney v. Lawyer's Title of Arizona*,
No. 2:18-CV-1513-HRH, 2019 WL 467697 (D. Ariz. Feb. 6, 2019)....................................7

*Thuney v. Lawyer's Title of Arizona, Inc.*
No. 2:18-CV-1513-HRH, 2019 WL 13197981 (D. Ariz. Apr. 5, 2019) ....................................7

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................6

*Zidell v. E. W. Bank*,
No. 3:24-CV-2340-D, 2025 WL 919385 (N.D. Tex. Mar. 26, 2025) .................................. 4, 5

**State Cases**

*Hale v. Finn*,
388 S.C. 79 (2010) .................................................................................................. 19

*Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.*,
366 S.C. 163 (2005) .................................................................................................. 8

*Morrison v. Morrison*,
663 S.E.2d 714 (Ga. 2008) .......................................................................................... 19

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
341 S.C. 1 (2000) .................................................................................................... 19

*Regions Bank v. Schmauch*,
354 S.C. 648 (Ct. App. 2003) ..................................................................................... 17

**Statutes**

Ind. Code § 26-1-4.1-402 ............................................................................................. 11

S.C. Code Ann. § 36-4A-101 .......................................................................................... 7

S.C. Code Ann. § 36-4A-207 ................................................................................ *passim*

S.C. Code Ann. § 39-5-10 .............................................................................................. 3

S.C. Code Ann. § 39-5-20 ............................................................................................ 16

UCC § 3-110 ............................................................................................................. 15

UCC § 4A-102 ............................................................................................................. 7

UCC § 4A-507 ........................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 3

**Constitutional Provisions**

Fourteenth Amendment ................................................................................................ 3

Defendant Citibank, N.A. ("Citibank"), by counsel and pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), hereby respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), ECF 17, and states as follows:

## INTRODUCTION

This case arises out of a business email compromise ("BEC") fraud scheme in which Plaintiff Allen Temple Community Economic Development Corporation ("ATCEDC" or "Plaintiff") was deceived by third-party fraudsters into wiring $310,583.74 to an account at Citibank held by Defendant ARGM Global LLC. Rather than confine its claims to the actual perpetrators of that scheme — Defendants Alexandria Nicol Rivera and ARGM Global LLC — or name its own bank as a defendant, Plaintiff is attempting to shift liability for the fraud to a financial institution with which it has no privity, contractual or otherwise, and that merely received the funds at issue. It does not work.

As a threshold matter, the Court does not have personal jurisdiction over Citibank. Even if it does, all of the claims fail as a matter of law and pleading. The common law claims for conversion, unjust enrichment, and constructive trust are all preempted by the Uniform Commercial Code ("UCC") as adopted by South Carolina. And, under the UCC, Citibank as the wire transfer beneficiary's bank, does not have liability because (1) it does not have privity with Plaintiff, (2) there is no general obligation to match names and account numbers of beneficiaries, and (3) the beneficiary's name and account number in the payment order, in fact, matched the name and account number on the beneficiary's account. The South Carolina Unfair Trade Practices Act ("SCUTPA") claim fails because Citibank never made any affirmative misrepresentation to Plaintiff or engaged in any deceptive conduct directed at Plaintiff and Plaintiff fails to allege a pattern or the capacity for repetition affecting the public. Plaintiff's conversion

claim fails because processing a wire transfer constitutes routine banking activity, not an unauthorized exercise of dominion and control. Similarly, Plaintiff's unjust enrichment claim fails because it is an equitable remedy unavailable where, as here, money damages suffice, and Plaintiff cannot allege that Citibank was enriched at Plaintiff's expense. Finally, Plaintiff's request for a constructive trust fails because it is a remedy, rather than a cause of action, and it is not tied to any valid claim.

## STATEMENT OF FACTS[1]

Plaintiff is a South Carolina non-profit corporation that provides affordable housing in the Greenville, South Carolina area. ECF 17 ¶ 1. Plaintiff held a mortgage loan with Greenville Housing Fund ("GHF") that contained a five-year balloon provision maturing in 2025, and Plaintiff decided to pay the loan off in full. *Id.* ¶ 12. On or about August 6, 2025, Plaintiff requested payoff information and wiring instructions from GHF. *Id.* ¶ 13.

On or about August 8, 2025, Plaintiff authorized United Community Bank ("UCB") to wire $310,583.74 to what Plaintiff believed was a loan payoff directed to GHF. *Id.* ¶ 17. The wire instructions, however, had been altered by unknown persons who had intercepted and modified communications between Plaintiff and GHF, directing the funds instead to an ARGM Global LLC business checking account at Citibank, account ending in 8217. *Id.* ¶ 15. Although unclear from the FAC, it appears that the fraudsters who sent the email communications with the altered wiring instructions are Defendant Alexandria Nicol Rivera ("Rivera") and ARGM Global LLC ("ARGM Global"). *Id.*

The Fedwire payment order transmitted to Citibank identified the beneficiary as "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A,

[1] The facts from Plaintiff's FAC are taken as true for the purpose of this Motion only.

GREENVILLE SC 29609" and stated the purpose as "PAYOFF LOAN GHF20190906." *Id.* ¶ 18. Citibank credited the funds to the ARGM Global account in accordance with the account number identified in the payment order. *Id.* ¶¶ 18, 36, 40.

Following receipt of the funds, Rivera transferred approximately $300,000.00 from the ARGM Global account to her personal Citibank checking account ending in 6895, and from there distributed the funds to other financial institutions including Community Federal Savings Bank, Crypto.com, and Cross River Bank. *Id.* ¶¶ 24-25.

As to Citibank, Plaintiff asserts five causes of action: (1) UCC Article 4A, S.C. Code Ann. § 36-4A-207(b)(2), in Count I; (2) violation of SCUTPA, S.C. Code Ann. § 39-5-10 *et seq*. in Count II; (3) conversion in Count III; (4) unjust enrichment in Count IV; and (5) constructive trust in Count VI. Each of these claims fails as a matter of law and should be dismissed.

## STANDARD OF REVIEW

Dismissal of the FAC pursuant to Fed. R. Civ. P. 12(b)(6) is proper if the FAC fails to state a viable claim upon which relief can be granted. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Although detailed factual allegations are not necessary, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER CITIBANK BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF ANY CITIBANK CONDUCT DIRECTED AT SOUTH CAROLINA.

As a threshold matter, this Court lacks personal jurisdiction over Citibank, and all claims against it should be dismissed on that basis alone. The Due Process Clause of the Fourteenth

Amendment requires that a defendant have "minimum contacts" with the forum state such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court may exercise either general or specific jurisdiction over a defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). Plaintiff fails to establish either.

**A. The Court lacks general jurisdiction over Citibank.**

Plaintiff does not, and cannot, establish that this Court can exercise all-purpose general jurisdiction over Citibank. The Supreme Court has clarified that general jurisdiction over corporate defendants will exist only in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG,* 571 U.S. at 138-39. None of these circumstances is met. "Citibank is headquartered in South Dakota, and its main office is in New York. Thus, Citibank is 'at home' and subject to general personal jurisdiction in New York and South Dakota." *See Zidell v. E. W. Bank*, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025). Citibank is not incorporated in South Carolina, and its principal place of business is not in South Carolina. The mere fact that Citibank, as a national bank, has offices or branches in multiple states, including in South Carolina, does not render it subject to general jurisdiction in every state where it maintains a presence. *See Daimler AG*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."); *see, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020) (applying *Daimler* in holding that Marriott's contacts with South Carolina were not enough to render it "at home" in that state "as is required for the exercise of general

jurisdiction"); *Eustache v. Citi/CitiGrp./Citibank*, No. 24-cv-2372-ABA, 2025 WL 2659877, at *3 (D. Md. Sept. 17, 2025) (following *Daimler* and *Fidrych* in holding that the District of Maryland lacks personal jurisdiction over Citibank). Courts across the country have held that mere receipt of a wire transfer from the forum state does not subject the receiving bank to personal jurisdiction. *See, e.g*. *Schmitt v. Bank of Am.*, No. 1:24-CV-611, 2024 WL 4902416, at *8 (W.D. Mich. Nov. 26, 2024); *Zidell,* 2025 WL 919385, at *4; *Maghsoudnia v. Citibank, N.A.*, No. 25-CV-06526-NW, 2026 WL 172505, at *3 (N.D. Cal. Jan. 22, 2026). Accordingly, Citibank is not "at home" in South Carolina, and general jurisdiction does not lie.

**B. The Court lacks specific jurisdiction over Citibank.**

Specific jurisdiction likewise does not exist over Citibank in this forum. Specific jurisdiction requires that (1) the defendant purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) the plaintiff's claims arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction is constitutionally reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) ("The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities.") (quoting *id.* at 475). All three prongs must be satisfied, and Plaintiff fails to meet any of them as to Citibank.

Plaintiff does not allege that any act committed by Citibank occurred in South Carolina. Plaintiff alleges that ARGM Global is a Florida limited liability company and Rivera is a Florida resident. ECF 17 ¶¶ 2-3. Indeed, both the ARGM Global account and Rivera's personal account were opened in Florida using Rivera's Florida address, phone number, and identity information. The FAC does not allege that any Citibank employee located in South Carolina took any action

with respect to the accounts or transactions at issue, that any Citibank branch in South Carolina was involved in the events giving rise to this litigation, or that Citibank directed any relevant conduct toward South Carolina. The only allegation of wrongdoing as to Citibank is that it received the funds into ARGM Global's account in Florida. ECF 17 ¶ 15.

Plaintiff's jurisdictional allegations are entirely conclusory and insufficient to support specific jurisdiction. The FAC states only that "Defendants Citibank, CFSB, Crypto.com, and Cross River each regularly conduct and solicit business in South Carolina and are subject to this Court's jurisdiction" and that the defendants "directed their fraudulent activities at a South Carolina non-profit corporation, caused injury in this District, and committed acts in furtherance of their scheme with direct effects in South Carolina." *Id.* ¶ 9. These allegations are boilerplate recitations insufficient to establish personal jurisdiction. Citibank is not alleged to have "directed" any activity at South Carolina; it is alleged to have maintained bank accounts in another state into which third-party criminals directed funds obtained through fraud. Plaintiff's allegation that Citibank "regularly conduct[s] and solicit[s] business" in South Carolina is directed towards general jurisdiction, and that theory fails for the reasons explained above.

The mere fact that a plaintiff feels the effects of a defendant's out-of-state conduct in the forum state is insufficient to establish specific jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Here, the only connection between Citibank's alleged conduct and South Carolina is that Plaintiff happens to be a South Carolina entity that suffered harm. The accounts were opened and maintained in Florida, the wire was received and credited outside South Carolina, and the subsequent transfers occurred entirely outside this forum. Plaintiff's injury in South Carolina is a unilateral consequence of the third-party fraud, not of any forum-directed activity by Citibank.

Federal "courts routinely decline to use money transfers as a basis for specific jurisdiction because the wire transfer is done at the plaintiff's request." *Thuney v. Lawyer's Title of Arizona*, No. 2:18-CV-1513-HRH, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019), *judgment entered sub nom*. *Thuney v. Lawyer's Title of Arizona Inc*., No. 2:18-CV-1513-HRH, 2019 WL 13197981 (D. Ariz. Apr. 5, 2019); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014); *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 496 (6th Cir. 2008) (reversing trial court's finding of personal jurisdiction).

Furthermore, exercising jurisdiction over Citibank in this forum would be constitutionally unreasonable. Citibank had no reason to anticipate being haled into court in South Carolina based on maintaining a customer's bank account in another state and receiving an incoming wire transfer. The burden of litigating in South Carolina, far from the location of the relevant accounts, employees, and records, is significant, and Plaintiff's interest in a South Carolina forum can be adequately vindicated against Citibank in a jurisdiction where Citibank is properly subject to suit.

Because Plaintiff has failed to establish that this Court has either general or specific personal jurisdiction over Citibank, all claims against Citibank should be dismissed.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S COMMON LAW CLAIMS FOR CONVERSION (COUNT III), UNJUST ENRICHMENT (COUNT IV), AND CONSTRUCTIVE TRUST (COUNT VI) BECAUSE THEY ARE PREEMPTED BY ARTICLE 4A OF THE UCC.

Plaintiff's common law claims of conversion, unjust enrichment, and constructive trust are subject to dismissal because they are preempted by UCC Article 4A, as adopted in South Carolina at S.C. Code Ann. § 36-4A-101 *et seq*. Article 4A was specifically designed to provide a comprehensive and exclusive framework governing the rights, obligations, and liabilities of parties involved in funds transfers. As the Official Comment to UCC § 4A-102 explains, Article 4A was intended to be "the ***exclusive means*** of determining the rights, duties, and liabilities of the affected

parties in any situation covered by particular provisions of the Article," and "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties, and liabilities inconsistent with those stated in this Article." *Id.* (emphasis added).

Article 4A preempts common law claims that arise from or are grounded in the same conduct governed by the statute. *See, e.g.*, *Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 816 (D.S.C. 2014) (holding that Article 4A displaced common law claims for negligence and conversion arising from wire transfer); *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, No. 21-1893, 2022 WL 3334626, at *1 (4th Cir. Aug. 12, 2022) (holding that the UCC, which "governs wire transfers, preempts state law."). The rationale underlying preemption is straightforward: Article 4A reflects a carefully calibrated balance of the interests of all parties in the funds transfer system, and permitting parallel common law claims would undermine that balance by imposing duties and liabilities that the drafters deliberately chose not to include.

Indeed, in *Skin Studio Day Spa, LLC v. Wells Fargo Bank, N.A.*, a case brought by Plaintiff's counsel, the court applied the preemption doctrine to virtually identical common law claims arising from a fraudulent wire transfer. 711 F. Supp. 3d 593, 596 (D.S.C. 2024). The plaintiff asserted claims for negligence, conversion, and money had and received against both its own bank (Wells Fargo) and the beneficiary's bank (JPMorgan). *Id.* The court held that all three common law claims were preempted by Article 4A because they "fall within the regime of Article 4A and concern 'the mechanics of how a funds transfer was conducted.'" *Id.* at 599 (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010)); *see also Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.,* 366 S.C. 163, 170 (2005) ("Only where the U.C.C. is incomplete does the common law provide applicable rules."). The plaintiff in *Skin Studio*

conceded as much, acknowledging that each common law claim "appears to be preempted." *Skin Studio Day Spa, LLC*, 711 F. Supp. 3d at 599.

Similarly, here, Plaintiff's conversion, unjust enrichment, and constructive trust claims all arise from, and are inextricably intertwined with, Citibank's role as the beneficiary's bank in the August 8, 2025 wire transfer. The conversion claim alleges that Citibank wrongfully exercised dominion over funds received via wire transfer. ECF 17 ¶ 60. The unjust enrichment claim alleges that Citibank was unjustly enriched through fees and benefits derived from processing the wire. *Id.* ¶ 65. The constructive trust claim seeks to impose a trust over funds traceable to the wire transfer. *Id.* ¶ 70. Each of these claims challenges how Citibank handled the incoming payment order — the precise subject matter that Article 4A comprehensively governs. Article 4A prescribes the circumstances under which a beneficiary's bank may be held liable for accepting a misdescribed payment order (Section 4A-207), and it defines the remedies available when those conditions are met. Plaintiff cannot circumvent the limitations that Article 4A places on beneficiary bank liability by repackaging the same grievance under alternative common law theories.

This is precisely the type of end-run that Article 4A preemption is designed to prevent. If a plaintiff could avoid Article 4A's actual-knowledge standard under Section 4A-207(b)(2) simply by recasting the same allegations as conversion, unjust enrichment, or constructive trust, the statute's carefully drawn limitations would be rendered meaningless. The preemptive scope of Article 4A therefore provides an independent and sufficient basis for dismissal of Plaintiff's Third, Fourth, and Sixth Causes of Action against Citibank.

## III. THE COURT SHOULD DISMISS THE UCC ARTICLE 4A CLAIM (COUNT I) BECAUSE THE FAC FAILS FOR LACK OF PRIVITY AND DEFICIENT PLEADING.

Under the comprehensive framework of Article 4A, Citibank as the beneficiary's bank cannot be held liable for three reasons. First, as explained by the Second and Seventh Circuits, a claim under Section 207 of Article 4A requires privity between the plaintiff and the defendant, and privity does not exist here. Second, Citibank had no obligation to match names and account numbers. Third, even if Citibank were required to match names and account numbers, the names and account numbers at issue here match up.

### A. The Lack of Privity Between Plaintiff and Citibank Dooms the Section 36-4A-207 Claim.

Section 36-4A-207 requires privity, which is lacking between Plaintiff and Citibank. *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582 (7th Cir. 2024), is instructive. Similar to the facts here, the wire instructions in that case were altered surreptitiously by a third party and funds were wired from Approved Mortgage's account to an account at Truist Bank, which received the funds and allowed them to be withdrawn. *Id.* at 585. Approved Mortgage sued Truist under Section 207 of Indiana's adopted Article 4A of the UCC. *Id.* In affirming the dismissal, the Seventh Circuit agreed that privity was required for a Section 207 claim. *Id.* at 589. Subsection 207(a) prohibits acceptance of a wire by a beneficiary's bank if a payment order refers to a nonexistent or unidentifiable person. *Id.* Subsection 207(b) prohibits acceptance of a wire by a beneficiary's bank if the beneficiary's bank knows that the payment order identifies the beneficiary by a name and bank account number belonging to different persons. *Id.* But Section 207 does not explain what happens when the funds are received by the beneficiary's bank despite the prohibition on acceptance. *Id.* Thus, the appellate court looked to Section 402(d)'s refund provision. *Id.* at 590. That provision states: "If the sender of a payment order pays the order and was not obliged

to pay all or part of the amount paid, ***the bank receiving payment is obliged to refund payment*** to the extent the sender was not obliged to pay." *Id.* at 591 (quoting Ind. Code § 26-1-4.1-402(d)) (emphasis added). The UCC's use of the definite article "the" in "the sender" and "the bank receiving payment" means that it is the sender's bank, rather than the beneficiary's bank, that must pay the refund because it is the sender's bank that receives that payment order from the sender. *Id.* Accordingly, Truist, as the beneficiary's bank, was ***not*** liable to Approved Mortgage for a refund (its own bank was), and the claim was properly dismissed. *Id.* at 592.

The Seventh Circuit followed the Second Circuit's reasoning in *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 106 (2d Cir. 1998). Both courts agree that Section 207 "imposes a privity requirement such that a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment." *Id.* This is because the drafters of Article 4A intended "to effect an orderly unraveling of a funds transfer in the event that the transfer was not completed, and accomplished this by incorporating a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Id.*

Here, Plaintiff issued the altered payment order to its own bank, and its own bank subsequently wired the funds to Citibank. Section 36-4A-207 does not explain what happens in a completed funds transfer, but Section 36-4A-402[2] squarely places the liability for a refund on

---

[2] The UCC provisions are identical as adopted in Indiana (*Approved Mortgage*), New York (*Grain Traders*), South Carolina (where this suit is pending), and Florida (where the beneficiary lives and where the beneficiary's Citibank account is located). Citibank assumes for the purposes of this motion, but does not concede, that South Carolina law governs claims against Citibank. Because all claims arise from Citibank's execution of a wire transfer depositing funds into a Florida account, Florida law should govern. *See* UCC § 4A-507(a)(1); UCC § 4A-507(a)(2). Florida law also requires a Plaintiff to establish privity in these circumstances. *AmpliTech Grp., Inc. v. Truist Bank*, 746 F. Supp. 3d 1384, 1390 (S.D. Fla. 2024) (dismissing the complaint and stating the

Plaintiff's own bank, since it was the bank that received the payment order from Plaintiff. Plaintiff has no privity, or other relationship with Citibank, with respect to the transaction at issue or as alleged in the FAC. Under the UCC, Plaintiff's recourse is to seek a refund from its own bank, rather than Citibank. After all, "[t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities," and would "create a risk of multiple or inconsistent liabilities." *Grain Traders*, 160 F.3d at 102. Plaintiff has no viable UCC claim against Citibank and the Court should dismiss Count I.

**B. Citibank Had No Obligation To Match Names And Account Numbers.**

Plaintiff incorrectly alleges that Citibank violated S.C. Code Ann. § 36-4A-207(b)(2) by processing the August 8, 2025 payment order despite purportedly knowing that the named beneficiary and the account number identified different persons. ECF 17 ¶¶ 44-45. Under Section 4A-207(b)(1), when a payment order identifies the beneficiary both by name and by account number, and the name and number identify different persons, the beneficiary's bank may rely on the account number to identify the beneficiary, provided certain conditions are met. Section 4A-207(b)(2) creates a narrow exception: the beneficiary's bank is liable only if it had actual knowledge, at the time it accepted the payment order, that the name and number referred to different persons. The statute imposes no duty of inquiry on the receiving bank; only actual, pre-acceptance knowledge triggers liability. Indeed, as the Official Comment to § 36-4A-207(b) explains, the drafters imposed a knowledge requirement so as not to disturb the "substantial economies of operation" associated with automated processing.

---

"majority of district courts have recently required privity between parties for recovery under Section 207").

*Skin Studio* is directly on point. 711 F. Supp. 3d at 597-98. In that case, the plaintiff (also a victim of a wire transfer that went into a fraudster's account) alleged that the beneficiary's bank (JPMorgan) "knew that the name and the account number did not match" on the payment order. *Id.* at 598. The court held that this bare assertion was insufficient to plead actual knowledge under § 36-4A-207(b)(2), particularly where the plaintiff's own allegations suggested that the bank "fully automate[d] the receipt" of wire transfers and did not monitor for "name/account number mismatches." *Id.* Critically, the court emphasized that, under Section 36-4A-207(b)(1), the beneficiary's bank "had no obligation to verify the name on the order and on the account matched." *Id.* Accordingly, the court granted JPMorgan's motion to dismiss the § 36-4A-207(b)(2) claim. *See also Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, 133 F.4th 264, 273 (4th Cir. 2025), *cert. denied,* 146 S. Ct. 187 (2025) ("[T]he provision protects the beneficiary's bank from any liability when it deposits funds into the account for which a number was provided in the payment order, even if the name does not match, so long as it 'does not know that the name and number refer to different persons.' And in this context, "'[k]knowledge" means actual knowledge,' not imputed knowledge or constructive knowledge.") (second alteration in original) (citations omitted).

Plaintiff's allegations do not satisfy this demanding standard. The FAC alleges that the Fedwire payment order listed both "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND" in the beneficiary field, together with a loan payoff purpose. ECF 17 ¶ 45. But the mere presence of additional descriptive text in the beneficiary field does not, standing alone, establish that a bank employee actually recognized, before acceptance, that the name and the account number identified different persons. Under UCC 4A-207, a beneficiary's bank is entitled to process a payment order by reference to the account number and is under no independent

obligation to parse or investigate narrative content in the payment order. The inclusion of "GREENVILLE HOUSING FUND" alongside "ARGM GLOBAL LLC" in the same beneficiary field is insufficient to allege that a Citibank employee actually reviewed this narrative and understood these to be different entities before crediting the funds.

Plaintiff attempts to bolster its claim by alleging, "upon information and belief," that "one or more Citibank employees responsible for reviewing or processing the August 8, 2025 Fedwire payment order actually recognized, before acceptance, that 'Greenville Housing Fund' and the ARGM Global account identified different persons, yet processed the payment order and credited $310,583.74 to the ARGM Global account anyway." ECF 17 ¶ 39. This allegation is conclusory, has no supporting factual basis whatsoever, and does not satisfy the plausibility standard. *See Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). As the *Skin Studio* court recognized, a plaintiff "does not sufficiently allege [a beneficiary's bank] possessed 'actual knowledge' of the alleged discrepancy" by simply asserting the bank "knew" the name and account number did not match, without any supporting factual allegations. *Skin Studio Day Spa, LLC*, 711 F. Supp. 3d at 598. Plaintiff identifies no specific Citibank employee, flagging procedure, or other factual matter suggesting that any person at Citibank in fact physically reviewed the wire instructions and recognized the alleged mismatch before the payment order was accepted. Without such factual support, Plaintiff's allegation of actual knowledge is a legal conclusion dressed in the language of factual assertion and is insufficient to survive a motion to dismiss. And the UCC does not place an obligation on a beneficiary bank to match account names and account numbers. *Studco Bldg. Sys.*, 133 F.4th at 273 ("[I]f the beneficiary's bank *does not know* that the name and

number refer to different persons, the beneficiary's bank may rely on the number as the proper identification of the beneficiary of the order.") (quotations omitted).

Additionally, Plaintiff's reliance on the fact that Citibank held both the ARGM Global account and Rivera's personal account under the same customer identity information does not establish actual knowledge of a mismatch. The fact that a bank may hold multiple accounts linked to the same customer does not mean that any individual employee processing a wire transfer is simultaneously aware of, or cross-referencing, the identifying details of separate accounts at the time the wire is processed. Section 4A-207(b)(2) requires knowledge that the name and number on a specific payment order refer to different persons—not general institutional awareness of a customer's account portfolio.

Because Plaintiff has failed to allege specific, non-conclusory facts establishing that Citibank had actual knowledge, at the time of acceptance, that the beneficiary name and account number identified different persons, Count I should be dismissed.

**C. There Is No Mismatch.**

Even if there were privity and Citibank were under an obligation to match names and account numbers (neither is true), there is no Section 207 violation because there is no mismatch. The Fedwire payment order transmitted to Citibank identified the beneficiary as "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609." *Id.* ¶ 18. Citibank credited the funds to the account in the name of "ARGM Global," which corresponded to the account number identified in the payment order.[3] *Id.* ¶¶ 18, 36, 40.

[3] By way of analogy, if a check were issued to "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND," it would be payable to either entity. UCC § 3-110(d).

## IV. THE COURT SHOULD DISMISS THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT CLAIM (COUNT II) BECAUSE PLAINTIFF FAILS TO ALLEGE AN UNFAIR OR DECEPTIVE ACT CAPABLE OF REPETITION.

Plaintiff's Second Cause of Action alleges that Citibank violated SCUTPA by, among other things, opening and maintaining the ARGM Global account, accepting a wire that facially identified a different beneficiary, crediting the wire despite an alleged misdescription, and failing to detect or respond to fraud "red flags." ECF 17 ¶ 51. This claim fails for multiple independent reasons.

First, SCUTPA requires that the challenged conduct be an "unfair or deceptive act or practice" in the conduct of "trade or commerce." S.C. Code Ann. § 39-5-20(a). Plaintiff does not allege that Citibank made any affirmative misrepresentation to Plaintiff or engaged in any deceptive conduct directed at Plaintiff. Indeed, the FAC does not allege that Citibank had any direct relationship with Plaintiff whatsoever. Rather, Plaintiff's grievance is that Citibank received a wire transfer in the ordinary course of its banking operations and failed to detect or prevent the fraud perpetrated by Rivera and ARGM Global. A bank's failure to detect third-party fraud in the course of receiving a wire transfer is not, without more, an "unfair or deceptive act or practice" within the meaning of the SCUTPA. To hold otherwise would convert every banking transaction touched by third-party fraud into a potential SCUTPA violation, which is plainly not the statute's purpose.

Furthermore, SCUTPA requires Plaintiff to demonstrate that the alleged unfair or deceptive act has an "impact on the public interest," which is generally shown by establishing the potential for repetition. *See Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). Plaintiff's allegation that "BEC wire fraud schemes are systemic" and that "similar customers and transactions would be treated in the same way under Defendants' current procedures" is entirely conclusory. ECF 17 ¶ 55. Plaintiff identifies no pattern or practice of Citibank processing

fraudulent wires and offers no factual basis to conclude that this singular incident is likely to be repeated. A single, isolated transaction cannot sustain SCUTPA liability absent concrete allegations of a pattern or the capacity for repetition affecting the public generally.

This Court's decision in *Skin Studio* is directly on point. In *Skin Studio*, the plaintiff alleged that the defendant banks "have been sued in other courts for conduct resembling" the challenged conduct. 711 F. Supp. 3d at 600. The court held this was insufficient, finding the SCUTPA claims "facially implausible" and noting that "without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts." *Id.* (quoting *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013)); *see also Gilbert v. Wells Fargo Bank, N.A.*, No. 2:23-CV-04448-RMG, 698 F. Supp. 3d 844, 851 (D.S.C. Oct. 17, 2023) ("[A] claim against a party is not probative of wrongdoing."). The Court further observed that "South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." *Skin Studio Day Spa, LLC*, 711 F. Supp. 3d at 600 (quoting *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992)). Here, Plaintiff does not even allege that Citibank has been sued elsewhere for similar conduct, but merely asserts in conclusory fashion that BEC fraud is "systemic" and that Citibank's procedures "create a potential for repetition."

For these reasons, the Second Cause of Action should be dismissed.

## V. PLAINTIFF'S COMMON LAW CLAIMS FAIL FOR INDEPENDENT REASONS.

### A. The Conversion Claim (Count III) Should Be Dismissed Because Citibank Did Not Exercise Wrongful Dominion Or Control Over Plaintiff's Funds.

To state a claim for conversion under South Carolina law, a plaintiff must allege that the defendant exercised "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, . . . to the exclusion of the owner's rights." *Regions*

*Bank v. Schmauch*, 354 S.C. 648, 667 (Ct. App. 2003). The FAC alleges that Citibank "received, processed, transferred, retained, or benefitted from Plaintiff's stolen funds after they left Plaintiff's account, including through fees, spreads, and other revenue generated by handling those funds." ECF 17 ¶ 62. However, a bank that receives and processes a wire transfer in the ordinary course of business does not thereby "convert" the funds. *Gillins v. Celadon Trucking Servs.*, No. 2:16-cv-00795-DCN, 2016 WL 4455018, at *6 (D.S.C. Aug. 24, 2016) (recognizing that conversion requires the exercise of *ownership* over the property of another). The act of receiving a wire transfer directed to a customer's account and processing subsequent transfers at the customer's direction is routine banking activity, not an unauthorized exercise of dominion and control. Plaintiff does not allege that Citibank took the funds for its own use, refused to honor a demand for return, or acted outside the scope of its obligations as a depository institution. In fact, the alleged fraudsters have already moved the money out of the Citibank accounts. ECF 17 ¶¶ 25-30. Accordingly, Citibank never assumed ownership over the funds and does not currently have any ownership interest in them.

To the extent Plaintiff's conversion claim rests on fees earned by Citibank in connection with processing the wire, the incidental earning of transaction-related fees does not constitute conversion. Fee income is the product of the contractual banking relationship between Citibank and its account holder, not an appropriation of Plaintiff's property. The Third Cause of Action should be dismissed.

**B. The Unjust Enrichment Claim (Count IV) Should Be Dismissed Because Plaintiff Has An Adequate Remedy At Law And Citibank Was Not Unjustly Enriched.**

Plaintiff's unjust enrichment claim alleges that Citibank "retained fees, spreads, or other financial benefits associated with handling Plaintiff's stolen funds." ECF 17 ¶ 67. Under South Carolina law, unjust enrichment is an equitable remedy available only where there is no adequate

remedy at law. *See Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8 (2000). Here, Plaintiff asserts multiple legal claims—including statutory claims under Article 4A and SCUTPA, as well as conversion—arising from the same operative facts and prays for money damages, *i.e.*, the return of money into its account. The availability of the legal remedy of money damages bars the equitable unjust enrichment claim.

Moreover, the unjust enrichment claim fails because Plaintiff has not plausibly alleged that Citibank was enriched at Plaintiff's expense in circumstances making retention unjust. Citibank's alleged receipt of ordinary banking fees in connection with maintaining the ARGM Global account and processing transactions is not enrichment derived from Plaintiff. Those fees arose from the contractual relationship between Citibank and its customer, not from any relationship with or obligation to Plaintiff. And, in any event, the alleged fraudsters had already moved the money out of the Citibank accounts. ECF 17 ¶¶ 25-30. The Fourth Cause of Action should be dismissed.

**C. The Constructive Trust Claim (Count VI) Should Be Dismissed Because It Is A Remedy, Not An Independent Cause Of Action, And The Underlying Claims Fail.**

Plaintiff's Sixth Cause of Action seeks the imposition of a constructive trust over "all funds or assets, wherever located and in whomever's name held, that are traceable to Plaintiff's stolen funds or the proceeds thereof." ECF 17 ¶ 76. "[A] claim for imposition of a constructive trust is not an independent cause of action." *Hale v. Finn*, 388 S.C. 79, 89 (2010) (quoting *Morrison v. Morrison*, 663 S.E.2d 714, 717 (Ga. 2008)); *Becker v. Chandler Oaks, LLC,* No. 7:18-cv-670-TMC, 2021 WL 11745351, at *6 (D.S.C. Feb. 2, 2021) ("Although Plaintiffs assert 'constructive trust' as a separate cause of action, it is a remedy that goes hand-in-hand with Plaintiffs' breach of fiduciary duty claim against 226 Capital.") (internal citation omitted). Because each of Plaintiff's substantive claims against Citibank fails as set forth above, there is no basis for the imposition of a constructive trust against Citibank.

Additionally, Plaintiff has not alleged that Citibank currently holds any identifiable funds traceable to Plaintiff's wire transfer. To the contrary, the FAC alleges that the funds were rapidly transferred out of the ARGM Global account and Rivera's personal account to other institutions. ECF 17 ¶¶ 25-30. A constructive trust cannot be imposed over funds that the defendant no longer holds. *See Doe v. Roe*, 475 S.E.2d 783, 787 (D.S.C. 1996) (noting that a constructive trust arises against one who *holds the right* to property it should not). The Sixth Cause of Action should be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Citibank, N.A. respectfully requests that this Court dismiss the First, Second, Third, Fourth, and Sixth Causes of Action of the First Amended Complaint against Citibank with prejudice, and grant such other and further relief as this Court deems just and proper.

Dated: May 11, 2026

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Jasmine K. Gardner*
Jasmine K. Gardner, Fed. Bar No. 12531
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2262
Facsimile: (704) 373-8825
Email: jgardner@mcguirewoods.com

***Counsel for Defendant Citibank, N.A.***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 11, 2026, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to be electronically filed with the Clerk of the Court via the Court's CM/ECF system. Counsel for all parties who have appeared in this case are registered CM/ECF users and will be served by the Court's CM/ECF system.

*/s/ Jasmine K. Gardner*
Jasmine K. Gardner

***Counsel for Defendant Citibank, N.A.***