**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY
ECONOMIC DEVELOPMENT
CORPORATION,

Civil Action No. 6:25-cv-12713-TMC-SVH

*Plaintiff*,

v.

ALEXANDRIA NICOL RIVERA,
*et al.*,

*Defendants*.
__________________________________/

**<u>DEFENDANT COMMUNITY FEDERAL SAVINGS BANK'S MOTION TO DISMISS</u>**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Community Federal Savings Bank moves to dismiss with prejudice all claims asserted against it in these proceedings by Plaintiff Allen Temple Community Economic Development Corporation, both for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. The grounds and authorities in support of this Motion are set forth in the enclosed Memorandum of Law in Support of Community Federal Savings Bank's Motion to Dismiss.

**WHEREFORE**, Defendant Community Federal Savings Bank respectfully requests that the Court enter an Order dismissing with prejudice Plaintiff's First Amended Complaint as to Community Federal Savings Bank and awarding any other relief in favor of Community Federal Savings Bank that this Court deems just and proper.

Dated: June 11, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*____________

Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**
2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Community Federal Savings Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*____________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY
ECONOMIC DEVELOPMENT
CORPORATION,

*Plaintiff*,

Civil Action No. 6:25-cv-12713-TMC-SVH

v.

ALEXANDRIA NICOL RIVERA,
*et al.*,

*Defendants*.
___________________________________/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**COMMUNITY FEDERAL SAVINGS BANK'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Community Federal Savings Bank ("CFSB" or "Defendant") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Allen Temple Community Economic Development Corporation's First Amended Complaint (the "Complaint") and states as follows.

## INTRODUCTION

This case should be dismissed as to Community Federal Savings Bank ("CFSB") because Plaintiff fails to plausibly allege that CFSB had any involvement in the alleged fraud or transfer of Plaintiff's funds. Instead, the Complaint establishes that, **after** the alleged Business Email Compromise scheme was complete and the funds had already moved through multiple Citibank accounts associated with Defendants ARGM Global LLC ("ARGM Global") and Alexandria Nicol Rivera ("Rivera"), some of those funds were later transferred into Rivera's Crypto.com fiat wallet

account maintained by CFSB. Plaintiff's attenuated allegations are insufficient to establish personal jurisdiction or state a cognizable claim against CFSB.

## NATURE OF THE CASE

This action arises out of an alleged fraudulent business e-mail compromise scheme in which Plaintiff Allen Temple Community Economic Development Corporation ("Allen Temple" or "Plaintiff") claims it was induced to wire $310,583.74 intended to pay off a mortgage loan to an account allegedly controlled by fraudsters. The action was originally filed against John Doe defendants and later amended to name Defendants Rivera, ARGM Global, Cross River Bank, Citibank, N.A. ("Citibank"), Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com") and CFSB.

The Complaint alleges that a multi-step series of transactions occurred before any of Plaintiff's funds even purportedly reached CFSB. Specifically, Plaintiff's funds were (1) initially wired to an account at Citibank purportedly held by ARGM Global; (2) subsequently transferred to Rivera's personal Citibank account; and (3) later partially sent to various other financial institutions. As relevant here, the Complaint alleges that two later transfers, in the amounts of $17,400 and $95,000, were sent from Rivera's personal Citibank account—after first being transferred from ARGM Global's Citibank account—to a Crypto.com fiat wallet account associated with CFSB. Plaintiff seeks to impose liability on CFSB based on its alleged connection to those two downstream transactions, which, according to the Complaint, occurred only after the funds had already left Plaintiff's account and passed through two Citibank accounts controlled by Rivera and ARGM. These allegations are insufficient as a matter of law. Plaintiff cannot plausibly state a claim against CFSB based on such attenuated conduct, and the claims against CFSB should be dismissed with prejudice.

## STATEMENT OF FACTS

For purposes of this Motion only, and accepting the Complaint's allegations as true, the relevant facts are as follows. CFSB reserves all rights to dispute, clarify, or otherwise challenge Plaintiff's allegations as appropriate.

### 1. As Part of the Business Email Compromise Fraud Scheme, Plaintiff Authorized a Wire Transfer to the ARGM Global Citibank Account.

Plaintiff Allen Temple is a South Carolina non-profit. *See* Complaint at ¶ 1. On or about August 6, 2025, Plaintiff requested wiring instructions from non-party Greenville Housing Fund ("GHF") to pay off its mortgage loan. *Id.* at ¶¶ 12-13. On or about August 8, 2025, Plaintiff "received what appeared to be a legitimate PDF attachment from GHF containing payoff information and wiring instructions." *Id.* at ¶ 14. According to the Complaint, email communications between Allen Temple and GHF were then unlawfully accessed, intercepted, and modified to substitute fraudulent wiring instructions directing payment to a Citibank account held by ARGM Global LLC, a company controlled by Defendant Rivera. *See id.* at ¶¶ 15-18. Relying on those instructions, Plaintiff authorized a wire transfer of $310,583.74 to the ARGM Global Citibank account. *Id.* at ¶¶ 17-18.

### 2. The Funds Were Transferred from ARGM's Citibank Account to Rivera's Personal Citibank Account.

The Complaint alleges that, immediately after receiving Plaintiff's funds, Rivera transferred approximately $300,000 from the ARGM Global Citibank account to her personal Citibank account ending in 6895. *Id.* ¶¶ 24–25. From that personal account, Rivera "distributed the funds in a series of outgoing wire transfers to multiple institutions." *Id.* at ¶ 25.

**3. <u>Rivera Transferred Funds to Her Crypto.com Fiat Wallet Account, Held at CFSB.</u>**

CFSB is a federally chartered savings bank that serves as the program bank for Crypto.com's fiat wallet product. *Id.* at ¶ 5. According to the Complaint, Rivera created a Crypto.com account on or about August 5, 2024, which was assigned a CFSB internal number ending in 3556. *Id.* at ¶¶ 5-6. From Rivera's personal Citibank account, two wire transfers were sent to that Crypto.com fiat wallet account, $17,400 on August 6, 2025, and $95,000 on August 12, 2025. *Id.* at ¶¶ 25-29. In each instance, Rivera then converted the $USD funds into cryptocurrency and withdrew the cryptocurrency to an external blockchain wallet. *Id.* at ¶¶ 28-30. By August 12, 2025, all $112,400 had been converted to cryptocurrency and withdrawn from the Crypto.com platform. *Id.* at ¶¶ 29-30.

**4. <u>Citibank's Recall Notice Arrived After All Funds Had Left the Platform.</u>**

On August 14, 2025—days after the last funds were withdrawn—Citibank's Wire Investigation Unit sent an email to CFSB attaching an "HHL notice" identifying the two transfers ($17,400 and $95,000) as unauthorized. *Id.* at ¶ 31. The notice requested that CFSB advise whether any funds remained available for recall. *Id.* The Complaint concedes that, by this date, "all $112,400 had already been converted to XRP and withdrawn from the Crypto.com platform." *Id.* at ¶ 32. On August 15, 2025, Crypto.com sent Rivera a correspondence stating "it was limiting account features in response to a dispute notification from the issuer." *Id.* at ¶¶ 32-33. The Complaint further alleges that on January 5, 2026, CFSB's Fraud/Risk Analyst responded to Citibank requesting additional details regarding the transactions. *Id.*

In addition, the Complaint alleges that Rivera's Crypto.com account exhibited a pattern of receiving wire deposits and converting the funds to cryptocurrency for withdrawal to "at least ten different external cryptocurrency wallet addresses" between August 2024 and August 2025. *Id.* at

¶ 34. The Complaint characterizes this activity as "suspicious" but does not allege any facts to suggest that CFSB knew or had reason to know that any particular transaction or external wallet address was associated with illicit activity. *See id.* at ¶¶ 34-35.

## LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2)

Under Rule 12(b)(2), a court may dismiss a complaint for lack of personal jurisdiction if a plaintiff cannot show personal jurisdiction over a defendant. *See, e.g., Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) ("Where…the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."); *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018) (noting that courts may revisit jurisdictional issues throughout the case because "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following the defendant's jurisdictional challenge," and "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence").

To demonstrate personal jurisdiction over a defendant, a plaintiff must show that the defendant has "'minimum contacts' with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. To meet this burden, a plaintiff must demonstrate that the defendant is subject to either specific or general jurisdiction in South Carolina." *See Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 644 (D.S.C. 2005), *aff'd sub nom. Dtex LLC v. BBVA Bancomer*, 214 F. App'x 286 (4th Cir. 2007) (cleaned up; internal citations omitted). To establish specific jurisdiction, a plaintiff must demonstrate that the defendant's contacts with the forum state also provide the basis for the suit. *See Carefirst of*

*Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). "In determining whether specific jurisdiction exists, [courts] consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* Separately, general personal jurisdiction over the defendant "must arise from the defendant's general, more persistent, but unrelated contacts with the state. To establish general jurisdiction, the defendant's activities in the state must have been 'continuous and systematic.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

**B. <u>Rule 12(b)(6) Failure to State a Claim</u>**

A court must dismiss a complaint for failure to state a claim upon which relief can be granted if it "lacks a cognizable legal theory" or fails to allege "sufficient facts to support a cognizable legal theory." *See Bostic v. Bostic*, No. CIV.A. 6:14-2130-BHH, 2015 WL 5178163, at *1 (D.S.C. Sept. 3, 2015) (quoting *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)).

"To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" *Wilson v. S.C. L. Enf't Div.*, No. 4:22-CV-2312-JD-KDW, 2023 WL 6172250, at *4 (D.S.C. Sept. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A claim is facially plausible only if—after separating legal conclusions from factual allegations—the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Bostic*, 2015 WL 5178163 at *1 (citing *A Society Without A Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011)).

# ARGUMENT

## I. THE CASE SHOULD BE DISMISSED AS TO CFSB BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER CFSB.

The Court lacks personal jurisdiction over CFSB, and all claims should be dismissed on that basis alone. CFSB hereby adopts and incorporates by reference the arguments set forth in Section I of Defendant Citibank's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint [DE No. 33-1], including Citibank's arguments: (1) that the Court lacks general jurisdiction because Plaintiff cannot establish that it is "at home" in South Carolina; (2) that the Court lacks specific jurisdiction because Plaintiff's claims do not arise out of conduct purposefully directed at South Carolina; (3) that jurisdictional allegations are entirely conclusory and insufficient to support specific jurisdiction; and (4) that exercising jurisdiction over it in this forum would be constitutionally unreasonable. The same deficiencies apply to Plaintiff's claims against CFSB.

### A. CFSB Is Not "At Home" In South Carolina.

CFSB provides additional support demonstrating that Plaintiff cannot plausibly allege a basis for the exercise of general personal jurisdiction over it. Because CFSB maintains its headquarters and principal places of business in New York, CFSB is "at home" in New York for purposes of general personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) ("'With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (Cleaned up); [DE No. 33-1] at 4 (explaining the requirements of general jurisdiction over corporate defendants); Complaint at ¶ 5 (alleging that CFSB "is a federally chartered savings bank with its principal office [in… ] New York"). Outside of those traditional bases for general jurisdiction, general jurisdiction exists only in "exceptional

cases." *See Zidell v. E. W. Bank*, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025).

The requisite exceptional circumstances do not exist here because CFSB's affiliations with South Carolina are not "so continuous and systematic as to render it essentially at home" in South Carolina. *See Daimler*, 571 U.S. at 138-39. Plaintiff's conclusory allegation that CFSB "regularly conducts business" in South Carolina is insufficient to establish personal jurisdiction and does not identify any specific transactions, customers or conduct in South Carolina tied to Plaintiff's claims. According to the Complaint, "CFSB serves as the program bank and charter partner for the…Crypto.com fiat wallet product." *See* Complaint at ¶ 5. Specifically, CFSB is a federally chartered savings bank that provides regulated banking services in partnership with fintech payment solutions providers that serve as banking partners for digital money transfer services, including Crypto.com. Consistent with that model, CFSB does not maintain any physical branch or office, or employees in South Carolina and is not headquartered or incorporated there.

Although CFSB offers accounts to customers nationwide, including in South Carolina, its digital, multistate operations do not render it "at home" wherever its services are accessible — and do not render it at home in South Carolina. The Supreme Court has made clear that "a corporation that operates in many places can scarcely be deemed at home in all of them." *See Daimler*, 571 U.S. at 139, n.20 (noting that "otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."); *see also Dtex, LLC*, 405 F. Supp. 2d at 648 (rejecting general jurisdiction based on banking licenses or regulatory approvals, which would otherwise "violate banks' reasonable expectations and unreasonably subject virtually every bank throughout the world to general jurisdiction in South Carolina regardless of whether the bank maintained a 'continuous and systematic' presence in the state.").

Accordingly, Plaintiff's allegations fall far short of the "exceptional" circumstances required to render a corporation 'at home' outside its place of incorporation or principal place of business, and the Court lacks general personal jurisdiction over CFSB.

**C. The Court Also Lacks Specific Personal Jurisdiction Over CFSB.**

The Court lacks specific personal jurisdiction over CFSB. Independently, Plaintiff's allegations against CFSB fail to allege conduct by CFSB purposefully directed at South Carolina, but instead rest on downstream transactions initiated by third parties outside the forum. Plaintiff does not allege that any act by CFSB occurred in South Carolina. Instead, Plaintiff's claims against CFSB rest on allegations that: (1) CFSB maintained a Crypto.com fiat wallet account—purportedly created by a Florida resident—that exhibited a "pattern of repeated wire deposits followed by immediate conversion to cryptocurrency and withdrawal to multiple external wallets," and received funds through transfers initiated in South Carolina; and (2) CFSB failed to "timely respond to Citibank's August 14, 2025 recall notice," despite conceding that the funds had already been withdrawn to external wallets by that date. *See* Complaint at ¶¶ 31-32, 52.

The mere receipt of funds initiated from South Carolina does not constitute purposeful availment of the forum. *See* DE No. 33-1 at 4-5 (citing cases); *see also Dtex, LLC*, 405 F. Supp. 2d at 645 (holding that defendant's "non-purposive role in wire transfers…falls far short of the more extensive contacts…sufficient for general jurisdiction… [and does] not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank."). Nor does Plaintiff's injury in South Carolina establish jurisdiction over CFSB, as it results from third-party fraud rather than any forum-directed conduct by CFSB. *See generally* DE No. 33-1 at 5-7. Further, Plaintiff's allegation that CFSB failed to "timely respond" to Citibank's August 14, 2025 recall notice does not establish specific jurisdiction because the alleged

omission is neither tied to South Carolina nor reflects any purposeful direction of conduct toward the forum, and as Citibank explains, "the only connection between Citibank's alleged conduct and South Carolina is that Plaintiff happens to be a South Carolina entity that suffered harm." *See* DE No. 33-1 at 6. Plaintiff does not allege (and cannot allege) any direct relationship, agreement or interaction with CFSB.

Finally, exercising jurisdiction over CFSB in this forum would not be constitutionally reasonable. For the reasons set forth in Citibank's memorandum and independently addressed herein, CFSB had no reason to anticipate being haled in South Carolina court based solely on its role as the program bank and charter partner for the Crypto.com fiat wallet product—particularly where the account at issue was held by a Florida customer who allegedly received fraudulently transferred funds. Accordingly, the Court also lacks specific personal jurisdiction over CFSB.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST CFSB.

Even if the Court had personal jurisdiction over CFSB, Plaintiff's claims against CFSB should be dismissed for failure to state a cognizable claim. First, Plaintiff's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") fails because the Complaint does not plausibly allege any of the statute's required elements. Second, Plaintiff's conversion claim must be dismissed because Plaintiff does not and cannot allege that CFSB participated in any wrongful taking of Plaintiff's funds or that Plaintiff had an immediate, established right to any fees purportedly retained by CFSB. Third, Plaintiff's unjust enrichment claim fails because Plaintiff has an adequate remedy at law and does not plausibly allege that CFSB was unjustly enriched at Plaintiff's expense. Finally, Plaintiff's request for a constructive trust must be dismissed because it is not an independent cause of action, and, in any event, is unavailable where the Complaint

concedes that CFSB no longer possesses the funds at issue and likewise fails to allege that those funds are traceable to a specific res.

### A. Plaintiff Fails to State a Claim Under the South Carolina Unfair Trade Practices Act.

Plaintiff's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") should be dismissed because the Complaint fails to state a claim upon which relief may be granted. "To state a claim under [the] SCUTPA, a plaintiff must allege '(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.'" *See Gilbert v. Wells Fargo Bank, N.A.*, 698 F. Supp. 3d 844, 851 (D.S.C. 2023) (quoting *Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013)). Plaintiff fails to plausibly allege any of these elements, warranting dismissal of the SCUTPA claim as to CFSB for the following independent reasons.

#### 1. <u>Plaintiff Fails to Allege that CFSB Engaged in an Unlawful Trade Practice.</u>

The Court should dismiss the SCUTPA claim because Plaintiff fails to sufficiently allege that CFSB engaged in unfair or deceptive acts or practices. Under the SCUTPA, "'an unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive.'" *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702, at *3 (D.S.C. July 3, 2025) (quoting *deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000)). Plaintiff alleges that "CFSB engaged in unfair and deceptive acts or practices…by onboarding[1] and maintaining the Rivera Crypto.com fiat wallet account ending in

[1] Plaintiff's Complaint also fundamentally misunderstands and mischaracterizes the relationship between CFSB and Crypto.com, but for purposes of this motion to dismiss the Court must accept those allegations as true.

3556 despite a 13-month pattern of repeated wire deposits followed by immediate conversion to cryptocurrency and withdrawal to multiple external wallets, receiving $17,400.00 and $95,000.00 in stolen funds without implementing or enforcing adequate fraud or detection or anti-money-laundering controls, and failing to respond to Citibank's August 14, 2025 recall notice." *See* Complaint at ¶ 52.

The conduct alleged—CFSB acting as a financial institution to process customer-directed transactions—is insufficient to state a claim under SCUTPA. A financial institution's compliance with a customer's instructions, even where the customer misrepresents the purpose of the transactions or the transactions later prove harmful, "cannot constitute unfair practices under the SCUTPA." *See Nauful*, 2025 WL 1836702, at *4 (explaining that "it is not the law nor the public policy in South Carolina to require a financial institution to deny a [customer] access to her own funds."). Similarly, the "mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers." *Big Red Box, LLC v. Square, Inc.*, No. CV 3:18-758-SAL-SVH, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020); *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.") (citing cases).

Further, Plaintiff's allegations that CFSB failed to implement or enforce adequate fraud detection or anti-money-laundering controls cannot support a SCUTPA claim because it is well-established that such obligations "do not give rise to a duty of care owed to plaintiffs" because the "duty to monitor and report suspicious activity…is owed to the government of the United States." *See, e.g., Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at *2 (N.D. Ohio Dec. 20, 2013) (also noting that courts have not recognized "a duty of care [arising from regulatory

monitoring requirements] owed to individual plaintiffs"); *Ventura General Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6-7 (N.D. Cal. Aug. 1, 2019) (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) (collecting cases dismissing negligence-based claims premised on alleged violations of federal compliance obligations and finding no corresponding duty to bank customer)); *SFS Check, LLC v. First Bank of Del.*, 990 F.Supp.2d 762, 775 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014) (holding that regulatory requirements "do[] not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff."); *Pub. Serv. Co. of Okla v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) (explaining that duties arising from regulatory frameworks are owed to the government, not private litigants). To the extent Plaintiff's allegations rely on purported deficiencies in anti-money-laundering or monitoring practices, such obligations are owed to regulators and do not create duties to private third parties, including non-customers such as Plaintiff. *See supra* at 12 (citing cases holding that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.).

Thus, Plaintiff fails to sufficiently allege any conduct on behalf of CFSB that is actionable under the SCUTPA, and its claim should be dismissed.

**2. <u>Plaintiff Fails to Plausibly Allege Damages Caused by CFSB's Unlawful Conduct.</u>**

The Court should also dismiss the SCUTPA claim because Plaintiff fails to plausibly allege that it suffered actual, ascertainable damages as a result of CFSB's purported unlawful trade practice. To have standing to bring a claim under SCUTPA, a plaintiff must have "suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice." *See Nauful*, 2025 WL 1836702, at *3 (citing *Collins Holding Corp. v. Defibaugh*, 646 S.E.2d 147, 150 (S.C. Ct. App. 2007); *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998)).

"SCUTPA requires that a private claimant suffer an *actual* loss, injury, or damage, and requires a causal connection between the injury-in-fact and the complained of unfair or deceptive acts or practices." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 57–58 (2015).

Plaintiff fails to plausibly allege a causal connection here. The Complaint instead describes an attenuated sequence of events involving multiple independent actors that forecloses any reasonable inference that CFSB caused Plaintiff's loss. Specifically, Plaintiff alleges: (1) that it was induced to wire funds to a Citibank account associated with ARGM Global, *see* Complaint at ¶¶ 14-18; (2) that its funds were then transferred to Rivera's personal Citibank account, *see id.* at ¶¶ 24-25; (3) that Rivera subsequently transferred funds from her personal Citibank account to her Crypto.com fiat wallet account, which bore a CFSB account number, *see id.* at ¶¶ 25-29; and (4) that Rivera thereafter converted the funds to cryptocurrency and transferred them to external wallet addresses beyond CFSB's control, *see id.* at ¶¶ 27-29.

Plaintiff's own allegations confirm that any involvement by CFSB occurred only after the alleged fraud was fully executed and the funds had already been transferred through multiple third-party accounts, breaking any causal chain as a matter of law. Conclusory allegations do not cure these deficiencies—to the extent the Complaint asserts, in vague and impermissible group-pleaded fashion, that "Defendants" intercepted Plaintiff's wiring instructions, *id.* at ¶ 15, such allegations are insufficient to state a claim. The Complaint pleads no non-conclusory facts supporting any inference that CFSB played any role in intercepting or redirecting Plaintiff's initial wire instructions, and such group allegations cannot establish causation or liability.

Furthermore, Plaintiff cannot plausibly allege that CFSB's alleged failure to respond to Citibank's August 14, 2025 recall notice, *see* Complaint at ¶ 52, caused its injuries. The Complaint concedes that, by the time Citibank's Wire Investigation Unit sent the letter to CFSB, the funds

had already been converted into cryptocurrency and transferred off the Crypto.com platform. *See* Complaint at ¶¶ 31-32. Because the funds were no longer within CFSB's control at the time of the notice, any alleged failure to respond could not have caused Plaintiff's loss. In addition, Plaintiff identifies no legal duty (contractual, statutory or otherwise) requiring a financial institution to act on behalf of a non-customer in response to a post-transaction recall notice, particularly where, as alleged by Plaintiff, the funds were no longer within the institution's control.

Because CFSB's alleged involvement arose only at the tail end of the transaction sequence, after the alleged fraud was complete and the funds had already passed through multiple third-party accounts, Plaintiff cannot plausibly allege that its damages were sustained as a result of any act or omission by CFSB, and Plaintiff's SCUTPA claim should be dismissed.

**3. Plaintiff Fails to Allege an Adverse Impact on the Public Interest.**

Finally, the SCUTPA claim should be dismissed because Plaintiff fails to plausibly allege that CFSB's conduct had an adverse impact on the public interest—an essential element of a SCUTPA claim. "Under South Carolina law, unfair or deceptive acts have an adverse impact upon the public if those acts have the potential for repetition." *Gilbert*, 698 F. Supp. 3d at 851. "There are two general ways to demonstrate the potential for repetition: (1) by showing the same kind of actions occurred in the past, thus making it likely the actions will continue absent some deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *See Nauful*, 2025 WL 1836702, at *3 (citing *deBondt*, 536 S.E.2d at 407).

Here, Plaintiff invokes the latter theory of repetition by alleging that "the conduct of each financial institution Defendant has the potential for repetition affecting the public interest because BEC wire fraud schemes are systemic, the onboarding, monitoring, KYC, AML, and recall practices described [in the Complaint] are capable of recurring, and similar customers and

transactions would be treated in the same way under Defendants' current procedures." Complaint at ¶ 55. These allegations are insufficient as a matter of law.

For one, Plaintiff's allegations are wholly speculative and improperly lump together multiple defendants without identifying any specific policy, procedure, or practice attributable to CFSB that could give rise to repeated unlawful conduct. "South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." *See, e.g., Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*, 711 F. Supp. 3d 593, 600 (D.S.C. 2024) (dismissing SCUTPA claim where plaintiff alleged that defendant banks "collected transfer fees from the alleged transaction and still retain them despite knowing of its fraud"); *Beattie v. Nations Credit Fin. Servs. Corp.*, 65 F. App'x 893, 897 (4th Cir.), *on reh'g*, 69 F. App'x 585 (4th Cir. 2003) ("Specific facts are required to prove an adverse impact on the public interest."); *Big Red Box, LLC*, 2020 WL 465928, at *16 (dismissing SCUTPA claim against financial institution and holding that "Plaintiff has failed to offer any allegations, beyond conclusory allegations, that [financial institution's] '*procedures* created a potential for repetition of the unfair and deceptive acts.'") (emphasis in original).

By way of example, Plaintiff's allegations mirror those rejected in *Ethox Chemical, LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013). There, the court dismissed a SCUTPA claim with prejudice based on similarly generalized assertions that the defendant's conduct could recur,[2] explaining that "even if [defendant] has been accused of

[2] "With regard to public interest, the complaint merely states: 'This case does not represent the first instance in which Coca–Cola has been accused of engaging in unfair methods of competition and deceptive business practices. Without Court intervention, there is a legitimate threat that Coca–Cola will continue to engage in unfair practices and repeat its deceptive business practices, and, as a result, Coca–Cola's actions adversely affect the public interest.'" *Ethox Chem., LLC*, 2013 WL 41001, at *3.

similar past violations, … allegations of accusations are not the same as allegations of specific similar past acts." *Id.* The court further emphasized that the complaint failed to identify "any specific procedures or business practices that create the potential for repetition" and noted that the alleged conduct affected "only the parties and not the broader public." *Id.* Based on these deficiencies, the court held that such "conclusory allegations, without supportive facts, are not enough to survive [a] motion to dismiss." *Id.*

The same is true here. Plaintiff offers only generalized and conclusory assertions that "the conduct of each financial institution Defendant has the potential for repetition…because…practices described herein are capable of recurring," without identifying any specific procedures or business practices that create the potential for repetition. *See* Complaint at ¶ 55.[3] Because Plaintiff fails to plausibly allege that CFSB's conduct had an adverse impact on the public interest, the SCUTPA claim should be dismissed.

**B. Plaintiff Fails to State a Plausible Claim for Conversion.**

Plaintiff's conversion claim against CFSB fails because the alleged facts do not, as a matter of law, constitute conversion. Plaintiff alleges that CFSB "wrongfully exercised dominion and control over Plaintiff's funds…by receiving, retaining, transferring, or dissipating" funds deposited into Rivera's Crypto.com fiat wallet, and that CFSB purportedly "retained" or "benefitted from" "fees, spreads, and other revenue" associated with those funds. *See* Complaint at ¶¶ 24-25, 60, 62. But the Complaint makes clear that those deposits originated from Rivera's personal Citibank account, which itself allegedly received the funds from a separate Citibank

---

[3] CFSB also hereby adopts and incorporates by reference Citibank's arguments set forth in DE No. 33-1 at 16-17 (Section IV), including that Plaintiff fails to identify any pattern or practice of Citibank processing fraudulent wires and that Plaintiff offers no factual basis to conclude that this isolated incident is likely to be repeated. *See* DE No. 33-1 at 16-17 (citing cases in support).

account held by ARGM Global. *Id.* at ¶¶ 24-26. On these allegations, Plaintiff cannot plausibly allege that CFSB exercised wrongful dominion or control over Plaintiff's funds.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Big Red Box, LLC*, 2020 WL 465928, at *8 (internal citations and quotation marks omitted) (citing *Bank of New York v. Sumter Cty.*, 691 S.E.2d 473, 479 (S.C. 2010); *Moore v. Weinberg*, 681 S.E.2d 875 (S.C. 2009)). To state a claim for conversion, the plaintiff must allege a property interest in identifiable funds and an entitlement "to immediate possession of the converted item." *See id.*; *Gillins v. Celadon Trucking Servs., Inc.*, No. 2:16-CV-00795-DCN, 2016 WL 4455018, at *6 (D.S.C. Aug. 24, 2016) (quoting *Hennes v. Shaw*, 725 S.E.2d 501, 508 (S.C. Ct. App. 2012)); *Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727, 729-30 (W.D. Va. 2004)). Courts have expressly recognized that, "once funds are deposited in a bank account, the funds become the property of the bank," rendering conversion claims against banks improper. *See Big Red Box, LLC*, 2020 WL 465928, at *9. Consistent with that rule, "fraudulently obtained funds are converted ***by the fraudster***, not his bank," and allegations of customer fraud do "not create an immediate, established right to that customer's funds on deposit with the bank, enforceable against the bank in conversion." *See id.* (citing *Eisenberg*, 301 F.3d at 225).

Here, Plaintiff's theory of conversion rests on an alleged series of transfers carried out by ARGM Global and Rivera, not CFSB. *See* Complaint at ¶¶ 24-28 (alleging that "Rivera began distributing the stolen funds from the ARGM Global Citibank account to her personal Citibank account…through a series of internal transfers" and only thereafter made two deposits into her Crypto.com fiat wallet account). The alleged sequence forecloses any claim that CFSB engaged in a wrongful taking, which alone warrants dismissal of CFSB's conversion claim. In addition,

Plaintiff cannot establish the required immediate and possessory right to the funds at issue. At most, the Complaint alleges that Plaintiff's funds were fraudulently transferred between third-party accounts before reaching the Crypto.com fiat wallet, which is insufficient to allege that Plaintiff has a present right to those funds as against CFSB. *See, e.g., Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975) (holding conversion did not exist where an employee "had only a disputed claim for her wages, not an immediate right to payment").

Plaintiff's allegations that CFSB "retained" or "benefitted from" purported "fees, spreads, and other revenue generated by handling those funds," *see* Complaint at ¶ 62, likewise fail. As a preliminary matter, because Plaintiff alleges no underlying facts to support these conclusory allegations, they must be disregarded. *See Bostic*, 2015 WL 5178163 at *1 (explaining that courts must separate legal conclusions from factual allegations in determining a Rule 12(b)(6) motion). Moreover, Plaintiff does not—and cannot—plausibly allege that CFSB participated in the alleged fraud scheme or received proceeds pursuant to any agreement related to that conduct. To the contrary, the Complaint shows that CFSB's alleged involvement in this action arose only after the funds had been transferred through multiple bank accounts and were thereafter deposited into a Crypto.com fiat wallet account. *See* Complaint ¶¶ 24–29, 31–32. Such downstream conduct cannot support a claim for conversion. *See Fitzgibbons on behalf of Dir. of S.C. Dep't of Ins. v. Atkinson*, C/A No. 817-02092-TMC-JDA, 2019 WL 5856265, at *9 (D.S.C. Aug. 22, 2019) ("A receipt of the proceeds, or a part thereof, of goods which have been wrongfully converted by a third person is not a conversion, unless defendant participated in the wrongful act, or took such proceeds in accordance with a prior agreement which related to the act of conversion as well as to the sharing in the proceeds."). Accordingly, Plaintiff's conversion claim must be dismissed.

### C. Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff alleges in conclusory, group-pleaded terms that "Defendants" were enriched by receiving Plaintiff's funds and that the financial institution defendants[4] retained purported "fees, spreads, or other financial benefits…including exchange fees, account-related charges, or other transaction-based revenue," without alleging any supporting facts. *See* Complaint at ¶¶ 65, 67. Plaintiff's conclusory allegations are insufficient to state a plausible claim for relief, and its unjust enrichment claim should be dismissed on that basis alone.

Even setting that threshold deficiency aside, the Complaint fails to allege sufficient facts to support an unjust enrichment claim against CFSB. As explained below, Plaintiff does not plausibly allege any of the required elements. "To recover for unjust enrichment, a plaintiff must show three elements: (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. 2021); *see also Manning & Sons Trucking & Utilities, LLC v. McCarthy Improvement Co.*, No. 5:17-CV-01994-JMC, 2018 WL 3008990, at *3 (D.S.C. June 14, 2018).

#### i. <u>Plaintiff Fails to Sufficiently Allege a Benefit Conferred Upon CFSB.</u>

Plaintiff's unjust enrichment claim against CFSB fails because Plaintiff fails to sufficiently allege that it conferred any benefit on CFSB. Plaintiff could not have conferred a benefit upon CFSB where the Complaint makes clear that Plaintiff did not choose to utilize CFSB's services or provide any funds to CFSB in exchange for those services. Nor does the Complaint allege that Plaintiff paid for, requested, or otherwise conferred anything of value on CFSB in connection with

[4] Citibank, CFSB, Crypto.com, and Cross River.

the transactions at issue. Indeed, Plaintiff does not allege that it had any relationship with CFSB, directed any transactions to CFSB, or even knew of CFSB's alleged involvement at the time of the transfers. Instead, the Complaint alleges that Plaintiff's funds were transferred through accounts held by ARGM Global and Rivera before ultimately being deposited into a Crypto.com fiat wallet. *See* Complaint ¶¶ 24–28. Thus, any purported benefit to CFSB, if one existed at all, arose only downstream through intermediaries—not from Plaintiff.

Under these circumstances, Plaintiff cannot plausibly allege that it conferred a benefit on CFSB sufficient to support an unjust enrichment claim, and Plaintiff's unjust enrichment claim must be dismissed. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 688 (D.S.C. 2021) (affirming dismissal of unjust enrichment claim because plaintiffs did not allege any benefit conferred directly from plaintiffs to defendant or that plaintiffs chose to engage with the defendant, and any benefit arose, if at all, through intermediaries); *Inglese v. Beal*, 403 S.C. 290, 298 (Ct. App. 2013) (holding that no benefit was conferred for purposes of unjust enrichment claim where payment to the defendant was made by a third party, not the plaintiff).

**ii. Plaintiff Fails to Plausibly Allege Realization or Retention of a Purported Benefit by CFSB.**

Because Plaintiff conferred no benefit on CFSB, CFSB could not have realized any value from or retained such a non-existent benefit. *See Inglese*, 403 S.C. 290 at 298. But even if the alleged funds or purported "financial benefits" could be construed as a benefit, Plaintiff still fails to plausibly allege that CFSB retained any such benefit under circumstances that would make its retention inequitable. Even assuming that CFSB had retained "fees," "spreads," or other "financial benefits" referenced in conclusory terms in the Complaint, Plaintiff does not allege that any such amounts were improper or exceeded ordinary charges for services rendered. On that basis alone, the unjust enrichment claim fails. *See Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005

WL 7084013, at *6 (S.C. Ct. App. May 25, 2005) (affirming summary judgment for defendant where plaintiff did not allege that defendant "was unjustly enriched by taking more than its 'regular rates'" but instead alleged only that defendant "took more than was allowed" based on a contract between defendant and third parties).

Plaintiff's contention that CFSB retained a benefit by "receiving" the funds via Rivera's Crypto.com fiat wallet also fails as a matter of law because the Complaint does not allege that CFSB retained the funds. To the contrary, the Complaint affirmatively alleges that the funds were quickly withdrawn to external wallet addresses, negating any plausible inference of retention. *See, e.g.,* Complaint at ¶ 28 (alleging that funds deposited into Rivera's Crypto.com account on August 6, 2025 were withdrawn to an external blockchain wallet address on August 7, 2025); *id.* at ¶ 29 (alleging that funds deposited into Rivera's Crypto.com account on August 12, 2025 were withdrawn to an external blockchain wallet address the same day). Because the Complaint establishes that the funds were transferred to third parties, it fails to allege that CFSB retained any benefit, and Plaintiff has therefore failed to state a claim for unjust enrichment. *See, e.g., Jackson v. Smith & Downey, PA*, No. 2:17-CV-3299-PMD-JDA, 2018 WL 4560534, at *5 (D.S.C. June 18, 2018), *report and recommendation adopted sub nom. Jackson v. Smith & Downey, P.A.*, No. 2:17-CV-3299-PMD-JDA, 2018 WL 3722288 (D.S.C. Aug. 6, 2018) (granting motion to dismiss unjust enrichment claim where proceeds were paid to a third party, "thereby establishing that Defendants did not retain any benefit from the [] proceeds.").

**iii. <u>Equitable Relief Is Not Available Under the Circumstances Alleged.</u>**

Finally, Plaintiff's unjust enrichment claim should be dismissed because equitable relief is unavailable under the circumstances alleged here. "Unjust enrichment is an equitable doctrine, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *See Barrett v. Miller*, 283 S.C. 262, 264 (Ct. App. 1984) (cleaned up). "It is well

settled that a suit in equity will not lie when there is an adequate remedy at law." *U.S. ex rel. Drakeford v. Tuomey*, 976 F. Supp. 2d 776, 792 (D.S.C. 2013), *aff'd*, 792 F.3d 364 (4th Cir. 2015); *see also Barrett*, 283 S.C. at 264 ("Where a plaintiff has an adequate remedy at law, equitable relief is not normally in order."); *see also Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 259, 715 S.E.2d 348, 358 (Ct. App. 2011) (explaining the "equitable maxim[,] commonly phrased as 'he who seeks equity must do equity.'"). "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 328 (Ct. App. 2011). Here, Plaintiff's unjust enrichment claim fails because the Complaint demonstrates the availability of an adequate remedy at law, as it asserts multiple claims seeking monetary damages arising from the same alleged conduct.

The claim also independently fails because the benefits Plaintiff seeks to recover arise, if at all, from contractual relationships governing the accounts and transactions at issue. Plaintiff alleges, in conclusory, group-pleaded terms, that "Defendants" were enriched by receiving Plaintiff's funds, and that the financial institution defendants retained "fees, spreads, or other financial benefits," including "exchange fees, account-related charges, or other transaction-based revenue." Complaint at ¶¶ 65, 67. But such fees, if any, are surely governed by the applicable account and service agreements. Where an express contract governs the subject matter, equitable relief is unavailable—even to a non-party seeking to recover benefits arising from that arrangement. *See Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *5 (S.C. Ct. App. May 25, 2005) (affirming summary judgment for defendant where plaintiff was not a party to agreement but based his unjust enrichment claim on benefits arising from that agreement).

**D. The Constructive Trust Claim Should Be Dismissed Because It Is A Remedy, Not An Independent Cause of Action.**

In its Sixth Cause of Action, Plaintiff seeks the imposition of a constructive trust "over all funds or assets, wherever located and in whomever's name held, that are traceable to Plaintiff's stolen funds or the proceeds thereof." Complaint at ¶ 76 This request is improper because it seeks equitable relief untethered to any viable claim or factual basis. At the outset, a constructive trust is a remedy—not a standalone cause of action—and therefore cannot survive absent a viable underlying claim. *See Hale v. Finn*, 388 S.C. 79, 89 (Ct. App. 2010) (discussing the ample authority supporting principle that "a claim for imposition of a constructive trust is not an independent cause of action."). Thus, because Plaintiff's substantive claims fail for the reasons set forth above, its request for a constructive trust necessarily fails as well.

Even if properly considered, Plaintiff fails to allege facts sufficient to justify the imposition of a constructive trust. Under South Carolina law, a constructive trust is an equitable remedy imposed only where a defendant has wrongfully obtained or retained property under circumstances that make it inequitable to do so. *See PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 641–42 (D.S.C. 2015) (explaining that a constructive trust applies where a party "has obtained, or holds the right to property, which he ought not in equity and good conscience hold," and requires wrongdoing by the party against whom the trust is sought). Consistent with that principle, a constructive trust typically arises from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty." *Lollis v. Lollis*, 291 S.C. 525, 529 (1987); *see also In re Stevenson*, 668 B.R. 366, 377 (Bankr. D.S.C. 2025) ("Generally, fraud is an essential element giving rise to a constructive trust").

Here, Plaintiff's request for a constructive trust against CFSB fails for at least two independent reasons. First, the Complaint affirmatively establishes that CFSB does not possess or retain the funds at issue. A constructive trust may be imposed only where the defendant holds the property or its proceeds; it cannot be imposed where the defendant no longer possesses the alleged res. Second, Plaintiff fails to allege that the funds are traceable to any specific, identifiable res in CFSB's possession. This omission is fatal. *See In re Stevenson*, 668 B.R. at 377 ("In order to maintain a claim for constructive trust, the plaintiff must be able to trace the funds into the res at issue."). Instead, the Complaint alleges that the funds were transferred through multiple accounts and ultimately withdrawn to external wallet addresses, precluding any plausible inference that a traceable res remains with CFSB. Because Plaintiff neither alleges that CFSB possesses the property at issue nor identifies a traceable res, and fails to allege any wrongdoing by CFSB sufficient to justify equitable relief, its request for a constructive trust fails as a matter of law and should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant Community Federal Savings Bank respectfully requests that the Court dismiss with prejudice all claims asserted against it by Plaintiff Allen Temple Community Economic Development Corporation, and grant such other relief in favor of Community Federal Savings Bank that the Court deems just and proper.

Dated: June 11, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*
Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**
2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Community Federal Savings Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*