**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

*Plaintiff*,

v.

ALEXANDRIA NICOL RIVERA, *et al.*,

*Defendants*.
__________________________________/

Civil Action No. 6:25-cv-12713-TMC-SVH

**DEFENDANT FORIS DAX, INC. D/B/A CRYPTO.COM'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com") moves to dismiss with prejudice all claims asserted against it in these proceedings by Plaintiff Allen Temple Community Economic Development Corporation for failure to state a claim upon which relief can be granted. The grounds and authorities in support of this Motion are set forth in the enclosed Memorandum of Law in Support of Crypto.com's Motion to Dismiss.

**WHEREFORE**, Defendant Foris DAX, Inc. d/b/a Crypto.com respectfully requests that the Court enter an Order dismissing with prejudice Plaintiff's First Amended Complaint as to Crypto.com and awarding any other relief in favor of Crypto.com that this Court deems just and proper.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*
Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**

2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Foris DAX, Inc. d/b/a Crypto.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*____________

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

*Plaintiff*,

v.

ALEXANDRIA NICOL RIVERA, *et al.*,

*Defendants*.
__________________________________/

Civil Action No. 6:25-cv-12713-TMC-SVH

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORIS DAX, INC. D/B/A CRYPTO.COM'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com" or "Defendant") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Allen Temple Community Economic Development Corporation's First Amended Complaint (the "Complaint") and states as follows.

## INTRODUCTION

This case should be dismissed with prejudice as to Crypto.com because Plaintiff fails to plausibly allege (1) that Crypto.com had any involvement in the alleged fraud or (2) that Crypto.com had any knowledge that the funds deposited into its customer's account were derived from fraud. Instead, the Complaint establishes that, **after** the alleged Business Email Compromise scheme was complete, and the funds had already moved through multiple Citibank accounts associated with Defendants ARGM Global LLC ("ARGM Global") and Alexandria Nicol Rivera ("Rivera"), some of those funds were later deposited by Rivera into her Crypto.com account, where they were then

converted to cryptocurrency at Rivera's direction. Plaintiff's attenuated allegations are insufficient to state a cognizable claim against Crypto.com.

## NATURE OF THE CASE

This action arises out of an alleged fraudulent business e-mail compromise scheme in which Plaintiff Allen Temple Community Economic Development Corporation ("Allen Temple" or "Plaintiff") claims it was induced to wire $310,583.74 intended to pay off a mortgage loan to an account allegedly controlled by fraudsters. The action was originally filed against John Doe defendants and later amended to name Defendants Rivera, ARGM Global, Cross River Bank ("River Bank"), Citibank, N.A. ("Citibank"), Community Federal Savings Bank ("CFSB"), and Crypto.com.

The Complaint alleges that a multi-step series of transactions occurred before any of Plaintiff's funds even reached Crypto.com. Specifically, Plaintiff's funds were (1) initially wired to an account at Citibank purportedly held by ARGM Global; (2) subsequently transferred to Rivera's personal Citibank account; and (3) later partially sent to various other financial institutions. As relevant here, the Complaint alleges that two later transfers, in the amounts of $17,400 and $95,000, were sent from Rivera's personal Citibank account—after first being transferred from ARGM Global's Citibank account—to Rivera's Crypto.com account. Plaintiff seeks to impose liability on Crypto.com based on its alleged connection to those two downstream transactions, which, according to the Complaint, occurred only after the funds had already left Plaintiff's account and passed through two Citibank accounts controlled by Rivera and ARGM. These allegations are insufficient as a matter of law. Plaintiff cannot plausibly state a claim against Crypto.com based on such attenuated conduct, and the claims against Crypto.com should be dismissed with prejudice.

## STATEMENT OF FACTS

For purposes of this Motion only, and accepting the Complaint's allegations as true, the relevant facts are as follows. Crypto.com reserves all rights to dispute, clarify, or otherwise challenge Plaintiff's allegations as appropriate.

### 1. As Part of the Business Email Compromise Fraud Scheme, Plaintiff Authorized a Wire Transfer to the ARGM Global Citibank Account.

Plaintiff Allen Temple is a South Carolina non-profit. *See* Complaint at ¶ 1. On or about August 6, 2025, Plaintiff requested wiring instructions from non-party Greenville Housing Fund ("GHF") to pay off its mortgage loan. *Id.* at ¶¶ 12-13. On or about August 8, 2025, Plaintiff "received what appeared to be a legitimate PDF attachment from GHF containing payoff information and wiring instructions." *Id.* at ¶ 14. According to the Complaint, email communications between Allen Temple and GHF were then unlawfully accessed, intercepted, and modified to substitute fraudulent wiring instructions directing payment to a Citibank account held by ARGM Global LLC, a company controlled by Defendant Rivera. *See id.* at ¶¶ 15-18. Relying on those instructions, Plaintiff authorized a wire transfer of $310,583.74 to the ARGM Global Citibank account. *Id.* at ¶¶ 17-18.

### 2. The Funds Were Transferred from ARGM's Citibank Account to Rivera's Personal Citibank Account.

The Complaint alleges that, immediately after receiving Plaintiff's funds, Rivera transferred approximately $300,000 from the ARGM Global Citibank account to her personal Citibank account ending in 6895. *Id.* ¶¶ 24–25. From that personal account, Rivera "distributed the funds in a series of outgoing wire transfers to multiple institutions." *Id.* at ¶ 25.

### 3. Rivera Deposited Funds into Her Crypto.com Account and Converted Them to Cryptocurrency.

Crypto.com is an online cryptocurrency trading platform where, in addition to its custodial wallet offerings, users can create a fiat wallet. *Id.* at ¶ 6. According to the Complaint, Rivera created a Crypto.com account on or about August 5, 2024, which was assigned a CFSB internal number ending in 3556. *Id.* at ¶¶ 5-6, 26. From Rivera's personal Citibank account, two wire transfers were sent to that Crypto.com account -- $17,400 on August 6, 2025, and $95,000 on August 12, 2025. *Id.* at ¶¶ 25-29. In each instance, Rivera then converted the funds into cryptocurrency and withdrew the cryptocurrency to an external blockchain wallet. *Id.* at ¶¶ 28-30. By August 12, 2025, all $112,400 had been converted to cryptocurrency and withdrawn from the Crypto.com platform. *Id.* at ¶¶ 29-30.

### 4. Crypto.com Received Notice Only After the Funds Had Been Irreversibly Transferred Out.

The Complaint affirmatively alleges that any notice of purported fraud reached the relevant institutions only **after** the funds had already left the Crypto.com platform. On August 14, 2025—days after the final withdrawals—Citibank's Wire Investigation Unit sent CFSB an email attaching an "HHL notice" identifying two transfers ($17,400 and $95,000) as unauthorized and inquiring whether any funds remained available for recall. *Id.* at ¶ 31. The Complaint concedes that, by that date, "all $112,400 had already been converted to XRP and withdrawn from the Crypto.com platform." *Id.* at ¶ 32. Thus, by Plaintiff's own allegations, the transfers had been completed and the assets moved beyond Crypto.com's control before any recall request or fraud notice was issued. The following day, Crypto.com notified Rivera that "it was limiting account features in response to a dispute notification from the issuer." *Id.* at ¶¶ 32-33. The Complaint further alleges that on January 5, 2026, CFSB's Fraud/Risk Analyst responded to Citibank requesting additional details regarding the transactions. *Id.*

The Complaint points to a purported "pattern" in which Rivera's account received wire deposits, converted funds to cryptocurrency, and withdrew them to "at least ten different external cryptocurrency wallet addresses" between August 2024 and August 2025. *Id.* at ¶ 34. The Complaint characterizes this activity as "suspicious" but offers no non-conclusory facts linking any of those transactions or wallet addresses to illicit activity, much less facts showing that Crypto.com had knowledge of such activity. *See id.* ¶¶ 34–35. In addition, the Complaint alleges that Crypto.com's Know Your Customer (KYC) system detected a mismatch between the name on Rivera's identification and the name provided during account registration, and that internal procedures bypassed the mismatch. *Id.* at ¶¶ 27, 53. But the Complaint does not allege any connection between the alleged mismatch and alleged BEC fraud scheme, which purportedly occurred approximately one year later.

## <u>LEGAL STANDARDS</u>

Under Rule 12(b)(6), a court must dismiss a complaint for failure to state a claim upon which relief can be granted if it "lacks a cognizable legal theory" or fails to allege "sufficient facts to support a cognizable legal theory." *See Bostic v. Bostic*, No. CIV.A. 6:14-2130-BHH, 2015 WL 5178163, at *1 (D.S.C. Sept. 3, 2015) (quoting *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1122 (9th Cir. 2013)).

"To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" *Wilson v. S.C. L. Enf't Div.*, No. 4:22-CV-2312-JD-KDW, 2023 WL 6172250, at *4 (D.S.C. Sept. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A claim is facially plausible only if—after separating legal conclusions from factual allegations—the plaintiff pleads sufficient facts to allow the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *See Bostic*, 2015 WL 5178163 at *1 (citing *A Society Without A Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011)).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM AGAINST CRYPTO.COM.

Plaintiff's claims against Crypto.com should be dismissed for failure to state a cognizable claim. First, Plaintiff's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") fails because the Complaint does not plausibly allege any of the statute's required elements. Second, Plaintiff's conversion claim must be dismissed because Plaintiff does not and cannot allege that Crypto.com participated in any wrongful taking of Plaintiff's funds or that Plaintiff had an immediate, established right to any fees purportedly retained by Crypto.com. Third, Plaintiff's unjust enrichment claim fails because Plaintiff has an adequate remedy at law and fails to plausibly allege that Crypto.com was unjustly enriched at Plaintiff's expense. Finally, Plaintiff's request for a constructive trust must be dismissed because it is not an independent cause of action, and, in any event, is unavailable where the Complaint concedes that Crypto.com no longer possesses the funds at issue and likewise fails to allege that those funds are traceable to a specific res.

#### A. Plaintiff Fails to State a Claim Under the South Carolina Unfair Trade Practices Act.

Plaintiff's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") should be dismissed because the Complaint fails to state a claim upon which relief may be granted. "To state a claim under [the] SCUTPA, a plaintiff must allege '(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.'" *See Gilbert v. Wells Fargo Bank, N.A.*, 698 F. Supp. 3d 844, 851 (D.S.C. 2023) (quoting *Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013)). Plaintiff fails to plausibly allege any

of these elements, warranting dismissal of the SCUTPA claim as to Crypto.com for multiple independent reasons.

**1. <u>Plaintiff Fails to Allege that Crypto.com Engaged in an Unlawful Trade Practice.</u>**

First, the Court should dismiss the SCUTPA claim because Plaintiff fails to sufficiently allege that Crypto.com engaged in unfair or deceptive acts or practices. Under the SCUTPA, "'an unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive.'" *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702, at *3 (D.S.C. July 3, 2025) (quoting *deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000)). Plaintiff alleges that "Crypto.com engaged in unfair and deceptive acts or practices in its money services and cryptocurrency exchange business by bypassing its own KYC system's detection of a name mismatch between Rivera's identification document and the account registration information, permitting a 13-month pattern of repeated wire deposits, immediate conversion to cryptocurrency, and rapid withdrawals to multiple external wallets to continue without effective monitoring or reporting, and allowing $112,400.00 of Plaintiff's stolen funds to be converted to XRP and withdrawn before imposing any account restrictions." *See* Complaint at ¶ 53.

The conduct alleged—acting as a financial institution to process customer-directed transactions—is insufficient to state a claim under SCUTPA. A financial institution's compliance with a customer's instructions, even where the customer misrepresents the purpose of the transactions or the transactions later prove harmful, "cannot constitute unfair practices under the SCUTPA." *See Nauful*, 2025 WL 1836702, at *4 (explaining that "it is not the law nor the public policy in South Carolina to require a financial institution to deny a [customer] access to her own funds."). Similarly, the "mere fact that a bank account can be used in the course of perpetrating a

fraud does not mean that banks have a duty to persons other than their own customers." *Big Red Box, LLC v. Square, Inc.*, No. CV 3:18-758-SAL-SVH, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020); *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.") (citing cases). The same principle applies to Crypto.com: it owed no duty to Plaintiff, a non-customer, merely because a customer used the platform to convert funds that allegedly later proved to be the proceeds of fraud.

To the extent Plaintiff's allegations rely on purported deficiencies in anti-money-laundering, monitoring, or KYC practices—including the alleged "bypass" of a name mismatch—those obligations are regulatory in nature and owed to government authorities, not to private third parties such as Plaintiff, a non-customer. Courts consistently hold that such requirements "do not give rise to a duty of care owed to plaintiffs," because the "duty to monitor and report suspicious activity…is owed to the government of the United States." *See, e.g., Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, 2013 WL 6827945, at *2 (N.D. Ohio Dec. 20, 2013) (also noting that courts have not recognized "a duty of care [arising from regulatory monitoring requirements] owed to individual plaintiffs"); *Ventura General Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6-7 (N.D. Cal. Aug. 1, 2019) (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) (collecting cases dismissing negligence-based claims premised on alleged violations of federal compliance obligations and finding no corresponding duty to bank customer)); *SFS Check, LLC v. First Bank of Del.*, 990 F.Supp.2d 762, 775 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014) (holding that regulatory requirements "do[] not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff."); *Pub. Serv. Co. of Okla v. A Plus, Inc.*, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) (explaining that duties arising from

regulatory frameworks are owed to the government, not private litigants). To the extent Plaintiff's allegations rely on purported deficiencies in anti-money-laundering or monitoring practices, such obligations are owed to regulators and do not create duties to private third parties, including non-customers such as Plaintiff.

Thus, Plaintiff fails to sufficiently allege any conduct on behalf of Crypto.com that is actionable under the SCUTPA, and its claim should be dismissed.

**2. <u>Plaintiff Fails to Plausibly Allege Damages Caused by Crypto.com's Unlawful Conduct.</u>**

Second, the Court should dismiss the SCUTPA claim because Plaintiff fails to plausibly allege that it suffered actual, ascertainable damages as a result of Crypto.com's purported unlawful trade practice. To have standing to bring a claim under SCUTPA, a plaintiff must have "suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice." *See Nauful*, 2025 WL 1836702, at *3 (citing *Collins Holding Corp. v. Defibaugh*, 646 S.E.2d 147, 150 (S.C. Ct. App. 2007); *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998)). "SCUTPA requires that a private claimant suffer an *actual* loss, injury, or damage, and requires a causal connection between the injury-in-fact and the complained of unfair or deceptive acts or practices." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 57–58 (2015).

Plaintiff fails to plausibly allege a causal connection here. The Complaint instead describes an attenuated sequence of events involving multiple independent actors that forecloses any reasonable inference that Crypto.com caused Plaintiff's loss. Specifically, Plaintiff alleges: (1) that it was induced to wire funds to a Citibank account associated with ARGM Global, *see* Complaint at ¶¶ 14-18; (2) that its funds were then transferred to Rivera's personal Citibank account, *see id.* at ¶¶ 24-25; (3) that Rivera subsequently transferred funds from her personal Citibank account into her Crypto.com account, *see id.* at ¶¶ 25-29; and (4) that Rivera thereafter converted the funds to

cryptocurrency and transferred them to external wallet addresses beyond Crypto.com's control, *see id.* at ¶¶ 27-29.

Plaintiff's own allegations confirm that any involvement by Crypto.com occurred only after the alleged fraud was fully executed and the funds had already been transferred through multiple third-party accounts, breaking any causal chain as a matter of law. Conclusory allegations do not cure these deficiencies. To the extent the Complaint asserts, in vague and impermissible group-pleaded fashion, that "Defendants" intercepted Plaintiff's wiring instructions, *id.* at ¶ 15, such allegations are insufficient to state a claim. The Complaint pleads no non-conclusory facts supporting any inference that Crypto.com played any role in intercepting or redirecting Plaintiff's initial wire instructions. Plaintiff's group allegations cannot establish causation or liability.

Furthermore, Plaintiff cannot plausibly allege that Crypto.com's alleged failure to detect suspicious activity or enforce adequate KYC procedures caused its injuries. The Complaint makes clear that Plaintiff's loss of $310,583.74 occurred when it wired those funds to the ARGM Global Citibank account on August 8, 2025—well before any funds reached the Crypto.com platform. *See* Complaint at ¶¶ 17-18. Even if Crypto.com had declined to open Rivera's account or had frozen it earlier, the Complaint does not allege that this would have prevented the BEC fraud or Plaintiff's initial loss. Because Plaintiff's damages were sustained before the funds reached Crypto.com, any alleged deficiency in Crypto.com's monitoring or compliance practices could not have caused Plaintiff's loss. In addition, Plaintiff identifies no legal duty (contractual, statutory or otherwise) requiring a financial institution to act on behalf of a non-customer, particularly where, as alleged by Plaintiff, the funds were deposited and withdrawn at the direction of the account holder.

Because Crypto.com's alleged involvement arose only at the tail end of the transaction sequence, after the alleged fraud was complete and the funds had already passed through multiple

third-party accounts, Plaintiff cannot plausibly allege that its damages were sustained as a result of any act or omission by Crypto.com, and Plaintiff's SCUTPA claim should be dismissed.

**3. Plaintiff Fails to Allege an Adverse Impact on the Public Interest.**

Finally, the SCUTPA claim should be dismissed because Plaintiff fails to plausibly allege that Crypto.com's conduct had an adverse impact on the public interest—an essential element of a SCUTPA claim. "Under South Carolina law, unfair or deceptive acts have an adverse impact upon the public if those acts have the potential for repetition." *Gilbert*, 698 F. Supp. 3d at 851. "There are two general ways to demonstrate the potential for repetition: (1) by showing the same kind of actions occurred in the past, thus making it likely the actions will continue absent some deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *See Nauful*, 2025 WL 1836702, at *3 (citing *deBondt*, 536 S.E.2d at 407).

Here, Plaintiff invokes the latter theory of repetition by alleging that "the conduct of each financial institution Defendant has the potential for repetition affecting the public interest because BEC wire fraud schemes are systemic, the onboarding, monitoring, KYC, AML, and recall practices described [in the Complaint] are capable of recurring, and similar customers and transactions would be treated in the same way under Defendants' current procedures." Complaint at ¶ 55. These allegations are insufficient as a matter of law.

For one, Plaintiff's allegations are wholly speculative and improperly lump together multiple defendants without identifying any specific policy, procedure, or practice attributable to Crypto.com that could give rise to repeated unlawful conduct. "South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." *See, e.g., Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*, 711 F. Supp. 3d 593, 600 (D.S.C. 2024) (dismissing SCUTPA claim where plaintiff alleged that defendant banks

"collected transfer fees from the alleged transaction and still retain them despite knowing of its fraud"); *Beattie v. Nations Credit Fin. Servs. Corp.*, 65 F. App'x 893, 897 (4th Cir.), *on reh'g*, 69 F. App'x 585 (4th Cir. 2003) ("Specific facts are required to prove an adverse impact on the public interest."); *Big Red Box, LLC*, 2020 WL 465928, at *16 (dismissing SCUTPA claim against financial institution and holding that "Plaintiff has failed to offer any allegations, beyond conclusory allegations, that [financial institution's] '*procedures* created a potential for repetition of the unfair and deceptive acts.'") (emphasis in original).

By way of example, Plaintiff's allegations mirror those rejected in *Ethox Chemical, LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013). There, the court dismissed a SCUTPA claim with prejudice based on similarly generalized assertions that the defendant's conduct could recur,[1] explaining that "even if [defendant] has been accused of similar past violations, … allegations of accusations are not the same as allegations of specific similar past acts." *Id.* The court further emphasized that the complaint failed to identify "any specific procedures or business practices that create the potential for repetition" and noted that the alleged conduct affected "only the parties and not the broader public." *Id.* Based on these deficiencies, the court held that such "conclusory allegations, without supportive facts, are not enough to survive [a] motion to dismiss." *Id.*

The same is true here. Plaintiff offers only generalized and conclusory assertions that "the conduct of each financial institution Defendant has the potential for

[1] "With regard to public interest, the complaint merely states: 'This case does not represent the first instance in which Coca–Cola has been accused of engaging in unfair methods of competition and deceptive business practices. Without Court intervention, there is a legitimate threat that Coca–Cola will continue to engage in unfair practices and repeat its deceptive business practices, and, as a result, Coca–Cola's actions adversely affect the public interest.'" *Ethox Chem., LLC*, 2013 WL 41001, at *3.

repetition…because…practices described herein are capable of recurring," without identifying any specific procedures or business practices that create the potential for repetition. *See* Complaint at ¶ 55.[2] Because Plaintiff fails to plausibly allege that Crypto.com's conduct had an adverse impact on the public interest, the SCUTPA claim should be dismissed.

**B. Plaintiff Fails to State a Plausible Claim for Conversion.**

Plaintiff's conversion claim against Crypto.com fails because the alleged facts do not, as a matter of law, constitute conversion. Plaintiff alleges that Crypto.com "wrongfully exercised dominion and control over Plaintiff's funds…by receiving, retaining, transferring, or dissipating" funds deposited into Rivera's Crypto.com account, and that Crypto.com purportedly "retained" or "benefitted from" "fees, spreads, and other revenue" associated with those funds. *See* Complaint at ¶¶ 60, 62. But the Complaint makes clear that those deposits originated from Rivera's personal Citibank account, which itself allegedly received the funds from a separate Citibank account held by ARGM Global. *Id.* at ¶¶ 24-26. On these allegations, Plaintiff cannot plausibly allege that Crypto.com exercised wrongful dominion or control over Plaintiff's funds.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Big Red Box, LLC*, 2020 WL 465928, at *8 (internal citations and quotation marks omitted) (citing *Bank of New York v. Sumter Cty.*, 691 S.E.2d 473, 479 (S.C. 2010); *Moore v. Weinberg*, 681 S.E.2d 875 (S.C. 2009)). To state a claim for conversion, the plaintiff must allege a property interest in identifiable funds and an entitlement "to immediate possession of the converted item." *See id.*;

[2] Crypto.com also hereby adopts and incorporates by reference Citibank's arguments set forth in DE No. 33-1 at 16-17 (Section IV), including that Plaintiff fails to identify any pattern or practice of Citibank processing fraudulent wires and that Plaintiff offers no factual basis to conclude that this isolated incident is likely to be repeated. *See* DE No. 33-1 at 16-17 (citing cases in support).

*Gillins v. Celadon Trucking Servs., Inc.*, No. 2:16-CV-00795-DCN, 2016 WL 4455018, at *6 (D.S.C. Aug. 24, 2016) (quoting *Hennes v. Shaw*, 725 S.E.2d 501, 508 (S.C. Ct. App. 2012)); *Terry v. Bank of Am., N.A.*, 350 F. Supp. 2d 727, 729-30 (W.D. Va. 2004)). Courts have expressly recognized that, "once funds are deposited in a bank account, the funds become the property of the bank," rendering conversion claims against banks improper. *See Big Red Box, LLC*, 2020 WL 465928, at *9. Consistent with that rule, "fraudulently obtained funds are converted ***by the fraudster***, not his bank," and allegations of customer fraud do "not create an immediate, established right to that customer's funds on deposit with the bank, enforceable against the bank in conversion." *See id.* (citing *Eisenberg*, 301 F.3d at 225).

Here, Plaintiff's theory of conversion rests on an alleged series of transfers carried out by ARGM Global and Rivera, not Crypto.com. *See* Complaint at ¶¶ 24-28 (alleging that "Rivera began distributing the stolen funds from the ARGM Global Citibank account to her personal Citibank account…through a series of internal transfers" and only thereafter made two deposits into her Crypto.com account). The alleged sequence forecloses any claim that Crypto.com engaged in a wrongful taking, which alone warrants dismissal of Plaintiff's conversion claim. In addition, Plaintiff cannot establish the required immediate and possessory right to the funds at issue. At most, the Complaint alleges that Plaintiff's funds were fraudulently transferred between third-party accounts before reaching the Crypto.com platform, which is insufficient to allege that Plaintiff has a present right to those funds as against Crypto.com. *See, e.g., Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975) (holding conversion did not exist where an employee "had only a disputed claim for her wages, not an immediate right to payment").

Plaintiff's allegations that Crypto.com "retained" or "benefitted from" purported "fees, spreads, and other revenue generated by handling those funds," *see* Complaint at ¶ 62, likewise

fail. As a preliminary matter, because Plaintiff alleges no underlying facts to support these conclusory allegations, they must be disregarded. *See Bostic*, 2015 WL 5178163 at *1 (explaining that courts must separate legal conclusions from factual allegations in determining a Rule 12(b)(6) motion). Moreover, Plaintiff does not—and cannot—plausibly allege that Crypto.com participated in the alleged fraud scheme or received proceeds pursuant to any agreement related to that conduct. To the contrary, the Complaint shows that Crypto.com's alleged involvement in this action arose only after the funds had been transferred through multiple bank accounts and were thereafter deposited into a customer account on the Crypto.com platform at Rivera's direction. *See* Complaint ¶¶ 24–29, 31–32. Such downstream conduct cannot support a claim for conversion. *See Fitzgibbons on behalf of Dir. of S.C. Dep't of Ins. v. Atkinson*, C/A No. 817-02092-TMC-JDA, 2019 WL 5856265, at *9 (D.S.C. Aug. 22, 2019) ("A receipt of the proceeds, or a part thereof, of goods which have been wrongfully converted by a third person is not a conversion, unless defendant participated in the wrongful act, or took such proceeds in accordance with a prior agreement which related to the act of conversion as well as to the sharing in the proceeds."). Accordingly, Plaintiff's conversion claim must be dismissed.

**C. Plaintiff Fails to State a Claim for Unjust Enrichment.**

Plaintiff alleges in conclusory, group-pleaded terms that "Defendants" were enriched by receiving Plaintiff's funds and that the financial institution defendants[3] retained purported "fees, spreads, or other financial benefits…including exchange fees, account-related charges, or other transaction-based revenue," without alleging any supporting facts. *See* Complaint at ¶¶ 65, 67. Plaintiff's conclusory allegations are insufficient to state a plausible claim for relief, and its unjust enrichment claim should be dismissed on that basis alone.

[3] Citibank, CFSB, Crypto.com, and Cross River.

Even setting that threshold deficiency aside, the Complaint fails to allege sufficient facts to support an unjust enrichment claim against Crypto.com. As explained below, Plaintiff does not plausibly allege any of the required elements. "To recover for unjust enrichment, a plaintiff must show three elements: (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. 2021); *see also Manning & Sons Trucking & Utilities, LLC v. McCarthy Improvement Co.*, No. 5:17-CV-01994-JMC, 2018 WL 3008990, at *3 (D.S.C. June 14, 2018).

**i. Plaintiff Fails to Sufficiently Allege a Benefit Conferred Upon Crypto.com.**

Plaintiff's unjust enrichment claim against Crypto.com fails because Plaintiff fails to sufficiently allege that it conferred any benefit on Crypto.com. Plaintiff could not have conferred a benefit upon Crypto.com where the Complaint makes clear that Plaintiff did not choose to utilize Crypto.com's services or provide any funds to Crypto.com in exchange for those services. Nor does the Complaint allege that Plaintiff paid for, requested, or otherwise conferred anything of value on Crypto.com in connection with the transactions at issue. Indeed, Plaintiff does not allege that it had any relationship with Crypto.com, directed any transactions to Crypto.com, or even knew of Crypto.com's alleged involvement at the time of the transfers. Instead, the Complaint alleges that Plaintiff's funds were transferred through accounts held by ARGM Global and Rivera before ultimately being deposited into Rivera's Crypto.com account at Rivera's direction. *See* Complaint ¶¶ 24–28. Thus, any purported benefit to Crypto.com, if one existed at all, arose only downstream through intermediaries—not from Plaintiff.

Under these circumstances, Plaintiff cannot plausibly allege that it conferred a benefit on Crypto.com sufficient to support an unjust enrichment claim, and Plaintiff's claim must be dismissed. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 688 (D.S.C. 2021) (affirming dismissal of unjust enrichment claim because plaintiffs did not allege any benefit conferred directly from plaintiffs to defendant or that plaintiffs chose to engage with the defendant, and any benefit arose, if at all, through intermediaries); *Inglese v. Beal*, 403 S.C. 290, 298 (Ct. App. 2013) (holding that no benefit was conferred for purposes of unjust enrichment claim where payment to the defendant was made by a third party, not the plaintiff).

**ii. <u>Plaintiff Fails to Plausibly Allege Realization or Retention of a Purported Benefit by Crypto.com.</u>**

Because Plaintiff conferred no benefit on Crypto.com, Crypto.com could not have realized any value from or retained such a non-existent benefit. *See Inglese*, 403 S.C. 290 at 298. But even if the alleged funds or purported "financial benefits" could be construed as a benefit, Plaintiff still fails to plausibly allege that Crypto.com retained any such benefit under circumstances that would make its retention inequitable. Even assuming that Crypto.com had retained "fees," "spreads," or other "financial benefits" referenced in conclusory terms in the Complaint, Plaintiff does not allege that any such amounts were improper or exceeded ordinary charges for services rendered. On that basis alone, the unjust enrichment claim fails. *See Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *6 (S.C. Ct. App. May 25, 2005) (affirming summary judgment for defendant where plaintiff did not allege that defendant "was unjustly enriched by taking more than its 'regular rates'" but instead alleged only that defendant "took more than was allowed" based on a contract between defendant and third parties).

Plaintiff's contention that Crypto.com retained a benefit by "receiving" the funds deposited into Rivera's Crypto.com account also fails as a matter of law because the Complaint does not

allege that Crypto.com retained the funds. To the contrary, the Complaint affirmatively alleges that the funds were quickly withdrawn to external wallet addresses, negating any plausible inference of retention. *See, e.g.,* Complaint at ¶ 28 (alleging that funds deposited into Rivera's Crypto.com account on August 6, 2025 were withdrawn to an external blockchain wallet address on August 7, 2025); *id.* at ¶ 29 (alleging that funds deposited into Rivera's Crypto.com account on August 12, 2025 were withdrawn to an external blockchain wallet address the same day). Because the Complaint establishes that the funds were transferred to third parties, it fails to allege that Crypto.com retained any benefit, and Plaintiff has therefore failed to state a claim for unjust enrichment. *See, e.g., Jackson v. Smith & Downey, PA*, No. 2:17-CV-3299-PMD-JDA, 2018 WL 4560534, at *5 (D.S.C. June 18, 2018), *report and recommendation adopted sub nom. Jackson v. Smith & Downey, P.A.*, No. 2:17-CV-3299-PMD-JDA, 2018 WL 3722288 (D.S.C. Aug. 6, 2018) (granting motion to dismiss unjust enrichment claim where proceeds were paid to a third party, "thereby establishing that Defendants did not retain any benefit from the [] proceeds.").

**iii. <u>Equitable Relief Is Not Available Under the Circumstances Alleged.</u>**

Finally, Plaintiff's unjust enrichment claim should be dismissed because equitable relief is unavailable under the circumstances alleged here. "Unjust enrichment is an equitable doctrine, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *See Barrett v. Miller*, 283 S.C. 262, 264 (Ct. App. 1984) (cleaned up). "It is well settled that a suit in equity will not lie when there is an adequate remedy at law." *U.S. ex rel. Drakeford v. Tuomey*, 976 F. Supp. 2d 776, 792 (D.S.C. 2013), *aff'd*, 792 F.3d 364 (4th Cir. 2015); *see also Barrett*, 283 S.C. at 264 ("Where a plaintiff has an adequate remedy at law, equitable relief is not normally in order."); *see also Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 259, 715 S.E.2d 348, 358 (Ct. App. 2011) (explaining the "equitable maxim[,] commonly phrased as 'he who seeks equity must do equity.'"). "An 'adequate' remedy at law is one which is as

certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 328 (Ct. App. 2011). Here, Plaintiff's unjust enrichment claim fails because the Complaint demonstrates the availability of an adequate remedy at law, as it asserts multiple claims seeking monetary damages arising from the same alleged conduct.

The claim also independently fails because the benefits Plaintiff seeks to recover arise, if at all, from contractual relationships governing the accounts and transactions at issue. Plaintiff alleges, in conclusory, group-pleaded terms, that "Defendants" were enriched by receiving Plaintiff's funds, and that the financial institution defendants retained "fees, spreads, or other financial benefits," including "exchange fees, account-related charges, or other transaction-based revenue." Complaint at ¶¶ 65, 67. But such fees, if any, are surely governed by the applicable account and service agreements between Crypto.com and its customers. Where an express contract governs the subject matter, equitable relief is unavailable—even to a non-party seeking to recover benefits arising from that arrangement. *See Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *5 (S.C. Ct. App. May 25, 2005) (affirming summary judgment for defendant where plaintiff was not a party to agreement but based his unjust enrichment claim on benefits arising from that agreement).

### D. The Constructive Trust Claim Should Be Dismissed Because It Is A Remedy, Not An Independent Cause of Action.

In its Sixth Cause of Action, Plaintiff seeks the imposition of a constructive trust "over all funds or assets, wherever located and in whomever's name held, that are traceable to Plaintiff's stolen funds or the proceeds thereof." Complaint at ¶ 76. This request is improper because it seeks equitable relief untethered to any viable claim or factual basis. At the outset, a constructive trust is a remedy—not a standalone cause of action—and therefore cannot survive absent a viable

underlying claim. *See Hale v. Finn*, 388 S.C. 79, 89 (Ct. App. 2010) (discussing the ample authority supporting principle that "a claim for imposition of a constructive trust is not an independent cause of action."). Thus, because Plaintiff's substantive claims fail for the reasons set forth above, its request for a constructive trust necessarily fails as well.

Even if properly considered, Plaintiff fails to allege facts sufficient to justify the imposition of a constructive trust. Under South Carolina law, a constructive trust is an equitable remedy imposed only where a defendant has wrongfully obtained or retained property under circumstances that make it inequitable to do so. *See PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 641–42 (D.S.C. 2015) (explaining that a constructive trust applies where a party "has obtained, or holds the right to property, which he ought not in equity and good conscience hold," and requires wrongdoing by the party against whom the trust is sought). Consistent with that principle, a constructive trust typically arises from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty." *Lollis v. Lollis*, 291 S.C. 525, 529 (1987); *see also In re Stevenson*, 668 B.R. 366, 377 (Bankr. D.S.C. 2025) ("Generally, fraud is an essential element giving rise to a constructive trust").

Here, Plaintiff's request for a constructive trust against Crypto.com fails for at least two independent reasons. First, the Complaint affirmatively establishes that Crypto.com does not possess or retain the funds at issue. A constructive trust may be imposed only where the defendant holds the property or its proceeds; it cannot be imposed where the defendant no longer possesses the alleged res. Second, Plaintiff fails to allege that the funds are traceable to any specific, identifiable res in Crypto.com's possession. This omission is fatal. *See In re Stevenson*, 668 B.R. at 377 ("In order to maintain a claim for constructive trust, the plaintiff must be able to trace the

funds into the res at issue."). Instead, the Complaint alleges that the funds were transferred through multiple accounts and ultimately withdrawn to external wallet addresses, precluding any plausible inference that a traceable res remains with Crypto.com. Because Plaintiff neither alleges that Crypto.com possesses the property at issue nor identifies a traceable res, and fails to allege any wrongdoing by Crypto.com sufficient to justify equitable relief, its request for a constructive trust fails as a matter of law and should be dismissed.

## II. CONCLUSION

For the foregoing reasons, Defendant Foris DAX, Inc. d/b/a Crypto.com respectfully requests that the Court dismiss with prejudice all claims asserted against it by Plaintiff Allen Temple Community Economic Development Corporation, and grant such other relief in favor of Foris DAX, Inc. d/b/a Crypto.com that the Court deems just and proper.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*
Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**
2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Foris DAX, Inc. d/b/a Crypto.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*