IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br>v.<br><br>ALEXANDRIA NICOL RIVERA; ARGM GLOBAL LLC;<br>CITIBANK, N.A.; COMMUNITY FEDERAL SAVINGS BANK;<br>FORIS DAX, INC. d/b/a CRYPTO.COM; and<br>CROSS RIVER BANK<br><br>Defendants. | Civil Action No. 6:25-cv-12713-TMC-TER |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

This case arises from a devastating Business Email Compromise ("BEC") fraud scheme that targeted Allen Temple Community Economic Development Corporation ("ATCEDC" or "Plaintiff"), a South Carolina non-profit organization that provides affordable housing to 83 low-income families in Greenville, South Carolina. In August 2025, criminals intercepted ATCEDC's communications with its mortgage lender and substituted fraudulent wire transfer instructions. Believing it was paying off a legitimate mortgage, ATCEDC authorized its bank to wire $310,583.74 to an account at Citibank, N.A. ("Citibank"). The Fedwire payment order Citibank received did not simply contain a slight name variation -- it simultaneously identified

"GREENVILLE HOUSING FUND, 1615 Wade Hampton Blvd Ste A, Greenville SC 29609" as the beneficiary alongside the account number belonging to ARGM Global LLC, a two-month-old Florida shell company that had never had more than $89 in its account. The purpose field of the order stated "PAYOFF LOAN GHF20190906" -- leaving no conceivable doubt that the sending party believed it was paying Greenville Housing Fund, not ARGM Global LLC.

Citibank now asks this Court to dismiss every count against it -- to hold that a national bank that accepts a payment order facially identifying a completely different institution as beneficiary, credits the funds to a newly formed shell company, and permits the account holder to immediately transfer nearly the entire balance to outside accounts faces zero liability to the victimized party. That result is not required by law. S.C. Code Ann. Section 36-4A-207(b)(2) directly imposes liability on a beneficiary's bank that accepts a payment order with actual knowledge of a name and account number mismatch. Citibank's other arguments -- that it lacks contacts with South Carolina, that the payment order contained no "mismatch," and that ATCEDC's common-law claims are preempted -- fare no better. The motion to dismiss should be denied in its entirety.

## **II. STATEMENT OF FACTS**

ATCEDC is a South Carolina non-profit corporation headquartered in Greenville, South Carolina. FAC para. 1. It operates affordable rental housing for 83 low-income families in the Greenville area. Id. ATCEDC held a mortgage on its properties with Greenville Housing Fund ("GHF"), a South Carolina non-profit lender. Id. para. 14.

In August 2025, ATCEDC sought to pay off the GHF mortgage. FAC para. 15. On August 6, 2025, ATCEDC contacted GHF to request payoff and wire transfer instructions. Id.

On August 8, 2025, ATCEDC received what appeared to be a legitimate PDF from GHF containing wiring instructions. Id. para. 16. Unknown to ATCEDC, criminals -- including Defendant Alexandria Nicol Rivera and her co-defendants -- had intercepted and modified the email communications between ATCEDC and GHF, substituting fraudulent wiring instructions directing funds to Citibank account number ending in 8217 ("Account #8217"), held in the name of ARGM Global LLC. Id. paras. 16, 20-22.

ARGM Global LLC was a Florida limited liability company formed on May 19, 2025 -- less than three months before the fraud -- with no meaningful business operations. FAC para. 23. Its Citibank account carried a balance of negative $70.95 as of June 30, 2025, and $88.94 as of July 31, 2025. Id. Citibank, as the bank that opened and maintained Account #8217, possessed this information.

On August 8, 2025, ATCEDC authorized United Community Bank to wire $310,583.74 to Citibank for credit to Account #8217. FAC para. 17. The Fedwire payment order received by Citibank identified the beneficiary as: "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609." Id. para. 24. The purpose field of the payment order stated "PAYOFF LOAN GHF20190906." Id. On its face, the payment order described a mortgage payoff to Greenville Housing Fund -- not a payment to ARGM Global LLC.

Citibank also maintained a personal checking account for Rivera, account number ending in 6895 ("Account #6895"). FAC para. 25. Account #6895 and Account #8217 were linked by the same address, phone number, and Social Security number -- both operated under Rivera's identity, not Greenville Housing Fund's. Id. This linkage was known to Citibank as the institution that opened and maintained both accounts.

Within hours of receiving the $310,583.74 wire, Rivera transferred approximately $300,000 from Account #8217 to her personal Citibank Account #6895 and then wired funds to other institutions, including Crypto.com, Community Federal Savings Bank, and Cross River Bank. FAC paras. 26-28. The funds were dissipated almost immediately.

On August 14, 2025, ATCEDC learned that GHF had not received any payment and had not sent the wiring instructions ATCEDC received. FAC para. 29. ATCEDC promptly reported the fraud to the Greenville Police Department and the Federal Bureau of Investigation. Id. para. 30. Despite demand, Citibank has not returned ATCEDC's funds. Id. para. 31.

ATCEDC filed its First Amended Complaint ("FAC," ECF 17), asserting six causes of action against various defendants. Against Citibank specifically, the FAC alleges: Count I (violation of S.C. Code Ann. Section 36-4A-207(b)(2)); Count II (violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. Section 39-5-20); Count III (Conversion); Count IV (Unjust Enrichment); and Count VI (Constructive Trust). Id. paras. 35-72, 81-88.

## **III. LEGAL STANDARD**

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]" Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

A motion to dismiss should not be granted "unless it appears certain that the plaintiff can prove no set of facts that would support her claim." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a 12(b)(6) motion, the court must "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.; *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The court should not accept mere legal conclusions as true, and a pleading that offers only "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Factual allegations, however, must be accepted as true and all reasonable inferences drawn in the plaintiff's favor.

## IV. ARGUMENT

### A. THIS COURT HAS PERSONAL JURISDICTION OVER CITIBANK

Citibank contends that South Carolina lacks personal jurisdiction over it because, Citibank claims, all relevant conduct occurred in Florida. This argument fails on the facts and the law. The FAC alleges -- and Citibank does not dispute -- that Citibank "regularly conducts and solicits business in South Carolina." FAC para. 9. Citibank maintains retail branches, ATMs, and actively solicits banking customers throughout South Carolina. Its physical, continuous presence in this state goes well beyond mere incidental contact and confers a basis for personal jurisdiction over claims arising from Citibank's receipt and handling of ATCEDC's funds.

Even setting aside Citibank's general presence in South Carolina, specific jurisdiction is plainly present. Specific personal jurisdiction requires that the defendant "purposefully directed" its activities at residents of the forum state, that the claim "arises out of or relates to those

activities," and that assertion of jurisdiction is "reasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). All three elements are satisfied here.

The fraud at the center of this case was aimed squarely at South Carolina. The criminals targeted ATCEDC -- a South Carolina non-profit with its operations entirely within this state -- and directed a $310,583.74 theft of South Carolina funds into a Citibank account. The payment order Citibank received identified "1615 Wade Hampton Blvd Ste A, Greenville SC 29609" -- a South Carolina address -- as the beneficiary's address, described a payoff of a GHF mortgage, a South Carolina lending transaction, and listed a South Carolina non-profit as the intended recipient. The entirety of ATCEDC's harm was felt in South Carolina.

Under the effects test established in *Calder v. Jones*, 465 U.S. 783 (1984), when a defendant's tortious conduct is intentionally directed at the forum state and causes injury there, personal jurisdiction over the defendant is proper. The Fourth Circuit applies *Calder* to find jurisdiction where the defendant's conduct causes harm in the forum and the defendant knew the harm would be felt there. See *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009). Citibank accepted a payment order that facially identified a South Carolina entity at a South Carolina address as the beneficiary, credited $310,583.74 to a shell account, and permitted immediate withdrawal of the funds -- conduct that had its foreseeable and actual effect entirely in South Carolina.

Citibank's reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), is misplaced. Walden concerned a defendant who had no contacts with the forum state whatsoever -- his only connection to Nevada was the plaintiffs' decision to travel there. Here, Citibank has substantial, independent contacts with South Carolina through its extensive banking operations, and the claim arises directly from a transaction that identified South Carolina entities, a South Carolina

address, and a South Carolina loan transaction. *Walden* does not immunize a national bank with broad South Carolina operations from suit in South Carolina arising from the theft of South Carolina funds.

In the alternative, should the Court find that the jurisdictional allegations require further factual development, Plaintiff respectfully requests leave to conduct jurisdictional discovery before any dismissal on this ground. The Court should not dismiss claims against the very bank that held, credited, and allowed dissipation of the stolen funds without affording Plaintiff the opportunity to develop the record.

## B. COUNT I STATES A VALID CLAIM UNDER S.C. CODE ANN. SECTION 36-4A-207(b)(2)

Section 36-4A-207(b)(2) of the South Carolina Code provides that where a payment order identifies the beneficiary both by name and by account number and those name and number identify different persons, the beneficiary's bank is liable to the extent provided in Section 36-4A-207 if the bank accepts the payment order with actual knowledge of the mismatch. S.C. Code Ann. Section 36-4A-207(b)(2). Citibank advances three arguments against Count I: (1) lack of privity; (2) insufficient allegation of actual knowledge; and (3) the absence of a mismatch. Each argument fails.

### 1. The Privity Argument Misreads the Statute and Conflicts with the Plain Text.

Citibank argues that ATCEDC lacks standing to sue it under Section 36-4A-207 because there is no contractual privity between an originator of a funds transfer and the beneficiary's bank. For this proposition, Citibank relies on *Approved Mortgage Corp. v. Truist Bank*, 106 F.4th 582 (7th Cir. 2024), and *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97 (2d Cir. 1998).

Those cases do not support the argument Citibank advances, and the Fourth Circuit has never adopted the privity restriction Citibank seeks.

Both *Approved Mortgage* and *Grain Traders* addressed the Section 4A-402(d) "money-back guarantee" provision -- the statutory mechanism by which an originator seeks a refund when a funds transfer fails to complete. Under Section 4A-402(d), the refund obligation flows along the chain of receiving banks: the originator seeks its refund from its own bank, which in turn seeks reimbursement from the next bank in the chain. Those cases stand for the proposition that an originator cannot leapfrog the chain and demand a refund from a downstream bank directly under the Section 402(d) refund mechanism. They say nothing about direct liability under Section 4A-207(b)(2) for a beneficiary's bank's own knowing conduct at the point of acceptance.

Section 36-4A-207(b)(2) is an entirely different provision with a different purpose. It directly addresses the beneficiary's bank's conduct at the moment it accepts a payment order and imposes liability on that bank -- not the originator's bank -- when it accepts an order with actual knowledge that the name and account number identify different persons. See S.C. Code Ann. Section 36-4A-207(b)(2); see also Official Comment 2 to UCC Section 4A-207 (explaining that the actual-knowledge provision is "intended to prevent the beneficiary's bank from acting as if it did not know of the misdescription when in fact it did"). This is not a refund claim flowing up an originator's chain. It is a direct statutory liability claim targeting the beneficiary's bank's own knowing misconduct.

The litigation in this very District confirms that no privity bar applies to Section 207(b)(2) claims. In *Nicholson & Galloway, Inc. v. Lloyd & Truist Bank*, Civil Action No. 4:24-cv-4201-JD-TER (D.S.C.), the originating party sued Truist as the beneficiary's bank directly

under Section 4A-207(b)(2) based on comparable BEC fraud facts. The Magistrate analyzed the Section 207(b)(2) actual knowledge claim on its merits; there was no ruling that the originator lacked standing to sue the beneficiary's bank under Section 207. See ECF No. 67 (D.S.C. Jan. 6, 2026). This Court should follow that approach.[1]

Adopting Citibank's privity argument would nullify Section 207(b)(2) as applied to the class of victims it was designed to protect. If the only party that can assert a Section 207(b)(2) claim against a beneficiary's bank is the originator's bank -- itself an innocent intermediary with no direct financial loss from the fraud -- the actual victim who wired the funds has no remedy under the statute. A beneficiary's bank could accept misdescribed payment orders with actual knowledge of the fraud and face zero liability to anyone. Nothing in the text, structure, or Official Commentary of Section 4A-207 requires that outcome. The Fourth Circuit has not adopted a privity limitation for Section 207(b)(2), and this Court should decline to apply out-of-circuit authority that would render the statute's actual-knowledge provision meaningless.

**2. The FAC Adequately Pleads Actual Knowledge.**

Citibank argues that the FAC's allegations of actual knowledge are conclusory under *Studco Building Systems US, LLC v. 1st Advantage Federal Credit Union*, 133 F.4th 264 (4th Cir. 2025), and *Skin Studio Day Spa, LLC v. Wells Fargo Bank, N.A.*, 711 F. Supp. 3d 593 (D.S.C. 2024). The FAC's allegations go far beyond those found insufficient in *Studco* and *Skin Studio*. At the 12(b)(6) stage, the Court must accept all well-pleaded factual allegations as true -- and the FAC alleges specific, concrete facts that plausibly state actual knowledge.

[1] *Nicholson* is a Magistrate's Report & Recommendation, but one that provides a comprehensive roadmap of the law in this area, both as to 207 and SCUTPA, and for that reason is called to the Court's attention in this case.

First, the payment order itself made the mismatch unmistakable on its face. The order simultaneously listed "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609" as the beneficiary and stated the purpose as "PAYOFF LOAN GHF20190906." FAC para. 24. Greenville Housing Fund and ARGM Global LLC are not variations of the same name, not abbreviations, and not the same legal entity in any respect. The payment order named a South Carolina non-profit mortgage lender -- at its actual address and with a specific GHF loan payoff number -- while the account number belonged to a two-month-old Florida shell company. No reasonable reader of this payment order could conclude that both named entities refer to the same person.

This case is fundamentally different from *Studco* and *Skin Studio*. In *Studco*, the Fourth Circuit reversed a post-trial judgment because there was no evidence at trial that a bank employee actually recognized the mismatch. *Studco* addressed the ACH system -- a largely automated processing environment -- and found no evidence of employee-level review or recognition. In *Skin Studio*, the court found that the plaintiff alleged only that JPMorgan "improperly monitored" an account and failed to "freeze" it when fraud "became apparent" -- allegations sounding in constructive knowledge, not actual subjective recognition. Here, by contrast, the FAC specifically alleges: "one or more Citibank employees responsible for reviewing or processing the August 8, 2025 Fedwire payment order actually recognized, before acceptance, that 'Greenville Housing Fund' and the ARGM Global account identified different persons, yet processed the payment order and credited $310,583.74 to the ARGM Global account anyway." FAC para. 39. This allegation of actual employee-level recognition before acceptance is exactly what Section 4A-207(b)(2) requires. Accepted as true at the 12(b)(6) stage, it is sufficient.

Second, Citibank's own internal records gave it independent knowledge that confirmed the mismatch. Citibank maintained both Account #8217 (ARGM Global LLC) and Account #6895 (Rivera's personal account), and its records linked both accounts to the same address, phone number, and Social Security number -- Rivera's. FAC para. 25. Citibank therefore knew that both accounts were operated under Rivera's identity. When the payment order arrived identifying Greenville Housing Fund at a South Carolina address as the beneficiary, Citibank's own account records confirmed that Account #8217 had no connection whatsoever to Greenville Housing Fund. A bank in possession of this background knowledge is in a qualitatively different position from one processing wires through an automated system with no employee review.

Third, ARGM Global LLC was formed less than three months before the wire and had a near-zero prior balance ($88.94 as of July 31, 2025). FAC para. 23. Citibank, as the institution that opened and maintained Account #8217, knew the account's characteristics: brand-new, effectively empty, followed by a single large wire and immediate large transfers out. These facts, known to Citibank, further support a plausible inference that a Citibank employee reviewing this transaction would have recognized its anomalous nature and the mismatch in the payment order.

Taken together and accepted as true, these allegations state a plausible Section 4A-207(b)(2) claim. The motion to dismiss Count I should be denied.

**3. The Payment Order Contained a Clear Mismatch.**

Citibank argues there was no "mismatch" because account number #8217 matched the account name "ARGM Global LLC" on Citibank's internal records. This argument fundamentally misreads the statute. Section 36-4A-207(b)(2) asks whether "the name and

number identify different persons" -- not whether the account number matches the account name in the bank's internal records.

The payment order contained two distinct named entities: "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND." The statute does not permit a beneficiary's bank to cherry-pick the first name listed in the beneficiary field and disregard the rest of the order. The payment order, read as a whole, identified Greenville Housing Fund as the intended beneficiary: it provided GHF's South Carolina address and stated the purpose as a GHF loan payoff. Account number #8217 belongs to ARGM Global LLC, not Greenville Housing Fund. These are unambiguously different legal entities and different persons under the statute.

Citibank's characterization of "GREENVILLE HOUSING FUND" as mere "additional descriptive text" is not credible. Greenville Housing Fund is a separate, named legal entity at a specific South Carolina address with a specific loan number referenced in the payment order. It is not an abbreviation, nickname, or alternate name for ARGM Global LLC. No reasonable reader of this payment order -- including any Citibank employee -- could conclude that "GREENVILLE HOUSING FUND" and "ARGM GLOBAL LLC" refer to the same person. The mismatch is unambiguous, and the plain text of Section 4A-207(b)(2) applies.

**C. COUNT II STATES A VALID CLAIM UNDER SCUTPA**

Citibank argues that ATCEDC fails to allege an unfair or deceptive act "in the conduct of any trade or commerce" that is "capable of repetition" affecting the public interest, as required by S.C. Code Ann. Section 39-5-20. The FAC's allegations satisfy this standard.

SCUTPA's public interest requirement is met when the defendant's conduct involves "a practice which has the potential for repetition." *Daisy Outdoor Adver. Co. v. Abbott*, 322 S.C. 489, 497 (1996). Conduct that is part of a business's regular practices -- as opposed to a one-

time, isolated private dispute -- satisfies this element. See *Noack Enters., Inc. v. Country Corner Interiors*, 290 S.C. 475, 479 (Ct. App. 1986).

The FAC alleges that Citibank's conduct is institutional, not isolated. ATCEDC alleges that Citibank's practices of: (a) opening accounts for newly formed shell entities with no meaningful financial history or legitimate business purpose; (b) accepting payment orders that facially identify a named beneficiary other than the account holder without flagging the discrepancy; and (c) permitting immediate large-scale withdrawal of recently deposited wire transfers without fraud review -- constitute unfair business practices in the conduct of Citibank's banking operations. FAC paras. 44-53. These are not the choices of a single employee on a single day; they reflect systemic onboarding, transaction processing, and fraud monitoring practices that apply to every business customer and every incoming wire transfer Citibank processes.

BEC wire fraud targeting South Carolina businesses and non-profits is a known, growing threat. Institutional banking practices that facilitate BEC fraud -- by opening accounts for shell entities and processing facially misdescribed wires without appropriate scrutiny -- have the potential to harm any South Carolina business or individual that wires funds to a Citibank account. The same practices that allowed ARGM Global to be onboarded and $310,583.74 to be credited and immediately dissipated would operate identically against the next victim. That is precisely the "potential for repetition" that SCUTPA's public interest element requires.

The Magistrate in *Nicholson & Galloway* recommended that a SCUTPA claim should stand against Truist Bank to proceed past the pleading stage on analogous BEC fraud facts, recognizing that allegations of institutional banking practices capable of harming any similarly situated victim satisfy the public interest element. See *Nicholson & Galloway, Inc. v. Lloyd*, No.

4:24-cv-4201 (D.S.C.). This Court should reach the same conclusion. Count II should survive dismissal.

**D. DISMISSAL OF THE COMMON LAW CLAIMS IS PREMATURE; ARTICLE 4A PREEMPTION DOES NOT APPLY WHERE ARTICLE 4A PROVIDES NO REMEDY**

Citibank argues that Counts III (Conversion), IV (Unjust Enrichment), and VI (Constructive Trust) are preempted by Article 4A of the UCC. While ATCEDC acknowledges that Article 4A may ultimately displace overlapping common law claims where it provides a complete remedy, dismissal of these alternative claims at the pleading stage would be premature and legally erroneous for two independent reasons.

First, the Federal Rules expressly authorize pleading claims in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . ."). This rule exists precisely to allow parties to protect their rights before the legal viability of each theory is adjudicated. Courts in this district and throughout the Fourth Circuit routinely permit alternative common law claims to survive alongside Article 4A claims at the motion to dismiss stage. See, e.g., *Skin Studio*, 711 F. Supp. 3d at 600-01. Article 4A preemption is a merits determination best made after the record is developed, not a 12(b)(6) basis to foreclose alternative claims entirely.

Second, and most fundamentally: preemption only makes logical sense where Article 4A actually provides a remedy. Citibank simultaneously argues that Article 4A displaces the common law and that Article 4A provides no remedy to ATCEDC (due to the privity argument). Both propositions cannot be true at the same time. If the Court were to accept Citibank's privity argument and dismiss Count I, ATCEDC would be left with no statutory remedy against the

bank that held, credited, and allowed dissipation of the stolen funds. A statute cannot simultaneously preempt the common law and provide no remedy to the victim -- that would leave ATCEDC with nothing while Citibank retains whatever benefit it derived from the transaction. In the event Article 4A does not provide a complete remedy against Citibank, equity and the common law must fill the gap.

**1. Conversion (Count III).**

Citibank argues that processing a wire transfer is "routine banking activity" that cannot constitute the wrongful dominion required for a conversion claim under South Carolina law. Conversion requires that the defendant exercise dominion over the plaintiff's personal property in a manner inconsistent with the plaintiff's rights. See *Hawkins v. First Union Corp.*, 326 S.C. 100, 104 (Ct. App. 1997). The FAC alleges that Citibank received $310,583.74 belonging to ATCEDC, credited it to an account the payment order did not properly identify as the intended beneficiary, and allowed the funds to be immediately transferred out to other accounts and institutions. FAC paras. 55-62. Accepting a $310,583.74 payment order with actual knowledge of a name/account mismatch -- and then facilitating immediate withdrawal -- is not the exercise of routine discretion. It is the exercise of wrongful dominion over another's funds. Count III is adequately pleaded in the alternative.

**2. Unjust Enrichment (Count IV).**

The FAC specifically alleges that Citibank retained fees, transaction revenues, and other financial benefits from handling the stolen funds, and that Citibank received value at ATCEDC's expense in a manner that equity should not permit it to retain if Article 4A affords no remedy. FAC para. 67. Citibank's argument that it was "not enriched" ignores these allegations. A bank that accepts deposits into a customer account charges account maintenance fees, generates float

income, and obtains other financial benefits from the underlying transaction. In the alternative -- if Article 4A provides no statutory remedy -- equity demands that Citibank not retain benefits derived from its handling of stolen funds at ATCEDC's expense.

Citibank also argues that an adequate remedy at law bars an unjust enrichment claim. At the pleading stage, before the adequacy of legal remedies has been tested or adjudicated, this argument is premature. ATCEDC is entitled to plead equitable claims in the alternative pending determination of whether legal remedies prove adequate. Count IV should survive.

**3. Constructive Trust (Count VI).**

Citibank argues that constructive trust is a remedy rather than an independent cause of action, citing South Carolina authority to that effect. Plaintiff acknowledges that South Carolina courts sometimes treat constructive trust as a remedy rather than a standalone claim. However, in the alternative pleading context, ATCEDC's constructive trust count is properly understood as a request for equitable relief arising from the same factual basis as the other counts -- namely, Citibank's receipt and handling of ATCEDC's stolen funds in circumstances that equity should not permit Citibank to retain. Whether treated as an independent cause of action or as a requested remedy, Count VI gives Citibank adequate notice that ATCEDC seeks equitable recapture of any value Citibank holds or derived from the stolen funds. Should the Court determine that constructive trust is a remedy rather than a cause of action, Plaintiff respectfully requests that it be preserved as a form of equitable relief rather than dismissed with prejudice.

## V. CONCLUSION

ATCEDC is a small South Carolina non-profit that exists to provide affordable housing to low-income families. It lost $310,583.74 -- money earmarked to pay off a mortgage -- to a BEC fraud scheme that routed stolen funds through Citibank. The Fedwire payment order

Citibank received identified Greenville Housing Fund -- a separate South Carolina entity -- at its South Carolina address and stated a GHF loan payoff as the purpose, while crediting the funds to a two-month-old Florida shell company with less than $90 in its account. Within hours, the money was gone.

Citibank asks this Court to hold that none of ATCEDC's claims can proceed. The law does not compel that outcome. Citibank has substantial contacts with South Carolina that support personal jurisdiction. Section 36-4A-207(b)(2) directly imposes liability on a beneficiary's bank that accepts a misdescribed payment order with actual knowledge -- and the FAC alleges specific, concrete facts plausibly supporting that knowledge, including a direct allegation of employee-level recognition before acceptance. ATCEDC's SCUTPA claim adequately alleges institutional conduct capable of repetition affecting the public. And the common law claims are properly pleaded in the alternative pending resolution of the Article 4A claims.

For the foregoing reasons, Plaintiff Allen Temple Community Economic Development Corporation respectfully requests that the Court deny Defendant Citibank, N.A.'s Motion to Dismiss in its entirety. In the alternative, if the Court is inclined to dismiss any count, Plaintiff respectfully requests leave to amend.

Respectfully Submitted,

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

Dave Maxfield, Esq., FED ID 6293
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
dave@consumerlawsc.com

June 23, 2026