**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

Plaintiff,

v.

ALEXANDRIA NICOL RIVERA; ARGM GLOBAL LLC; CITIBANK, N.A.; COMMUNITY FEDERAL SAVINGS BANK; FORIS DAX, INC. d/b/a CRYPTO.COM; AND CROSS RIVER BANK,

Defendants.

Civil Action No. 6:25-cv-12713-TMC-SVH

**DEFENDANT CITIBANK, N.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. THIS COURT LACKS PERSONAL JURISDICTION OVER CITIBANK. .................... 1

A. Plaintiff's General Jurisdiction Argument Is Foreclosed By *Daimler*.................... 1

B. Plaintiff Misapplies The *Calder* Effects Test. ....................................................... 2

C. Plaintiff's Request For Jurisdictional Discovery Is A Fishing Expedition............ 4

II. THE UCC ARTICLE 4A CLAIM (COUNT I) SHOULD BE DISMISSED.................... 4

A. Plaintiff Lacks Privity To Assert A Section 36-4A-207(b)(2) Claim Against Citibank. ........................................................................................................ 4

B. Plaintiff Has Not Adequately Pled Actual Knowledge.......................................... 6

C. There Was No Statutory "Mismatch" Under Section 4A-207(b)(2). ..................... 8

III. THE SCUTPA CLAIM (COUNT II) FAILS. .................................................................. 9

IV. THE COMMON LAW CLAIMS ARE PREEMPTED BY ARTICLE 4A AND INDEPENDENTLY FAIL.................................................................................. 10

A. Article 4A Preemption Applies Regardless Of Whether Plaintiff Has A Remedy. .......................................................................................................... 10

B. The Common Law Claims Also Fail On Their Merits. ....................................... 12

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Approved Mortg. Corp. v. Truist Bank*,
106 F.4th 582 (7th Cir. 2024) ....................4, 5

*Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*,
53 F. Supp. 3d 810 (D.S.C. 2014)....................11

*Calder v. Jones*,
465 U.S. 783 (1984)....................1, 2

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................1, 2, 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................2, 4

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)....................4, 5

*Legends Title, LLC v. Cap. One, Nat'l Ass'n*,
659 F. Supp. 3d 637 (D. Md. 2023) ....................3

*Maghsoudnia v. Citibank, N.A.*,
No. 25-CV-06526-NW, 2026 WL 172505 (N.D. Cal. Jan. 22, 2026)....................2, 4

*Nicholson & Galloway, Inc. v. Lloyd & Truist Bank*,
No. 4:24-cv-4201-JD-TER (D.S.C.) ....................5

*Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*,
711 F. Supp. 3d 593 (D.S.C. 2024)....................6, 10, 12

*Song Chuan Tech. (Fujian) Co. v. Bank of Am.*, *NA*,
No. CV 2:16-3269-RMG, 2017 WL 980248 (D.S.C. Mar. 10, 2017)....................12, 13

*Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*,
133 F.4th 264 (4th Cir. 2025) ....................6, 7, 8

*Walden v. Fiore*,
571 U.S. 277 (2014)....................2, 3

*Zidell v. E. W. Bank*,
No. 3:24-CV-2340-D, 2025 WL 919385 (N.D. Tex. Mar. 26, 2025)....................2

**State Cases**

*Hale v. Finn*,
694 S.E.2d 51 (S.C. Ct. App. 2010) ....................13

**Rules**

Federal Rule of Civil Procedure 8 ....................11

## INTRODUCTION

Plaintiff's Response in Opposition confirms what Citibank's Motion to Dismiss demonstrated: the First Amended Complaint fails to state a viable claim against Citibank. Plaintiff cannot establish personal jurisdiction over Citibank in South Carolina because the only connection between Citibank's alleged conduct and this forum is Plaintiff's own residency—precisely the type of unilateral contact the Supreme Court held insufficient. On the merits, Plaintiff's Opposition advocates for an unsupported interpretation of the Uniform Commercial Code ("UCC"), conflates the ability to cross check bank records with actual knowledge, mischaracterizes the payment order, cites unhelpful caselaw, attempts to repackage routine banking as "institutional practices" to salvage a facially implausible SCUTPA claim, and advances a legally incorrect theory of preemption that would create common law remedies where Article 4A deliberately provides none. Each argument fails, and Citibank respectfully requests that this Court dismiss all claims against it with prejudice.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER CITIBANK.

Plaintiff advances two theories of personal jurisdiction—general jurisdiction based on Citibank's purported "substantial contacts" with South Carolina, and specific jurisdiction under the *Calder v. Jones* effects test—and requests jurisdictional discovery in the alternative. These efforts are contrary to established law.

#### A. Plaintiff's General Jurisdiction Argument Is Foreclosed By *Daimler*.

Plaintiff asserts that Citibank "regularly conducts and solicits business in South Carolina" through "retail branches, ATMs," and banking customers. ECF 70 at 5. This is the same "doing business" argument the Supreme Court squarely rejected over a decade ago. Under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), a corporation "that operates in many places can scarcely be

deemed at home in all of them." *Id.* at 139 n.20. General jurisdiction lies ***only*** where a defendant is "essentially at home"—its state of incorporation or principal place of business. *Id.* at 137; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Citibank is a national banking association chartered under federal law with its main office in Sioux Falls, South Dakota. *See Zidell v. E. W. Bank*, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025) (because of Citi's presence in South Dakota, and New York, "Citibank is 'at home' and subject to general personal jurisdiction in New York and South Dakota"). Citibank does not maintain any retail bank branches in South Carolina, but even if it did, merely maintaining branches in South Carolina does not make Citibank "at home" there (or any other state in which it operates). *See Maghsoudnia v. Citibank, N.A.*, No. 25-CV-06526-NW, 2026 WL 172505, at *2 (N.D. Cal. Jan. 22, 2026) (dismissing for lack of personal jurisdiction despite the fact that "Citibank has a substantial number of, and high percentage of, its retail branches in California"). Plaintiff cites no authority that contradicts Supreme Court precedent.

### B. Plaintiff Misapplies The *Calder* Effects Test.

Plaintiff invokes *Calder v. Jones*, 465 U.S. 783 (1984), arguing that specific jurisdiction exists because the payment order identified a South Carolina address and the harm was "felt" in South Carolina. ECF 70 at 5-6. But Plaintiff fundamentally misapprehends both the effects test and the Supreme Court's clarification in *Walden v. Fiore*, 571 U.S. 277 (2014).

*Calder* requires that the defendant intentionally direct tortious conduct at the forum state to be subject to specific jurisdiction. *See Walden*, 571 U.S. at 286–88. Here, the only tortious conduct directed at the forum state that Plaintiff identifies was the fraud perpetrated by ARGM Global LLC and Ms. Rivera. ECF 17 ¶ 9 ("This Court has personal jurisdiction over all Defendants because they directed their fraudulent activities at a South Carolina non-profit corporation, caused injury in this District, and committed acts in furtherance of their scheme with direct effects in

South Carolina."); ECF 70 at 6 ("The fraud at the center of this case was aimed squarely at South Carolina. The criminals targeted ATCEDC…"). On the other hand, Citibank did nothing "directed at" South Carolina. It ***received*** an incoming wire transfer, credited the funds to a customer's Florida-based account in accordance with the account number on the payment order, and processed subsequent transfers from the customer's Florida-based account at the customer's direction. The ARGM Global account into which the funds were directed was opened in Florida by a Florida resident using a Florida address and phone number. Citibank's conduct—receiving and crediting a wire—occurred entirely outside South Carolina.

That the payment order happened to list a South Carolina address in descriptive text does not transform Citibank's out-of-state processing into "conduct directed at" the forum. Although unclear from the Complaint, that address was necessarily included by Plaintiff, the drafter of the initial payment order, or by the purported criminals, not an act by Citibank. *Walden* is dispositive: the Supreme Court held that "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285. Here, as in *Walden*, Plaintiff's South Carolina residency and the fact that Plaintiff "felt" harm there are the sole connections between Citibank's conduct and this forum. That is constitutionally insufficient.

Plaintiff's attempt to distinguish *Walden* on the ground that Citibank has "substantial, independent contacts with South Carolina through its extensive banking operations" conflates general and specific jurisdiction. *See* ECF 70 at 6-7. The existence of branches in a state does not establish specific jurisdiction over a claim that has nothing to do with those branches. *See Legends Title, LLC v. Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637, 649 (D. Md. 2023) (stating in fraudulent wire case "[i]f the court were to accept Plaintiffs' position that Capital One's operation of branches in Maryland is sufficient to confer general personal jurisdiction, that would mean that Capital One

would be 'at home' in at least seven states, which is precisely the expansive result against which *Daimler* and *Goodyear* cautioned").

Specific jurisdiction requires that the claim "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Daimler*, 571 U.S. at 127). None of Plaintiff's claims arise from anything Citibank did in or directed at South Carolina.

### C. Plaintiff's Request For Jurisdictional Discovery Is A Fishing Expedition.

Plaintiff requests jurisdictional discovery "in the alternative," suggesting the Court should not dismiss claims against "the very bank that held, credited, and allowed dissipation of the stolen funds without affording Plaintiff the opportunity to develop the record." ECF 70 at 7. But jurisdictional discovery is not warranted where, as here, Plaintiff does not identify any specific fact that discovery could uncover to cure the fundamental problem: Citibank's receipt of an incoming wire, directed to a Florida customer's account, is not conduct purposefully directed at South Carolina regardless of what further facts might emerge. No amount of discovery can transform the passive receipt of a wire transfer into forum-directed conduct. *Maghsoudnia*, 2026 WL 172505, at *3 ("Plaintiffs have not alleged any facts to support specific personal jurisdiction, accordingly, jurisdictional discovery is unlikely to aid in addressing disputes of fact or bolstering the already alleged facts.").

## II. THE UCC ARTICLE 4A CLAIM (COUNT I) SHOULD BE DISMISSED.

### A. Plaintiff Lacks Privity To Assert A Section 36-4A-207(b)(2) Claim Against Citibank.

Plaintiff cannot overcome *Approved Mortg. Corp. v. Truist Bank*, 106 F.4th 582 (7th Cir. 2024), and *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97 (2d Cir. 1998). Plaintiff characterizes these cases as "Section 4A-402(d) refund cases" that have nothing to do with Section 4A-207(b)(2). ECF 70 at 7–8. This distinction is legally immaterial.

The privity limitation recognized in *Approved Mortg.* and *Grain Traders* derives from Article 4A's overarching structure governing wire transfers. Article 4A creates a chain of bilateral relationships:

- The sender issues a payment order to its bank, termed the receiving bank (UCC Part 2 – Issue and Acceptance of Payment Order).
- The receiving bank executes the payment order and sends funds to the beneficiary's bank (UCC Part 3 – Execution of Sender's Payment Order by Receiving Bank).
- The beneficiary's bank pays the beneficiary (UCC Section 404 – Obligation of Beneficiary's Bank to Pay and Give Notice to Beneficiary, UCC Section 405 – Payment by Beneficiary's Bank to Beneficiary).

Rights and obligations flow along these bilateral links. Section 4A-207 is no exception—its text addresses the rights between the "beneficiary's bank" and the "beneficiary." The statute provides that, where the name and number identify different persons and the bank has knowledge, it "may rely on the number as the proper identification" only if certain conditions are met, and if they are not, "the beneficiary's bank is liable." The statutory context makes clear this refers to the parties in privity with the beneficiary's bank, not a sender with whom the bank has no relationship.

Plaintiff's reliance on *Nicholson & Galloway, Inc. v. Lloyd & Truist Bank*, No. 4:24-cv-4201-JD-TER (D.S.C.)[1] is misplaced. As an initial matter, this opinion recommended the dismissal of the plaintiff's Article 4A claim and therefore does not save Plaintiff's claim here. In any event, *Nicholson* does not address or resolve the privity question—it simply proceeded to analyze the Section 207(b)(2) actual-knowledge claim without separately adjudicating standing, and held that conclusory statements about discrepancies between the name and account number of the beneficiary constitute actual knowledge. *See infra*. The absence of a ruling against standing

[1] Plaintiff did not cite the docket number for this opinion in its Opposition brief, but it is likely ECF 67, the Magistrate's Report and Recommendation, which had not been adopted by the District Court.

is not the same as an affirmative holding that standing exists. This Court should follow the reasoning of the Seventh and Second Circuits, which have squarely addressed the structural limitations of Article 4A's bilateral framework.

Plaintiff's policy argument—that a privity bar would "nullify Section 207(b)(2) as applied to the class of victims it was designed to protect"—misunderstands Article 4A's design. ECF 70 at 9. Article 4A was deliberately crafted so that the remedies of the sender of a wire transfer come from its own bank via Section 4A-402, since those parties have the closest bilateral relationship. The sender's bank can, in turn, seek recovery from the beneficiary's bank. That the sender cannot proceed directly against the beneficiary's bank is not a gap in the law—it is the exact architecture the drafters chose to ensure efficiency and allocate risk through bilateral relationships.

**B. Plaintiff Has Not Adequately Pled Actual Knowledge.**

Plaintiff contends the FAC "goes far beyond" *Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, 133 F.4th 264 (4th Cir. 2025), and *Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*, 711 F. Supp. 3d 593 (D.S.C. 2024). ECF 70 at 9–10. It does not.

Plaintiff's centerpiece allegation is that "one or more Citibank employees responsible for reviewing or processing the August 8, 2025 Fedwire payment order actually recognized, before acceptance, that 'Greenville Housing Fund' and the ARGM Global account identified different persons." ECF 17 ¶ 39. This allegation is pled "upon information and belief," identifies no specific employee by name or position, provides no factual basis for concluding any employee actually viewed the beneficiary field's narrative text, and offers no reason to believe a human being reviewed the payment order at all before automated crediting. *Id.* This is precisely the type of conclusory assertion that this Court rejected in *Skin Studio* and the Fourth Circuit held insufficient in *Studco*. Merely reciting the elements of the statute in the language of factual allegation does not make the allegation plausible.

In fact, Plaintiff fails to plausibly allege that any human being reviewed the payment order at all. The purpose of UCC § 4A-207 is to encourage and permit the automated processing of wire transfers because of the substantial benefits of automated processing. *See* UCC § 4A-207 cmt. 2. Even when enacted in the 1990s, the UCC pointed out that the "clear trend is for beneficiary's banks to process payment orders by automated means." *Id.* In these cases, it is "not unfair to assign the loss to [Plaintiff] because it is the person who dealt with the imposter and it supplied the wrong account number. It could have avoided the loss . . . ." *Id.* at cmt. 3.

Plaintiff's three supporting "factual" arguments are equally unavailing:

*First*, Plaintiff argues the payment order "made the mismatch unmistakable on its face" because it simultaneously listed "ARGM GLOBAL LLC" and "GREENVILLE HOUSING FUND." ECF 70 at 10. But the mere presence of two names in the same beneficiary field does not establish that a human Citibank employee actually read the narrative text and recognized a discrepancy. Under Section 4A-207(b)(1), a bank is entitled to rely on the account number to identify the beneficiary and has no obligation to parse descriptive text. The statute's express authorization of automated processing by account number means that the facial content of the beneficiary field absolves banks of any requirement to have an employee review every single payment order they receive. *See Studco*, 133 F.4th at 273-74 ("Allowing the beneficiary bank to deposit transferred funds automatically, based only on account number, promotes efficiency and certainty to the system. . . [T]he beneficiary's bank has no duty to determine whether there is a conflict between the account number and the name of the beneficiary, and ***the bank may rely on the number as the proper identification of the beneficiary***.") (emphasis added) (internal citations omitted).

*Second*, Plaintiff argues Citibank's "own internal records" confirmed the mismatch because Citibank maintained both the ARGM Global account and Rivera's personal account under Rivera's identity. ECF 70 at 11. But institutional records do not equate to an individual employee's actual knowledge at the moment of processing a specific wire. Section 4A-207(b)(2) requires actual knowledge that "the name and number refer to different persons"—not a general ability to obtain knowledge of customer account information. The fact that Citibank's systems may contain data linking accounts to the same customer does not mean the specific employee (if any) processing the incoming wire consulted those records, cross-referenced the beneficiary name against account records, and subjectively recognized a discrepancy—all before acceptance. *See Studco*, 133 F.4th at 273 ("'[K]nowledge' means actual knowledge, not imputed knowledge or constructive knowledge.").

*Third*, Plaintiff argues the account's characteristics—a newly formed shell company with a near-zero balance—"further support a plausible inference" of actual knowledge. ECF 70 at 11. This is insufficient to allege actual, subjective knowledge required by Section 4A-207(b)(2). The question is not whether a diligent bank *should have* recognized the mismatch; it is whether the bank, in fact, *did*. Circumstantial indicia of suspicion do not bridge the gap between constructive knowledge, which is legally insufficient, and actual knowledge, which is required. *See id.*

### C. There Was No Statutory "Mismatch" Under Section 4A-207(b)(2).

Plaintiff argues that the payment order "contained two distinct named entities: 'ARGM GLOBAL LLC' and 'GREENVILLE HOUSING FUND'" and that the statute "does not permit a beneficiary's bank to cherry-pick the first name listed in the beneficiary field and disregard the rest of the order." ECF 70 at 12. This argument mischaracterizes both the payment order and the statute.

Section 4A-207(b)(2) applies when a payment order identifies the beneficiary "both by name and by account number" and those identifiers "refer to different persons." The relevant inquiry is whether the *name* in the payment order identifies a different person than the account *number*. Here, the account number (ending in 8217) belonged to ARGM Global LLC, and the first and primary name in the beneficiary field was "ARGM GLOBAL LLC." The account number matched the account holder. Additional descriptive text—including the reference to "GREENVILLE HOUSING FUND" and a South Carolina address—appeared after the account holder's name in what is properly understood as the address and reference portion of the beneficiary field.

The Fedwire format uses a single beneficiary field that links the beneficiary's name with address and reference information. The text "ARGM GLOBAL LLC / GREENVILLE HOUSING FUND, 1615 WADE HAMPTON BLVD STE A, GREENVILLE SC 29609" places the account holder's name first, followed by a slash and additional descriptive text. The presence of additional text in the beneficiary field does not "name" Greenville Housing Fund as the beneficiary within the meaning of Section 4A-207. The beneficiary's bank is entitled to rely on the account number under Section 4A-207(b)(1) without parsing every element of the descriptive text to determine whether it might reference a different entity. The statutory "mismatch" contemplates a situation where the payment order clearly identifies one person by name and a different person by number—not a situation where additional descriptive information appears alongside the correct account holder's name.

## III. THE SCUTPA CLAIM (COUNT II) FAILS.

Plaintiff attempts to recast Citibank's routine banking operations—opening accounts, processing wires, permitting withdrawals—as "institutional practices" with the "potential for repetition" required by SCUTPA. ECF 70 at 12–13. This argument fails.

Plaintiff's characterization of standard banking functions as unfair trade practices would render virtually every bank transaction potentially actionable under SCUTPA whenever third-party fraud is later discovered. Opening business accounts, processing incoming wires by account number, and permitting account holders to transfer their own funds are not "unfair or deceptive acts or practices"—they are the ordinary, lawful operations of a depository institution. SCUTPA is not a negligence statute, and Plaintiff cannot transform Citibank's failure to detect a sophisticated fraud scheme into an actionable "practice." This Court recognized precisely this point in *Skin Studio*, which held that SCUTPA claims against a bank arising from the processing of a BEC fraud wire were "facially implausible." 711 F. Supp. 3d at 600.

Plaintiff still has not identified any specific, concrete pattern or practice of Citibank processing wires for fraudulent shell companies. The allegation that BEC fraud is a "known, growing threat" describes the criminal environment, not any practice of Citibank. ECF 70 at 13. Without factual allegations of a pattern—*e.g.*, other instances where Citibank processed similar fraudulent wires—the SCUTPA claim remains the same type of "speculative claim[] of adverse public impact" that South Carolina courts have consistently rejected. *See Skin Studio*, 711 F. Supp. 3d at 600.

## IV. THE COMMON LAW CLAIMS ARE PREEMPTED BY ARTICLE 4A AND INDEPENDENTLY FAIL.

### A. Article 4A Preemption Applies Regardless Of Whether Plaintiff Has A Remedy.

Plaintiff advances what it characterizes as a logical argument: Citibank cannot simultaneously maintain that Article 4A preempts common law claims *and* that Article 4A provides no remedy to Plaintiff (due to the privity argument). "Both propositions cannot be true at the same time." ECF 70 at 14. In fact, both propositions are not only consistent—they are the natural and intended consequence of Article 4A's comprehensive statutory scheme.

Preemption is a function of Article 4A's *scope*—not of whether a particular plaintiff has a viable claim under the statute. The Official Comment to Section 4A-102 explains that Article 4A was intended to be "the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article" and that "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties, and liabilities inconsistent with those stated in this Article." The wire transfer at issue falls squarely within Article 4A's coverage. If Plaintiff cannot state a claim under Article 4A—whether because of privity limitations, failure to allege actual knowledge, or the absence of a statutory mismatch—that means Plaintiff has no claim against Citibank[2] with respect to the wire transfer. It does not mean that common law can create liability where none exists under the Code.

This is not a novel concept. Article 4A deliberately chose not to impose a general duty of care on beneficiary's banks with respect to incoming wire transfers. *See* UCC § 4A-207 cmt. 2 (emphasizing "substantial economies of operation" in automated processing). Permitting plaintiffs to circumvent that deliberate choice by relabeling their wire-transfer grievances as "conversion" or "unjust enrichment" would "create rights, duties, and liabilities inconsistent with" the Article—precisely what the preemption doctrine prohibits. *See Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 815 (D.S.C. 2014).

Plaintiff's citation to Rule 8(d)(2)'s authorization of alternative pleading is a red herring. Alternative pleading permits a party to plead inconsistent factual theories; it does not override substantive preemption. A plaintiff may plead conversion as an alternative to a contract claim where it is unclear which theory will prevail on the facts. But a plaintiff may not invoke Rule 8(d)(2) to maintain claims that are legally barred by a preemptive statutory scheme. Courts

[2] Plaintiff may have claims against other parties.

routinely dismiss preempted claims at the 12(b)(6) stage notwithstanding alternative pleading. *See, e.g., Skin Studio*, 711 F. Supp. 3d at 599-600 (dismissing common law claims as preempted by Article 4A at the motion-to-dismiss stage).

**B. The Common Law Claims Also Fail On Their Merits.**

Even absent preemption, each common law claim independently fails, as detailed in Citibank's motion to dismiss.

*Conversion (Count III).* Plaintiff argues that "accepting a $310,583.74 payment order with actual knowledge of a name/account mismatch—and then facilitating immediate withdrawal—is the exercise of wrongful dominion." ECF 70 at 15. This argument is circular: it presupposes the very "actual knowledge" that Plaintiff has failed to plausibly allege. Moreover, Citibank did not exercise "dominion" over the funds—it credited them to its customer's account as directed by the payment order. The customer then exercised dominion by transferring the funds. A bank that credits incoming funds to the designated account does not "convert" those funds. *See Song Chuan Tech. (Fujian) Co. v. Bank of Am.*, *NA*, No. CV 2:16-3269-RMG, 2017 WL 980248, at *2 (D.S.C. Mar. 10, 2017), *amended in part,* No. CV 2:16-3269-RMG, 2017 WL 1862207 (D.S.C. May 8, 2017) ("Song Chuan alleges John Doe's fraud induced it to wire money to Bank of America. But simply alleging fraud by a bank customer does not create an immediate, established right to that customer's funds on deposit with the bank, enforceable against the bank in conversion.").

*Unjust Enrichment (Count IV).* Plaintiff alleges Citibank retained "fees, transaction revenues, and other financial benefits." ECF 70 at 15. Any fees Citibank earned arose from its contractual relationship with its own customer, not from Plaintiff's funds. Incidental transaction fees do not constitute "enrichment at Plaintiff's expense." Moreover, unjust enrichment is unavailable where adequate legal remedies exist—and Plaintiff's own assertion that it has a statutory claim under Article 4A confirms the availability of a legal remedy.

*Constructive Trust (Count VI).* Plaintiff acknowledges that South Carolina law treats constructive trust as a remedy, not an independent cause of action, but asks the Court to "preserve" it as a form of equitable relief. *See Hale v. Finn*, 694 S.E.2d 51, 57 (S.C. Ct. App. 2010). Because all of Plaintiff's substantive claims against Citibank fail, there is no underlying wrong to support a constructive trust. *Song Chuan Tech. (Fujian) Co.*, 2017 WL 980248, at *3 (holding in misdirected wire case that plaintiff's "proposed amended complaint fails to state a claim for constructive trust because Bank of America is not alleged to be a participant in John Doe's fraud."). Additionally, Plaintiff does not allege that Citibank currently holds any identifiable funds traceable to the wire—the FAC alleges the funds were rapidly dissipated to other institutions.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Citibank, N.A. respectfully requests that this Court dismiss the First, Second, Third, Fourth, and Sixth Causes of Action of the First Amended Complaint against Citibank with prejudice, and grant such other and further relief as this Court deems just and proper.

Dated: July 10, 2026

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Jasmine K. Gardner*
Jasmine K. Gardner, Fed. Bar No. 12531
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2262
Facsimile: (704) 373-8825
Email: jgardner@mcguirewoods.com

***Counsel for Defendant Citibank, N.A.***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2026, a true copy of the foregoing Reply in Support of Defendant Citibank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint was filed via the Court's CM/ECF system on all counsel of record, and mailed via First-Class Mail, postage prepaid, to the following pro se Defendant who is not a registered CM/ECF user:

Alexandria Nicol Rivera
25064 S.W. 107th Ave
Homestead, FL 33032

*/s/ Jasmine K. Gardner*
Jasmine K. Gardner

***Counsel for Defendant Citibank, N.A.***