IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDRIA NICOL RIVERA, et al.,<br><br>Defendants. | Case No.: 6:25-cv-12713-TMC-TER<br><br>MOTION TO DISMISS |

DEFENDANT CROSS RIVER BANK'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Cross River Bank ("Cross River"), by and through its undersigned counsel, hereby submits this Motion to Dismiss the First Amended Complaint ("FAC," ECF No. 17) of Allen Temple Community Economic Development Corporation.[1] Cross River brings this motion pursuant to Federal Rules 12(b)(2) and (6). As discussed below, this Court lacks personal jurisdiction over Cross River, and Plaintiff has failed to allege facts sufficient to state a claim against Cross River. For both of these independent reasons, Plaintiff's claims against Cross River should be dismissed with prejudice.

I. Introduction

This case arises out of an alleged business email compromise fraud committed by Defendants ARGM Global LLC ("ARGM") and Alexandria Nicol Rivera ("Rivera"). According to Plaintiff, ARGM and/or Rivera induced it into wiring $310,583.74 to an account at Citibank

[1] The incorporated memorandum provides a full explanation of the motion as set forth in Local Civil Rule 7.05 (D.S.C.) and a separate memorandum would serve no useful purpose; therefore, a supporting memorandum is not required pursuant to Local Civil Rules 7.04 and 7.05 (D.S.C.).

controlled by ARGM. Plaintiff claims that Rivera then caused ARGM to send the money through a series of transfers within Citibank, ultimately to an account in her name. Then, Plaintiff alleges, Rivera transferred the money to various other financial institutions, including Cross River.

The claims asserted against Cross River should be dismissed for two independent reasons. First, Cross River is not subject to personal jurisdiction in South Carolina. Plaintiff has not alleged (and cannot allege) that Cross River purposefully availed itself of the privilege of conducting activities in South Carolina, or that it undertook any act whatsoever in South Carolina. As Plaintiff alleges, Cross River is located in New Jersey and the transfer at issue in this case—the sole link to Cross River—was initiated in Florida.

Second, Plaintiff does not appear to allege that Cross River participated in, or had any knowledge of, the fraud perpetrated by ARGM and Rivera (and it did not). It alleges only that Rivera transferred some of the proceeds of the alleged fraud to an account at Cross River *after the fact*. Specifically, Plaintiff alleges only that Rivera transferred money from her Citibank account to an account at Cross River (presumably in the name of Rivera), and that Cross River received a nebulous, routine benefit from that transfer. These allegations are not even remotely sufficient to state claims against Cross River under the South Carolina Unfair Trade Practices Act, or for conversion or unjust enrichment, or for a constructive trust.

The reality is that Plaintiff's dispute is with defendants ARGM and Rivera, who are alleged to have defrauded it. Plaintiff has not alleged, and cannot allege, that Cross River had anything to do with their fraud. Plaintiff has no legal basis to sue Cross River (certainly not in South Carolina), so its claims against it should be dismissed with prejudice.

II. Factual Allegations

According to Plaintiff, it held a mortgage loan with the Greenville Housing Fund, which is not a party to this case. (FAC ¶ 12). Plaintiff alleges that around August 6, 2025, it decided to pay off that loan. (FAC ¶ 12). It alleges that it requested wiring instructions for this payment from the Greenville Housing Fund via e-mail, and that on August 8, 2025, the Greenville Housing Fund responded with "what appeared to be a legitimate PDF attachment containing payoff information and wiring instructions." (FAC ¶¶ 13-14). Plaintiff alleges that it relied on those instructions by wiring $310,583.74 from its bank (which is also not a party to this case) to an account at defendant Citibank. (FAC ¶ 17).

According to Plaintiff, however, its emails with the Greenville Housing Fund had been "unlawfully accessed, intercepted, and modified." (FAC ¶ 15). Plaintiff alleges that the PDF it received was fraudulent and that the Citibank account belonged to ARGM, not the Greenville Housing Fund. (FAC ¶ 5). Plaintiff alleges that defendant ARGM is a "shell" company controlled by defendant Rivera and that Rivera transferred the stolen funds from ARGM's Citibank account to her personal account at Citibank through a "series of internal transfers." (FAC ¶¶ 15, 24). "From there," Plaintiff alleges, "Rivera distributed the funds in a series of outgoing wire transfers to multiple institutions." (FAC ¶ 25). Plaintiff alleges that Cross River was one of those institutions:

> Cross River engaged in unfair and deceptive acts or practices in its banking business by receiving at least $210,000 in wire transfers on August 13 and 14, 2025, funds originating directly from Plaintiff's stolen proceeds, without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds of a reported BEC fraud scheme.

(FAC ¶ 54). Plaintiff similarly alleges that Cross River "received, processed, transferred, retained, or benefitted" from Plaintiff's $210,000. (FAC ¶¶ 62, 67).

*These are the only factual allegations Plaintiff makes against Cross River* -- that Rivera transferred money to a Cross River account, and that Cross River received a "benefit[]" from that transfer, e.g., in the form of account-related "fees" or "charges[.]" (FAC ¶ 67). As discussed below, these allegations are plainly insufficient to support any of Plaintiff's claims against Cross River.

III. Argument

The FAC alleges four claims against Cross River: (1) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq*; (2) conversion; (3) unjust enrichment; and (4) constructive trust. Plaintiff has failed to allege facts sufficient to state any of these claims. This Court also lacks personal jurisdiction over Cross River. For both of these independent reasons, Plaintiff's claims against Cross River should be dismissed with prejudice.

A. This Court lacks personal jurisdiction over Cross River.

This Court lacks personal jurisdiction over Cross River. To survive a motion to dismiss under Federal Rule 12(b)(2), the plaintiff has the "burden of establishing a *prima facie* case of jurisdiction." *See, e.g.*, *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The Court must "determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* As discussed below, Plaintiff's allegations—accepted as true for purposes of this motion only—do not establish that Cross River is subject to either general or specific jurisdiction in this District.

1. The Court lacks general jurisdiction over Cross River.

The U.S. Supreme Court has held that general jurisdiction exists as to a corporate defendant only in states where: (1) it is incorporated; (2) it maintains its principal place of business; or (3) its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). None of these circumstances exist in South Carolina as to Cross River.

Plaintiff does not allege that Cross River is incorporated in South Carolina or that it maintains its principal place of business in South Carolina. Indeed, Plaintiff alleges that Cross River "is a New Jersey state-chartered bank with its principal office at 885 Teaneck Road, Teaneck, New Jersey 07666." (FAC ¶ 7). Nor does Plaintiff allege—even in a conclusory way—that Cross River's affiliations with South Carolina are "so continuous and systematic as to render [it] essentially at home" there. *See Daimler AG*, 571 U.S. at 127. For these reasons, Cross River is not subject to general jurisdiction in South Carolina.

2. <u>The Court lacks specific jurisdiction over Cross River</u>

The Court also lacks specific jurisdiction over Cross River.

"Because the South Carolina long-arm statute is coextensive with the Due Process Clause, the sole question on a motion to dismiss for lack of personal jurisdiction is whether the exercise of personal jurisdiction would violate due process." *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 834 (D.S.C. 2015). The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which '[the Court] consider[s] (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). None of these factors is even remotely satisfied as to Cross River.

As to the first and second factors, Plaintiff does not allege that Cross River committed any acts in South Carolina that give rise to Plaintiff's claims. The only factual allegations against Cross River are that Rivera transferred money from her account at Citibank to an account at Cross River and that Cross River received some kind of routine "benefit[]" from the transfer. (FAC ¶¶ 54, 62, 67). Plaintiff alleges that ARGM is a Florida LLC and that its owner, Rivera, is a Florida resident. (FAC ¶¶ 2-3). Plaintiff acknowledges that Cross River is in New Jersey. (FAC ¶ 7). So, none of the acts on which Plaintiff's claims against Cross River are based are alleged to have occurred in South Carolina. Thus, Plaintiff cannot satisfy the first and second factors.

Indeed, courts across the country have held that mere receipt of a wire transfer from the forum state does not subject the receiving bank to personal jurisdiction there. *See, e.g.*, *Schmitt v. Bank of Am.*, No. 1:24-CV-611, 2024 WL 4902416, at *8 (W.D. Mich. Nov. 26, 2024) (Plaintiff's "…claims…arise from BANA merely processing a wire transfer from Michigan, which in of itself is insufficient to establish specific jurisdiction" in Michigan); *Zidell v. E.W. Bank*, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025) (declining to hold that a defendant's activities in processing a wire transfer meant it had sufficient contacts with Texas); *Maghsoudnia v. Citibank, N.A.*, No. 25-CV-06526-NW, 2026 WL 172505, at *3 (N.D. Cal. Jan. 22, 2026) (no specific personal jurisdiction over Citibank merely because the wire was conducted in California and Citibank had branches or monitored transactions there); *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 496 (6th Cir. 2008) (holding that a bank's sending of a wire transfer to the forum state "cannot constitute purposeful availment" because the wire transfers were not initiated by the bank); *Thuney v. Lawyer's Title of Arizona*, No. 2:18-CV-1513-HRH, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019) ("federal courts routinely decline to use money transfers as a basis for specific jurisdiction because the wire transfer is done at the plaintiff's request."); *Monkton Ins. Servs., Ltd.*

*v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) ("the wire transfers… made to Texas banks were initiated by [the plaintiffs], and thus cannot be said to render [the bank] 'at home' in Texas").

If Plaintiff were able to satisfy the first two factors, the burden would shift to Cross River to show that the exercise of jurisdiction over Cross River would not be constitutionally reasonable. *See dmarcian, Inc. v. dmarcian Europe BV*, 60 F. 4th 119, 135 (4th Cir. 2023) ("This prong permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant purposefully availed itself of the privilege of doing business there.") (citing *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009)). Plaintiff cannot do that, so the Court need not analyze this factor. Even if it did reach this factor, however, it would not be constitutionally reasonable to exercise jurisdiction over Cross River.

The burden of litigating in South Carolina, where Cross River does not have any offices or personnel, is significant, and the facts alleged do not suggest in any way that Cross River could reasonably have expected to be subject to suit in South Carolina. Cross River only has two physical branches: one in New Jersey, and another in Delaware. Moreover, South Carolina does not have a significant interest in a case arising out of a transfer of money initiated by a Florida LLC, from a Florida bank account, to a New Jersey bank account. Plaintiff's interest in obtaining convenient and effective relief can also adequately be vindicated in a court where Cross River is properly subject to jurisdiction. For these reasons, the third factor is not satisfied as to Cross River, so the Court does not have specific jurisdiction over it.

* * *

Cross River is not subject to either general or specific jurisdiction in South Carolina and for this reason alone the FAC should be dismissed as to Cross River.

B. The FAC fails to state a claim against Cross River

The FAC also should be dismissed because it fails to state a claim against Cross River. To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must contain factual allegations that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although well-pleaded factual allegations must be accepted as true, the Court need not accept as true legal conclusions, unwarranted inferences, or arguments cast as factual allegations. *See id.; Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). "A plaintiff 'must allege sufficient facts to establish th[e] elements' of his claim and 'advance [that] claim across the line from conceivable to plausible.'" *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quoting *Walters v. McMahen*, 684 F. 3d 435, 439 (4th Cir. 2012)).

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If a complaint fails to state a claim upon which relief can be granted, it must be dismissed. *Francis v. Giacomelli*, 588 F.3d 186, 192–93 (4th Cir. 2009).

1. Plaintiff has failed to state a claim against Cross River under the South Carolina Unfair Trade Practices Act.

Plaintiff has failed to state a claim against Cross River under the South Carolina Unfair Trade Practices Act. "To recover in an action under the SCUTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as

a result of the defendant's unfair or deceptive act(s)." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 337, 732 S.E.2d 166, 174 (2012). Here, Plaintiff fails to allege facts that would establish any of these elements.

First, Plaintiff has failed to allege facts establishing that Cross River engaged in an "unfair or deceptive act in the conduct of trade or commerce[.]" *See RFT Mgmt.*, 399 S.C. at 337. An unfair or deceptive act is one that "is offensive to public policy or which is immoral, unethical, or oppressive." *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702, at *3 (D.S.C. July 3, 2025) (quoting *deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000)). Plaintiff does not allege Cross River took any such action. In fact, Plaintiff does not allege that Cross River engaged in any act of any kind. It alleges that ARGM acted, by transferring money to a Cross River account, but it does not allege that Cross River requested or initiated the transfer, or that it did anything with it afterward. Plaintiff implies that Cross River *should have* acted by freezing the account, but it does not allege that Cross River was notified that the funds were supposedly stolen or that it had any legal duty to freeze the account. And it did not. The Fourth Circuit has squarely held that "a bank does not owe a duty of care to noncustomers with whom the bank has no direct relationship." *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002). Similarly, another court in this District explained that "it is not the law nor the public policy of South Carolina to require a financial institution to deny a [customer] access to her own funds." *Nauful*, 2025 WL 1836702, at *4. Another court in this district has also held that the "mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers." *Big Red Box, LLC v. Square, Inc.*, No. CV 3:18-758-SAL-SVH, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020) (internal quotations omitted).

Second, Plaintiff has failed to allege that any act committed by Cross River "affected public interest." *RFT Mgmt.*, 399 S.C. 322 at 337. Indeed, since Plaintiff failed to allege Cross River did anything other than receive funds, it cannot possibly satisfy this element.

Third, Plaintiff has failed to allege that Cross River caused any "monetary or property loss" as a result of an unfair or deceptive act by Cross River. Again, Plaintiff does not allege that Cross River did anything but receive the funds, and for this reason alone, this element is not satisfied. Even if Cross River's supposed failure to freeze the account could constitute an unfair or deceptive act—which it cannot, as discussed above—it would make no difference because that act did not proximately cause Plaintiff's loss. According to Plaintiff's FAC, Plaintiff's funds had already been converted (by ARGM and Rivera) before they were transferred to an account at Cross River.

2. <u>Plaintiff has failed to state a claim against Cross River for conversion.</u>

Plaintiff has also failed to state a claim against Cross River for conversion. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Big Red Box, LLC*, 2020 WL 465928, at *8 (internal citations and quotation marks omitted) (citing *Bank of New York v. Sumter Cty.*, 691 S.E.2d 473, 479 (S.C. 2010)). Far from satisfying these elements, Plaintiff's allegations make clear that it cannot possibly state a claim for conversion against Cross River. As another court in this District has held: "fraudulently obtained funds are converted <u>by the fraudster</u>, not his bank." *Song Chuan Tech. (Fujian) Co., Ltd. v. Bank of Am., NA*, NA, No. CV 2:16-3269-RMG, 2017 WL 980248, at *2 (D.S.C. Mar. 10, 2017) (emphasis added), *amended in part*, No. CV 2:16-3269-RMG, 2017 WL 1862207 (D.S.C. May 8, 2017).[2] Thus, although Plaintiff may well be able to

[2] Similarly, this Court has held that "[a] receipt of the proceeds, or a part thereof, of goods which have been wrongfully converted by a third person is not a conversion, unless defendant participated

state a claim for conversion against ARGM or Rivera, i.e., the fraudsters, it cannot do so against Cross River.

3. Plaintiff has failed to state a claim against Cross River for unjust enrichment.

Plaintiff has failed to state a claim against Cross River for unjust enrichment. "To recover for unjust enrichment, a plaintiff must show three elements: (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. 2021); *see also Manning & Sons Trucking & Utilities, LLC v. McCarthy Improvement Co.*, No. 5:17-CV-01994-JMC, 2018 WL 3008990, at *3 (D.S.C. June 14, 2018). Plaintiff has not alleged facts against Cross River that would satisfy any of these elements.

First, Plaintiff does not allege that it conferred any benefit on Cross River. The allegations in the FAC make clear that it *cannot* make such an allegation. According to the FAC, defendant Rivera, not Plaintiff, conferred the alleged benefit on Cross River by transferring the money at issue to an account at Cross River. (FAC ¶¶ 61-62). Plaintiff does not allege that it transferred any money to Cross River or that it had any relationship or contact of any kind with Cross River. For these reasons, Plaintiff has not satisfied the first element of an unjust enrichment claim against Cross River. *See In re Blackbaud, Inc.*, 567 F. Supp. 3d at 688 (affirming dismissal of unjust enrichment claim because plaintiffs did not allege any benefit conferred directly from plaintiffs to

---

in the wrongful act, or took such proceeds in accordance with a prior agreement which related to the act of conversion as well as to the sharing in the proceeds." *Fitzgibbons ex rel. Dir. of S.C. Dep't of Ins. v. Atkinson*, No. 8:17-02092-TMC-JDA, 2019 WL 5856265, at *9 (D.S.C. Aug. 22, 2019). Plaintiff has not alleged (and cannot allege) facts showing that Cross River participated in ARGM or Rivera's alleged fraud, or that it had an agreement with either to "shar[e] in the proceeds" of the alleged fraud.

defendant or that plaintiffs chose to engage with the defendant, and any benefit arose, if at all, through intermediaries); *Inglese v. Beal*, 403 S.C. 290, 298 (S.C. Ct. App. 2013) (holding that no benefit was conferred for purposes of unjust enrichment claim where payment to the defendant was made by a third party, not the plaintiff).

As to the second and third elements, Plaintiff alleges vaguely that Cross River received "fees, spreads, or other financial benefits associated with handling Plaintiff's stolen funds [,]" (FAC at ¶67) but does not allege facts showing that it would be "inequitable" for Cross River to retain those alleged benefits. In fact, it cannot do so because—as a matter of law—it is not unjust to receive one's "regular rate[]" in exchange for a service rendered. *See Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *6 (S.C. Ct. App. May 25, 2005). Plaintiff does not actually allege that Cross River did anything with the funds, as discussed above, much less that it took more than its regular rate for providing routine services related to the funds.

For these reasons, Plaintiff has failed to state a claim against Cross River for unjust enrichment.

Finally, even if Plaintiff could plead any of the elements of an unjust enrichment claim, the claim should still be dismissed because Plaintiff cannot obtain equitable relief under the circumstances outlined in the FAC. "Unjust enrichment is an equitable doctrine[.]" *Barrett v. Miller*, 283 S.C. 262, 264 (S.C. Ct. App. 1984). "It is well settled that a suit in equity will not lie when there is an adequate remedy at law." *U.S. ex rel. Drakeford v. Tuomey*, 976 F. Supp. 2d 776, 792 (D.S.C. 2013), *aff'd*, 792 F.3d 364 (4th Cir. 2015). "An 'adequate' remedy at law is one which is as certain, practical, complete, and efficient to attain the ends of justice and its administration as the remedy in equity." *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 328 (S.C. Ct. App. 2011). Plaintiff is therefore barred from asserting an unjust enrichment claim as it has asserted multiple

claims for damages arising out of the same allegations, and damages would be sufficient to fully compensate it for its alleged loss.

4. Plaintiff's claim for "constructive trust" should be dismissed because a constructive trust is a remedy, not a cause of action.

Plaintiff's claim for "constructive trust" (FAC ¶ 76) should be dismissed because a constructive trust is a remedy, not a cause of action. *Hale v. Finn*, 388 S.C. 79, 89 (S.C. Ct. App. 2010) ("[A] claim for imposition of a constructive trust is not an independent cause of action.") (quoting *Morrison v. Morrison*, 663 S.E.2d 714, 717 (S.C. 2008)); *see also* Restatement (First) of Restitution § 160 cmt. a (1937) ("A constructive trust does not ... arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment.").

Furthermore, as discussed above, Plaintiff has failed to adequately plead an unjust enrichment claim, so it cannot seek a constructive trust on that theory. Nor has Plaintiff pled some other theory of liability that would allow it to seek a constructive trust. Under South Carolina law, a constructive trust is an equitable remedy imposed where a defendant has wrongfully obtained property under inequitable circumstances. *See PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 641-42 (D.S.C. 2015) (explaining that a constructive trust applies where a party "has obtained, or holds the right to property, which he ought not in equity and good conscience hold," and requires wrongdoing by the party against whom the trust is sought). Thus, a constructive trust typically arises from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty." *Lollis v. Lollis*, 291 S.C. 525, 529 (S.C. 1987); *see also In re Stevenson*, 668 B.R. 366, 377 (Bankr. D.S.C. 2025) ("Generally, fraud is an essential element giving rise to a constructive trust."). Plaintiff has not alleged facts showing that Cross River engaged in fraud, bad faith, or similar misconduct, or in any misconduct of any kind. It alleges only that Cross River, which is a bank,

was passively involved in <u>routine</u> banking activity when <u>Rivera</u>, not Cross River, initiated a transfer of funds from her personal account at Citibank to an account at Cross River.

## IV. <u>Conclusion</u>

Cross River is not subject to personal jurisdiction in South Carolina, and even if it was, Plaintiff has not alleged (and cannot allege) facts sufficient to support any claims against Cross River. For these reasons, Plaintiff's FAC should be dismissed with prejudice as to Cross River.

Respectfully submitted,

/s/ *Rivers S. Stilwell*
Rivers S. Stilwell (Fed. ID No. 6271)
Claire K. Atwood (Fed. ID No. 14466)
MAYNARD NEXSEN PC
104 Main Street South, Suite 900
Greenville, South Carolina 29601
Telephone: 864.370.2211
rstilwell@maynardnexsen.com
catwood@maynardnexsen.com

*Attorneys for Defendant Cross River Bank*

July 10, 2026
Greenville, South Carolina