IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

Plaintiff,

v.

ALEXANDRIA NICOL RIVERA; ARGM GLOBAL, LLC; CITIBANK, N.A.; COMMUNITY FEDERAL SAVINGS BANK; FORIS DAX, INC. d/b/a CRYPTO.COM; and CROSS RIVER BANK,

Defendants.

Civil Action No. 6:25-cv-12713-TMC-TER

**RESPONSE IN OPPOSITION TO DEFENDANT CROSS RIVER BANK'S MOTION TO DISMISS**

Plaintiff Allen Temple Community Economic Development Corporation ("Plaintiff" or "ATCEDC") submits this Response in Opposition to Defendant Cross River Bank's ("Cross River") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (ECF No. 83).

## I. INTRODUCTION

Business email compromise fraud follows a predictable pattern: criminals move stolen funds quickly, spreading them across as many accounts and institutions as possible before the theft can be traced or reversed. Each institution that ends up holding a piece of the proceeds then disclaims any responsibility, insisting it was merely following instructions on a wire it had no reason to question. Cross River takes that position here, notwithstanding that it received at least $210,000.00 of Plaintiff's $310,583.74 loss—by a wide margin the largest share held by any of the downstream financial-institution Defendants—within forty-eight hours of the fraud, without,

as alleged, adequate fraud detection or account-monitoring procedures sufficient to identify and freeze it. Cross River's Motion to Dismiss should be denied.

## II. FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

Plaintiff is a South Carolina non-profit that provides affordable housing to low-income families in the Greenville, South Carolina area. FAC ¶ 11. Plaintiff held a mortgage loan with Greenville Housing Fund ("GHF") and decided to pay it off. FAC ¶ 12. On August 6, 2025, Plaintiff requested payoff and wiring instructions from GHF, and on August 8, 2025, received what appeared to be a legitimate PDF containing those instructions. FAC ¶¶ 13-14.

Unknown to Plaintiff, Defendants had unlawfully accessed, intercepted, and modified the email communications between Plaintiff and GHF, substituting fraudulent wiring instructions directing payment to an account controlled by ARGM Global LLC ("ARGM"), a shell company formed on May 19, 2025 and held by Defendant Rivera. FAC ¶ 15. Relying on those fraudulent instructions, Plaintiff wired $310,583.74 to the ARGM Citibank account. FAC ¶¶ 16-17. Rivera then transferred the stolen funds out of the ARGM account to her personal Citibank account, and from there distributed the funds in a series of outgoing wire transfers to multiple institutions. FAC ¶¶ 24-25. Cross River was one of those institutions:

Plaintiff alleges that Cross River "received at least $210,000.00 in wire transfers originating from Plaintiff's stolen funds on August 13-14, 2025." FAC ¶ 7. Plaintiff alleges that this occurred "without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds of a reported BEC fraud scheme." FAC ¶ 54. Plaintiff also alleges that Cross River "received, processed, transferred, retained, or benefitted" from Plaintiff's stolen funds, including through fees, spreads, and other revenue. FAC ¶¶ 62, 67. Plaintiff further alleges that Cross River, like the other institutional Defendants, "regularly conduct[s] and solicit[s] business in South Carolina." FAC ¶ 9.

Plaintiff has stated four claims against Cross River: (1) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (2) conversion; (3) unjust enrichment; and (4)

constructive trust. Cross River moved to dismiss all four, and separately argues this Court lacks personal jurisdiction over it. This Court should deny the Motion, as discussed below.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, Plaintiff bears only the burden of making a prima facie showing of jurisdiction, and the Court must "determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). It "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissal is improper "unless it appears certain that the plaintiff can prove no set of facts that would support her claim." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court must accept all well-pleaded allegations as true and view the FAC in the light most favorable to Plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

## IV. ARGUMENT

### A. This Court Has Personal Jurisdiction Over Cross River, or, at Minimum, Plaintiff Is Entitled to Jurisdictional Discovery.

Cross River does not meaningfully dispute the FAC's allegation that it "regularly conduct[s] and solicit[s] business in South Carolina." FAC ¶ 9. Instead, Cross River's Motion focuses narrowly on the absence of physical branches in this state and the fact that the transfer to Cross River was routed through a Florida-based account. That is not the end of the inquiry.

Specific jurisdiction exists where a defendant has "purposefully directed" its activities at the forum, the claim arises from those activities, and jurisdiction is otherwise reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Under the effects test of *Calder v. Jones*, 465 U.S. 783 (1984), jurisdiction is proper where a defendant's conduct is intentionally directed at the forum and causes injury there, and the Fourth Circuit applies *Calder* where a defendant's conduct causes harm in the forum that the defendant knew would be felt there. *Consulting Eng'rs Corp.*, 561 F.3d at 280.

This fraud was aimed squarely at South Carolina. The criminals targeted ATCEDC—a South Carolina non-profit—and stole $310,583.74 in South Carolina funds through a fraudulent loan-payoff scheme that identified a South Carolina address and a South Carolina lending transaction on its face. Cross River received a substantial share of those proceeds—at least $210,000.00, more than two-thirds of the total theft—within days of the initial fraud, without (as alleged) adequate fraud detection or account-monitoring procedures sufficient to identify and freeze incoming proceeds of a reported BEC scheme. FAC ¶ 54. That Cross River's own receipt of funds may have been routed through an intermediate account does not sever the connection between its conduct and the harm inflicted on a South Carolina entity, which Cross River's alleged monitoring failures helped make permanent.

Cross River's cited authorities holding that a bank's mere receipt of a wire transfer does not, standing alone, establish specific jurisdiction are distinguishable or, at minimum, do not resolve the issue on the pleadings. Those cases generally address routine, isolated wire receipts with no allegation that the receiving institution's own practices were inadequate to detect proceeds of a reported fraud scheme. Here, by contrast, Plaintiff alleges an institutional failure—inadequate fraud detection and account-monitoring procedures—that directly enabled the dissipation of stolen South Carolina funds. Combined with the unrebutted allegation that Cross River "regularly conduct[s] and solicit[s] business in South Carolina," FAC ¶ 9, Plaintiff has made the prima facie showing required at this stage.

In the alternative, should the Court find the jurisdictional record insufficiently developed, Plaintiff respectfully requests leave to conduct jurisdictional discovery—including into the scope of Cross River's South Carolina business activities and its account-monitoring practices—before any dismissal on this ground.

**B. Plaintiff Has Stated a Claim Against Cross River Under SCUTPA.**

To state a SCUTPA claim, Plaintiff must show (1) an unfair or deceptive act in the conduct of trade or commerce, (2) that affected the public interest, and (3) monetary or property loss as a result. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 337, 732 S.E.2d 166, 174 (2012). A practice is "unfair" when it is "offensive to public policy or . . . immoral, unethical, or oppressive," and "deceptive" when it has a tendency to deceive. *Young v. Century Lincoln-Mercury, Inc.*, 302 S.C. 320, 396 S.E.2d 105 (Ct. App. 1989).

**1. Cross River engaged in an unfair or deceptive act.**

Cross River mischaracterizes the FAC as alleging only "routine" receipt of funds. It does not. Plaintiff specifically alleges that Cross River "engaged in unfair and deceptive acts or practices in its banking business by receiving at least $210,000.00 in wire transfers on August 13 and 14, 2025 . . . without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds of a reported BEC fraud scheme." FAC ¶ 54. That is an allegation about the adequacy of Cross River's own institutional practices—not merely that Cross River passively received a wire.

Cross River's reliance on *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220 (4th Cir. 2002), and *Big Red Box, LLC v. Square, Inc.*, No. CV 3:18-758-SAL-SVH, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020), for the proposition that banks owe no duty to noncustomers overstates the weight of both authorities. *Eisenberg* addressed the scope of Regulation J's incorporation of Article 4A, holding only that Article 4A "does not address the duties, obligations and liabilities applicable to bank functions having nothing to do with a Fedwire transfer." *Eisenberg*, 301 F.3d at 224. And *Big Red Box* was never more than a magistrate judge's Report and

Recommendation—the district court never adopted it, because the case settled while objections to that Report and Recommendation were still pending, so its reasoning was never reviewed by a district judge. Neither authority addresses SCUTPA, which "does not contain a privity requirement." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 666 S.E.2d 247, 254 (2008).

Applying that principle on materially similar facts, a magistrate judge in this District recently recommended denial of a motion to dismiss a SCUTPA claim brought against a beneficiary bank that opened and maintained accounts used to launder fraud proceeds, expressly rejecting the bank's argument that the plaintiff's lack of a customer relationship barred the claim. *Nicholson & Galloway, Inc. v. Lloyd*, No. 4:24-cv-4201-JD-TER, Report and Recommendation, ECF No. 67, at 11 (D.S.C. Jan. 6, 2026) ("Truist also argues that Plaintiff was not its customer and, thus, it cannot bring a SCUTPA claim against it. However, SCUTPA does not contain a privity requirement.") That Report and Recommendation is not binding on this Court and, at the time of this filing, had not been adopted by the district judge, but its reasoning—on a strikingly similar fact pattern involving a bank's decision to keep processing transactions through an account after red flags of fraud were apparent—is instructive here.

Nor does *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702 (D.S.C. July 3, 2025), help Cross River. In *Nauful*, the bank recognized red flags and repeatedly questioned its own customer to protect her from being scammed; the customer lied, and the bank ultimately honored her instructions to access her own funds. Here, Plaintiff does not allege that Cross River failed to protect its own customer—Plaintiff alleges that Cross River failed to maintain fraud-detection and account-monitoring procedures adequate to catch a reported BEC scheme moving nearly a quarter-million dollars through its systems in a two-day window. *Nauful* is inapposite.

**2. Cross River's conduct affected the public interest.**

An unfair or deceptive practice affects the public interest where it has the "potential for repetition," which may be shown either by past repetition or by showing that a company's procedures create the potential for repetition. *Crary v. Djebelli*, 329 S.C. 385, 496 S.E.2d 21 (1998); *Haley Nursery Co. v. Forrest*, 298 S.C. 520, 381 S.E.2d 906 (1989). Notably, a plaintiff need not separately show that the conduct adversely affected the public at large: "evidence of a potential for repetition, generally speaking, in and of itself establishes the required public impact." *Daisy Outdoor Adver. Co. v. Abbott*, 322 S.C. 489, 496-97, 473 S.E.2d 47, 51 (1996); accord *Nicholson & Galloway*, Report and Recommendation, ECF No. 67, at 10-11 (applying *Daisy* to deny dismissal where the bank had continued to process accounts notwithstanding known fraud risk).

Plaintiff has alleged exactly the kind of procedural failure *Daisy* and its progeny require: "[t]he conduct of each financial institution Defendant has the potential for repetition affecting the public interest because BEC wire fraud schemes are systemic, the onboarding, monitoring, KYC, AML, and recall practices described herein are capable of recurring, and similar customers and transactions would be treated in the same way under Defendants' current procedures." FAC ¶ 55. This is not the generalized "accusation of past violations" rejected in *Ethox Chemical, LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 U.S. Dist. LEXIS 870 (D.S.C. Jan. 3, 2013); it is an allegation of a specific, identified procedural failure—inadequate fraud detection and account monitoring—that would treat the next BEC victim identically.

**3. Cross River's conduct caused Plaintiff's loss.**

Cross River argues its conduct could not have proximately caused Plaintiff's loss because the funds were already stolen before they reached Cross River. But Plaintiff's theory is not that Cross River caused the initial theft—it is that Cross River's failure to detect and freeze a substantial share of the stolen proceeds (at least $210,000.00, two-thirds of the total loss) enabled the permanent dissipation of those funds beyond recovery, compounding Plaintiff's damages. To

the extent the Court finds additional factual development necessary on this point, Plaintiff requests leave to amend.

For these reasons, the Court should deny the Motion to Dismiss the SCUTPA claim.

**C. Plaintiff Withdraws Its Conversion Claim Against Cross River.**

Consistent with the position Plaintiff has taken with respect to similarly situated receiving-bank defendants in this action, and in light of authority holding that "fraudulently obtained funds are converted by the fraudster, not his bank," *Song Chuan Tech. (Fujian) Co. v. Bank of Am., NA*, No. CV 2:16-3269-RMG, 2017 WL 980248, at *2 (D.S.C. Mar. 10, 2017), Plaintiff withdraws its conversion claim against Cross River at this time.

**D. Plaintiff Has Stated a Claim for Unjust Enrichment.**

To state a claim for unjust enrichment, Plaintiff must show (1) a non-gratuitous benefit conferred on the defendant, (2) the defendant's realization of that benefit, and (3) that retention of the benefit without payment would be inequitable. *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. 2021); *T-Zone Health, Inc. v. SouthStar Cap., LLC*, No. 2:20-cv-02519-DCN, 2024 U.S. Dist. LEXIS 190381, at *24-25 (D.S.C. Aug. 29, 2024).

Cross River argues Plaintiff cannot satisfy the first element because Rivera, not Plaintiff, transferred the funds to Cross River. But a party "may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Inglese v. Beal*, 403 S.C. 290, 297 (Ct. App. 2013) (citing *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009)). Plaintiff has alleged that Cross River "was enriched by receiving and retaining the benefit of Plaintiff's stolen funds and the revenue derived from those funds," FAC ¶ 65, and that Cross River "retained fees, spreads, or other financial benefits associated with handling Plaintiff's stolen funds," FAC ¶ 67. That is sufficient at the pleading stage.

Cross River's reliance on *Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013, at *6 (S.C. Ct. App. May 25, 2005), for the proposition that a party cannot be

unjustly enriched by receiving its "regular rate" for services rendered does not warrant dismissal. Whether the benefits Cross River retained were, in fact, an ordinary and lawful "regular rate" for legitimate account services—as opposed to benefits derived from handling funds it failed to screen despite a reported BEC fraud scheme—is a factual question that cannot be resolved against Plaintiff on the pleadings.

Nor is the claim barred because Plaintiff has an adequate remedy at law. Federal Rule of Civil Procedure 8(d)(2) expressly permits a party to plead alternative, and even inconsistent, claims for relief. Whether Plaintiff's legal claims will ultimately provide a remedy is not yet resolved, and dismissal of the equitable claim as duplicative would be premature before that determination is made. To the extent the Court finds the allegations insufficient, Plaintiff requests leave to amend.

**E. Plaintiff's Constructive Trust Claim Should Be Preserved as a Request for Equitable Relief.**

Cross River argues that constructive trust is a remedy, not an independent cause of action, and that Plaintiff has not alleged the fraud or wrongdoing necessary to support one. Plaintiff acknowledges that South Carolina courts have held that "a claim for imposition of a constructive trust is not an independent cause of action." *Hale v. Finn*, 388 S.C. 79, 89 (Ct. App. 2010). But a constructive trust "arises entirely by operation of law without reference to any actual or supposed intention of creating a trust. It is resorted to by equity to vindicate right and justice or frustrate fraud." *Whitmire v. Adams*, 273 S.C. 453, 457 (1979) (citing *All v. Prillaman*, 200 S.C. 279, 20 S.E.2d 741 (1942)). And while fraud is generally an element, "[a]ctual fraud is not necessary, but such trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title." *Bank of Williston v. Alderman*, 106 S.C. 386, 91 S.E. 296, 298 (1917).

Plaintiff has alleged that Cross River "hold[s], or ha[s] held, legal title to funds or assets traceable to Plaintiff's stolen funds, or to proceeds derived from those funds," FAC ¶ 74, and that

"[i]t would be inequitable and unjust to allow Defendants to retain those funds or the benefit derived from them," FAC ¶ 75. Whether those funds remain traceable to any specific asset in Cross River's possession is a factual question that has not yet been tested through discovery. Should the Court agree that constructive trust is properly understood as a remedy rather than a standalone cause of action, Plaintiff respectfully requests that it be preserved as a request for equitable relief tied to Plaintiff's surviving claims, rather than dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Cross River Bank's Motion to Dismiss in all respects other than the conversion claim, which Plaintiff voluntarily withdraws as set forth above.

Respectfully submitted,

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

________________________________

Dave Maxfield, Esq., FED ID 6293
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

July 16, 2026