**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

*Plaintiff*,

v.

ALEXANDRIA NICOL RIVERA, *et al.*,

*Defendants*.
_________________________________/

Civil Action No. 6:25-cv-12713-TMC-WSB

**DEFENDANT COMMUNITY FEDERAL SAVINGS BANK'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Local Rule 7.07, Defendant Community Federal Savings Bank ("Defendant" or "CFSB") replies to Plaintiff Allen Temple Community Economic Development Corporation ("Plaintiff" or "Allen Temple")'s Response in Opposition to Community Federal Savings Bank's Motion to Dismiss (the "Opposition") [ECF No. 79] and in support of its Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [ECF No. 58].

## INTRODUCTION

This case arises from a business email compromise fraud in which Plaintiff was induced to wire $310,583.74 to a Citibank account controlled by Defendant ARGM Global LLC ("ARGM Global"). According to the Complaint, the funds were subsequently transferred through a second Citibank account controlled by Defendant Alexandria Rivera, and a portion was later deposited into Rivera's Crypto.com fiat wallet account. CFSB's connection to these events is extremely limited. CFSB provided certain banking and payment services to Crypto.com in connection with

Crypto.com's fiat wallet program operated by Crypto.com but CFSB did not offer, operate, or sponsor the fiat wallet product itself. Nor did CFSB operate the Citibank accounts that allegedly received or transferred Plaintiff's funds. More precisely, Plaintiff alleges no direct customer relationship between CFSB and Plaintiff or between CFSB and Rivera. Indeed, CFSB's role in this case is limited to its relationship with Crypto.com, which involved providing banking and payment services in connection with Crypto.com's fiat wallet program, including services tied to accounts maintained for Crypto.com and acted upon Crypto.com's instructions. Plaintiff had no customer relationship, contractual relationship, or other direct relationship with CFSB. Rather than address CFSB's limited role, Plaintiff's Opposition blurs the distinction between CFSB and Crypto.com and seeks to attribute conduct allegedly undertaken by one entity to the other. Although Plaintiff has abandoned its conversion claim against CFSB, its remaining theories still fail to establish personal jurisdiction or state any viable claim against CFSB. Even accepting Plaintiff's characterizations, the Opposition does not overcome the deficiencies identified in the Motion. Plaintiff's theories are unsupported by the Complaint and foreclosed by controlling law. The Motion should be granted in its entirety.

## ARGUMENT

For the reasons set forth in CFSB's Motion and below, Plaintiff still fails to establish: (1) personal jurisdiction over CFSB; (2) a plausible SCUTPA claim; (3) a viable unjust-enrichment claim; and (4) any basis for constructive trust as either a standalone cause of action or equitable remedy against CFSB.

### I. THE COURT LACKS PERSONAL JURISDICTION OVER CFSB, AND NO AMOUNT OF JURISDICTIONAL DISCOVERY WILL CHANGE THAT.

In its Motion, CFSB demonstrated that this Court lacks both general and specific personal jurisdiction over CFSB. *See* Motion at 7-10. In response, Plaintiff argues that jurisdiction exists

because CFSB allegedly conducts business nationwide and Plaintiff suffered injury in South Carolina. *See* Opp. at 6-9. Plaintiff has failed to carry its burden of establishing a prima facie basis for personal jurisdiction and no additional discovery can cure that deficiency.

### A. Plaintiff's Reliance on CFSB's Nationwide Digital Operations Does Not Create General Jurisdiction.

Plaintiff does not dispute that CFSB is headquartered in New York, is not incorporated in South Carolina, and maintains no branches, offices, or employees there. Instead, Plaintiff argues that CFSB's "relationships with banking partners in South Carolina" and "digital, multistate operations" subject it to general jurisdiction. *See* Opp. at 7. That argument is foreclosed by settled law.

General jurisdiction exists only where a corporation is "essentially at home," which ordinarily means its place of incorporation and principal place of business. Plaintiff identifies no exceptional circumstance rendering CFSB "at home" in South Carolina. Its contention that CFSB "regularly conducts and solicits business in South Carolina," *see* Opp. at 7, is insufficient. If nationwide digital banking services accessible from a forum state were sufficient to confer general jurisdiction, every national bank would be subject to general jurisdiction in every state—precisely the "exorbitant" theory the Supreme Court rejected.[1] *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014); *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002) (noting that "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant.").

---

[1] This argument is further explained in Defendant Citibank, N.A. ("Citibank")'s Reply in Support of Its Motion to Dismiss [ECF No. 80], which CFSB hereby adopts and incorporates by reference as applicable.

### B. Plaintiff Fails to Identify Any Conduct by CFSB Purposefully Directed at South Carolina.

Specific jurisdiction requires purposeful forum-directed conduct giving rise to the plaintiff's claims. *See* Motion at 9-10. Plaintiff relies on three alleged facts: (1) the fraud targeted a South Carolina nonprofit; (2) the stolen funds later passed through accounts associated with Crypto.com's banking relationship with CFSB; and (3) the original payment order referenced a South Carolina address and loan transaction. *See* Opp. at 7–8. None of these allegations establishes specific jurisdiction over CFSB.

First, Plaintiff's reliance on its South Carolina residence and the situs of injury is foreclosed by *Walden v. Fiore,* which holds that "it is the ***defendant's*** conduct that must form the necessary connection with the forum State." 571 U.S. 277, 285 (2014). Plaintiff attempts to avoid *Walden* by emphasizing that the payment order referenced South Carolina entities and a South Carolina address. *See* Opp. at 8. But those facts concern ***Plaintiff's*** wire transfer to ARGM Global's Citibank account—not to an account affiliated with CFSB. Under *Walden*, "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285.

Second, Plaintiff's invocation of *Calder v. Jones*, 465 U.S. 783 (1984), is misplaced. *See* Opp. at 8. The *Calder* effects test requires that the defendant's own intentional, tortious actions be "expressly aimed at [the forum state]." 465 U.S. at 790. Plaintiff alleges only that fraudsters targeted a South Carolina nonprofit and that injury was felt there—allegations concerning the conduct of the alleged fraudsters, not CFSB. Because Plaintiff identifies no intentional conduct by CFSB expressly aimed at South Carolina, *Calder* does not support jurisdiction over CFSB.

Third, Plaintiff's allegation that funds passed through accounts associated with Crypto.com's banking relationship with CFSB does not establish purposeful availment. By Plaintiff's own allegations, it wired funds to a Citibank account held by ARGM Global, which

were transferred to Rivera's personal Citibank account before any transfer to a Crypto.com account. *See* Opp. at 2-4. Plaintiff does not allege that CFSB solicited Plaintiff, communicated with Plaintiff, knew of Plaintiff's involvement, or directed any activity toward South Carolina. Nor does Plaintiff allege that CFSB received or acted upon the payment order containing the South Carolina references—that order was undisputedly directed only to Citibank. These omissions are unsurprising because Plaintiff was never CFSB's customer. Plaintiff identifies no South Carolina-directed services that CFSB provided to Plaintiff, no direct relationship with CFSB, and no action that CFSB took with respect to Plaintiff's funds before the alleged business email scheme occurred.

CFSB's conduct was limited to providing certain services to Crypto.com pursuant to its separate business relationship with Crypto.com. The alleged downstream movement of funds through a Crypto.com relationship is not CFSB conduct purposefully directed at South Carolina, particularly where Plaintiff was not CFSB's customer and CFSB did not receive or act on the original South Carolina-referenced payment order. Plaintiff's specific jurisdiction theory thus depends entirely on the location of the alleged victim, not on any conduct by CFSB. Because Plaintiff cannot allege any South Carolina-directed conduct by CFSB arising from any relationship with Plaintiff, the purposeful-availment requirement is not satisfied.

**C. Plaintiff Identifies No Basis for Jurisdictional Discovery.**

Plaintiff's alternative request for jurisdictional discovery, *see* Opp. at 8-9, should be denied. Neither the Complaint nor the Opposition identifies any disputed jurisdictional fact or explains what discovery could reveal to establish personal jurisdiction over CFSB. Instead, Plaintiff offers only a conclusory request for "further factual development." That is insufficient. *See ALS Scan,* 293 F.3d at 716 (affirming denial of request for jurisdictional discovery where plaintiff offered only "conclusory allegations in support of its request"); *Informaxion Sols., Inc. v. Vantus Grp.*, 130 F. Supp. 3d 994, 998 (D.S.C. 2015) ("The Fourth Circuit has stated that 'when

a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'") (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir. 2003)). Because Plaintiff identifies no missing fact that could establish purposeful forum-directed conduct by CFSB, jurisdictional discovery is unwarranted.

## II. THE OPPOSITION STILL FAILS TO STATE A PLAUSIBLE SCUTPA CLAIM AGAINST CFSB.

The Motion demonstrates that Plaintiff fails to state a SCUTPA claim because it does not plausibly allege (1) an unlawful trade practice by CFSB, (2) causation, or (3) an adverse impact on the public interest. *See* Motion at 11-17. The Opposition does not cure these deficiencies.

### A. Plaintiff Cannot Identify An Actionable Unfair or Deceptive Trade Practice by CFSB.

Plaintiff's SCUTPA theory rests on the premise that CFSB acted with "willful blindness" toward fraud. *See* Opp. at 10-12. In support, Plaintiff attempts to distinguish *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702 (D.S.C. July 3, 2025), by arguing that unlike the bank in *Nauful*, "CFSB did nothing, and specifically *enabled* Crypto.com and its client, Rivera, to conduct fraud on others." *See* Opp. at 12. This theory fails for two independent reasons.

First, the alleged misconduct concerns Crypto.com's onboarding procedures, KYC processes, and internal controls—not CFSB's.[2] *See* Opp. at 11-12 (alleging that "***Crypto.com***…designed a process by which red flags could be 'bypassed'") (emphasis added). The Complaint contains no plausible allegation that CFSB designed, controlled, or participated in those activities. Plaintiff merely attributes conduct to Crypto.com and attempts to impute it to CFSB through conclusory assertions of "enabling." *See id.* Such allegations are insufficient. *See*

[2] Crypto.com has filed its own motion to dismiss. *See* ECF No. 63.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully.").

Second, even if the alleged conduct could be attributed to CFSB, it would not constitute an unfair or deceptive trade practice. Plaintiff's characterization of Rivera's account activity as a "thirteen-month pattern of fraud," *see* Opp. at 12, is entirely conclusory. The Complaint alleges only that Rivera's Crypto.com account received wire transfers, converted funds into cryptocurrency, and transferred them to external wallets. *See* Complaint at ¶¶ 25-34. Plaintiff alleges no facts showing that those transactions were themselves fraudulent, suspicious, or otherwise indicative of misconduct. At bottom, Plaintiff seeks to impose a duty on financial institutions to treat ordinary account activity as inherently suspicious—a duty South Carolina law does not recognize. *See* Motion at 12 (citing *Big Red Box, LLC v. Square, Inc.*, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002)).

Plaintiff's attempt to distinguish *Nauful* is unavailing. The court in *Nauful* did not hold that the bank's awareness of suspicious activity defeated the SCUTPA claim. Rather, it held that the plaintiff failed to identify any authority "establishing that a business's failure to refuse its customer's directions when the business suspects doing so might better serve the customer's interests amounts to an unfair trade practice." 2025 WL 1836702, at *4. That reasoning applies with even greater force here, where Plaintiff identifies no authority imposing a duty on a financial institution to refuse or override customer-directed transactions based on suspicions of fraud, let alone a duty requiring a financial institution to override instructions related to a person who is not its customer. Whether framed as "willful blindness" or otherwise, Plaintiff's theory rests on a duty South Carolina law does not recognize.

Plaintiff's SCUTPA claim also fails to the extent it rests on allegations that CFSB failed to maintain adequate fraud detection or anti-money-laundering controls. *See* Complaint at ¶ 52. Such obligations are regulatory duties owed to the government, not private duties owed to third parties like Plaintiff. *See* Motion at 12-13. The Opposition attempts to recharacterize this as "intentional" conduct, arguing that "Defendant acted intentionally to avoid such policies." *See* Opp. at 12. But Plaintiff identifies no intentional act distinct from its allegation that CFSB failed to monitor suspicious activity. Relabeling AML deficiencies as "willful blindness" does not transform regulatory obligations into a private duty owed to a non-customer. *See, e.g., Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) ("[T]here can be no duty of care arising out of the BSA's monitoring requirements.") (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) ("The Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank customer.")); *Douglas v. Trustmark Nat'l Bank*, 201 F. Supp. 3d 800, 807-08 (S.D. Miss. 2016) ("Courts addressing the issue have consistently held that the Bank Secrecy Act requiring such reports does not create a private right of action or establish a duty of care to private parties.") (citing *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009)); *Wiand v. Wells Fargo Bank, N.A.*, 2014 WL 1819616, at *6 (M.D. Fla. May 7, 2014) ("It is well-established that banks do not owe a duty of care to non-customers, and […] this longstanding principle cannot be overcome by the requirements of the BSA.").

Even so, Plaintiff is not a CFSB customer and alleges no customer-facing agreement, fiduciary relationship, or other special relationship with CFSB that would otherwise convert any alleged regulatory or program-level obligations into duties owed to Plaintiff. This deficiency also independently bars Plaintiff's SCUTPA claim. *See Britt v. Sorin Grp. Deutschland GMBH*, 690 F.

Supp. 3d 538, 549 (D.S.C. 2023) (rejecting SCUTPA claim where a third party, rather than the plaintiffs, purchased the product at issue and the plaintiffs did not interact with or receive communications from the defendants regarding the alleged misconduct).

**B. Plaintiff Still Fails to Plausibly Allege That Any Conduct by CFSB Caused Its Injury.**

The Opposition fails to establish causation. Plaintiff argues that absent a CFSB account, Rivera "would not have been able to complete her fraudulent scheme" because she needed a means of converting funds “into some other fungible asset.” *See* Opp. at 13. But Plaintiff's own allegations demonstrate that the fraud had already occurred before any involvement by CFSB: Plaintiff wired $310,583.74 to an ARGM Global account at Citibank; Rivera then transferred approximately $300,000 through a separate personal Citibank account before sending a portion of those funds to her Crypto.com account. *See* Complaint at ¶¶ 17-18, 24-29. Plaintiff's loss was complete when it wired funds to the fraudulent Citibank account—neither the CFSB account nor any subsequent transfer was necessary for that loss to occur. But even accepting Plaintiff’s allegation that Rivera needed “a method by which she could immediately convert the cash funds she received into some other fungible asset,” *see* Opp. at 13, that allegation does not establish that CFSB’s involvement was necessary. Rivera could have used any financial institution or cryptocurrency exchange. Plaintiff therefore fails to allege facts connecting its loss to conduct uniquely attributable to CFSB.

In addition, Plaintiff’s assertion that CFSB "created a system which intentionally bypassed safety and security measures" and "served as the conduit allowing the completion of the scam,” *see id.*, reflects the same fundamental conflation of CFSB with Crypto.com that permeates the Opposition. *See also* Motion at 14, n.1. Plaintiff’s theory also improperly assumes that CFSB sponsored, controlled, or otherwise managed the customer-facing Crypto.com wallet relationship. The Complaint contains no factual allegations supporting that assumption. As discussed above,

CFSB's role was limited to providing certain banking and payment services to Crypto.com; CFSB did not design, operate, or control Crypto.com's platform, customer onboarding, compliance processes, or customer-facing wallet products. Accordingly, Plaintiff's allegations regarding the design and operation of Crypto.com's platform do not provide a basis for imposing liability on CFSB.

In any event, even assuming CFSB had engaged in the same conduct Plaintiff attributes to Crypto.com, the mere movement of funds through an account associated with CFSB—after the fraud was accomplished and after funds had passed through multiple third-party accounts—does not plausibly establish causation. The same is true of the August 2025 recall notice: Plaintiff does not rebut that the notice was sent only after all funds had been transferred off Crypto.com's platform, meaning CFSB's alleged response could neither have caused nor prevented Plaintiff's loss. *See Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (rejecting SCUTPA claim where the alleged misconduct did not change plaintiff's economic position and therefore caused no ascertainable loss). The Opposition identifies no conduct by CFSB that proximately caused Plaintiff's injury, and its SCUTPA claim therefore fails. To the extent Plaintiff requests leave to amend its causation allegations, *see* Opp. at 13, that request should be denied because the deficiency is not a factual gap—it is a legal one: Plaintiff's own allegations foreclose a causal connection to CFSB as a matter of law.

**C. Plaintiff Still Does Not Plausibly Allege Any Adverse Impact on the Public Interest.**

CFSB's Motion explained that Plaintiff failed to identify any CFSB policy or practice creating a plausible potential for repetition. *See* Motion at 15-17. In response, Plaintiff merely repackages the same allegations discussed above, claiming that CFSB onboarded Rivera's Crypto.com account, failed to recognize a purported "thirteen-month pattern of fraud," failed to implement adequate fraud protections, and failed to timely respond to Citibank's recall notice. *See*

Opp. at 13-14. None of these allegations plausibly establishes an adverse impact on the public interest.

As discussed above, Plaintiff improperly attributes to CFSB conduct that the Complaint itself attributes to Crypto.com. The Complaint identifies Crypto.com, not CFSB, as the entity that allegedly onboarded Rivera, performed customer verification and monitoring functions, maintained account records, and interacted with Rivera as the customer. *See, e.g.,* Complaint at ¶ 27 (alleging that "Crypto.com opened [Rivera's] account…detected a mismatch…[and that] Crypto.com's internal procedures bypassed the mismatch, as reflected in Crypto.com's records…."); *id.* at ¶¶ 28-29 (alleging that "Crypto.com converted the entire deposit…and allowed the immediate withdrawal…."); *id.* at ¶ 30 (alleging that "Crypto.com earned exchange-rate spread and fee revenue from the conversion of Plaintiff's stolen funds to XRP."). Plaintiff offers no factual basis for treating those alleged Crypto.com activities as conduct by CFSB. Plaintiff therefore cannot establish a likelihood of repetition by simply relabeling alleged acts of Crypto.com as acts of CFSB.

Similarly, Plaintiff cannot satisfy the public-interest element by characterizing ordinary account activity as inherently suspicious. That theory, like the others discussed above, depends on treating customer-facing conduct allegedly undertaken by Crypto.com as conduct by CFSB. But Plaintiff does not—and cannot—plausibly allege that CFSB operated Crypto.com's platform, managed customer onboarding, maintained customer accounts, or otherwise controlled the relationship between Crypto.com and Rivera. Instead, the Complaint attributes those activities to Crypto.com. *See* Complaint at ¶¶ 28-30. Plaintiff therefore cannot establish a likelihood of repetition by recharacterizing alleged acts of Crypto.com as evidence of a recurring practice by CFSB.

Plaintiff's broader contention that "institutional banking practices that facilitate BEC fraud" can harm other South Carolina businesses likewise misses the mark because it does not describe the facts alleged here. *See* Opp. at 14 (arguing that financial institutions facilitate fraud "by opening accounts for shell entities and processing facially misdescribed wires without appropriate scrutiny."). By Plaintiff's own admission, the Crypto.com account was opened by Rivera more than a year before the alleged fraud, and the funds deposited into that account originated from Rivera's personal Citibank account—not from any "shell entity" account or "facially misdescribed wire" processed by CFSB. *See* Complaint at ¶¶ 24-30. Plaintiff's generalized assertions about banking practices untethered to the alleged conduct at issue are therefore insufficient. *See, e.g., PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x 237, 243 (4th Cir. 2017) (affirming dismissal of SCUTPA claim where allegations of public impact were "too generalized or attenuated from" the challenged trade practice and rejecting allegations of other acts because they "were not similar in kind to the deceptive practice at issue"); *In re Hughes*, 627 B.R. 327, 338 (Bankr. D.S.C. 2021) (holding SCUTPA claim failed where "Plaintiffs have not provided any evidence in the record demonstrating that any of the alleged conduct has potential for repetition or that the same kind of actions occurred in the past").

Finally, Plaintiff's reliance on the August 2025 recall notice fares no better. The Complaint describes a single recall request arising from a single fraud. Plaintiff does not allege that CFSB routinely handles recall notices in this manner or that similar incidents have occurred. A one-time allegation concerning a single recall request is insufficient to establish the potential for repetition SCUTPA requires. At most, Plaintiff alleges a single incident involving a single customer account, which is insufficient to demonstrate a realistic potential for repetition affecting the public interest.

## III. PLAINTIFF FAILS TO MEANINGFULLY REBUT THE MOTION'S UNJUST ENRICHMENT ARGUMENTS.

The Motion explains that Plaintiff fails to plausibly allege that it conferred a benefit upon CFSB, that CFSB retained Plaintiff's funds, or that any retention by CFSB would be inequitable. *See* Motion at 20-23. The Opposition does not cure these deficiencies.

Plaintiff quotes the elements of unjust enrichment, including the requirement of "[a] benefit conferred by plaintiff upon the defendant." *See* Opp. at 16. Yet Plaintiff identifies no benefit it conferred upon CFSB. Plaintiff's assertion that "unjust enrichment can also be shown when one party retains benefits or money which in justice and equity belong to another," *id.*, does not excuse it of the need to plead the conferral element. Plaintiff had no relationship with CFSB and directed no transactions to CFSB. Instead, Plaintiff relies on the downstream movement of funds through accounts associated with other parties. The absence of any direct relationship further reinforces that Plaintiff cannot recast downstream account activity involving another entity's customer relationship as a benefit conferred by Plaintiff on CFSB. Because the Complaint identifies no transaction, transfer, or interaction through which Plaintiff conferred a benefit on CFSB, it fails to plead a required element of unjust enrichment, and the claim should be dismissed.

Plaintiff also fails to rebut that CFSB did not retain the funds. The Complaint alleges the funds were converted to cryptocurrency and transferred off the Crypto.com platform. *See* Motion at 22 (discussing Complaint at ¶¶ 28-29). But the Opposition instead focuses on CFSB's alleged "retention of the revenue from the funds," including "exchange fees, account-related charges, or other transaction-based revenue." *See* Opp. at 16. That theory fails because it yet again improperly depends on treating alleged Crypto.com revenue as revenue retained by CFSB. *See* Complaint at ¶ 30 (alleging that "Crypto.com earned exchange-rate spread and fee revenue from the conversion of Plaintiff's stolen funds to XRP."); *see also id.* at ¶¶ 28-29 (alleging that Crypto.com received

and converted deposits). Moreover, any fees associated with Rivera's Crypto.com account would stem from Crypto.com's separate customer relationship with Rivera, not from any benefit conferred by Plaintiff. The Opposition does not address the Motion's argument that such fees were not conferred by Plaintiff, did not belong to Plaintiff, and did not become inequitable merely because Rivera allegedly later used the account in connection with a fraud. *See* Motion at 20-23. At most, Plaintiff speculates that CFSB indirectly received unidentified revenue associated with downstream account activity, which is insufficient to state a plausible unjust enrichment claim.

## IV. PLAINTIFF'S CONSTRUCTIVE TRUST THEORY FAILS AS A MATTER OF LAW.

Plaintiff's Opposition confirms, rather than cures, the deficiencies identified in CFSB's Motion with respect to Plaintiff's constructive trust claim. Plaintiff argues that CFSB "holds legal title to funds or assets which are traceable to Plaintiff's stolen funds, or to proceeds derived from those funds." *See* Opp. at 17. But that assertion is contradicted by Plaintiff's own allegations that the funds were converted to cryptocurrency and transferred off the platform. *See* Complaint at ¶¶ 28-30.

More critically, the Opposition concedes that Plaintiff cannot presently identify any traceable res held by CFSB, acknowledging that "it is not yet known whether the proceeds or funds are traceable to assets currently held by CFSB." *See* Opp. at 17. That admission is fatal. A constructive trust requires a specifically identifiable res to which the alleged funds can be traced. Plaintiff cannot preserve its claim based on speculation that discovery may someday reveal assets held by CFSB. Plaintiff's alternative argument—that its constructive trust count should be "preserved" as a form of equitable relief even if not a standalone cause of action, *see* Opp. at 17-18,—is unavailing because the underlying substantive claims fail for the reasons set forth above,

and a constructive trust cannot exist without a viable underlying claim. Accordingly, Plaintiff's constructive trust theory fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Community Federal Savings Bank respectfully requests that the Court grant its Motion to Dismiss Plaintiff's First Amended Complaint with prejudice and grant any such other relief in favor of Community Federal Savings Bank that this Court deems just and proper.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*
Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**
2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Community Federal Savings Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*