**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION,

*Plaintiff*,

v.

ALEXANDRIA NICOL RIVERA, *et al.*,

*Defendants*.
_____________________________________/

Civil Action No. 6:25-cv-12713-TMC-WSB

**DEFENDANT FORIS DAX, INC. D/B/A CRYPTO.COM'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Local Rule 7.07, Defendant Foris DAX, Inc. d/b/a Crypto.com ("Defendant" or "Crypto.com") replies to Plaintiff Allen Temple Community Economic Development Corporation ("Plaintiff" or "Allen Temple")'s Response in Opposition to Crypto.com's Motion to Dismiss (the "Opposition") [ECF No. 90] and in support of its Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [ECF No. 63].

## INTRODUCTION

This case arises from a business email compromise fraud in which Plaintiff was induced to wire $310,583.74 to a Citibank account controlled by Defendant ARGM Global LLC ("ARGM Global"). According to the Complaint, the funds were subsequently transferred through a second Citibank account controlled by Defendant Alexandria Rivera, and a portion was later deposited into Rivera's Crypto.com fiat wallet account. Crypto.com's connection to these events is extremely limited. Crypto.com is a cryptocurrency exchange that offers, among other products, a fiat wallet feature that allows users to deposit, withdraw, and convert fiat and digital assets. The Complaint

alleges that Rivera opened a Crypto.com account on or about August 5, 2024, more than a year before the events at issue. Over a year later, Rivera allegedly transferred funds from her personal Citibank account into her Crypto.com fiat wallet, converted those funds into cryptocurrency, and withdrew the cryptocurrency to external wallets outside of Crypto.com's control. The Complaint alleges only that a portion of the funds was deposited into Rivera's Crypto.com fiat wallet, and only after those funds had already passed through Citibank accounts allegedly controlled by ARGM Global and Rivera. Crypto.com did not operate the Citibank accounts that allegedly received Plaintiff's wire transfer or subsequent transfers. Crypto.com's alleged involvement was limited to providing the fiat wallet account that purportedly received a portion of the funds well after the underlying fraud had already occurred.

Unable to overcome Crypto.com's limited and wholly downstream connection to the alleged injury, Plaintiff's Opposition shifts focus to Crypto.com's purported onboarding procedures and Rivera's account-opening process, which occurred more than a year before the fraud at issue and is wholly unconnected to that fraud. The Opposition also appears to abandon Plaintiff's conversion claim against Crypto.com.[1] Even after narrowing its theories, however, Plaintiff still fails to plead facts sufficient to state any viable claim against Crypto.com. The Opposition does not cure the deficiencies identified in the Motion, and Plaintiff's claims remain unsupported by the Complaint and foreclosed by controlling law. The Motion should be granted in its entirety.

---

[1] The Opposition states that "Plaintiff withdraws its conversion claim against Cross River at this time." *See* Opp. at 13. Crypto.com believes that Plaintiff intended to state "against Crypto.com," but to the extent that Plaintiff does not abandon its conversion claim against Crypto.com, Crypto.com relies on the arguments raised in its Motion and reserves the right to further address any opposition arguments pertaining to that claim at a later stage. *See* Motion at 13-15.

## ARGUMENT

For the reasons set forth in Crypto.com's Motion and below, Plaintiff still fails to state a plausible SCUTPA claim, a viable unjust enrichment claim, and any basis for the imposition of a constructive trust, whether as a standalone cause of action or equitable remedy against Crypto.com.

### I. THE OPPOSITION STILL FAILS TO STATE A PLAUSIBLE SCUTPA CLAIM AGAINST CRYPTO.COM.

The Motion demonstrates that Plaintiff fails to state a SCUTPA claim because it does not plausibly allege (1) an unlawful trade practice by Crypto.com, (2) causation, or (3) an adverse impact on the public interest. *See* Motion at 6-15. The Opposition does not cure these deficiencies.

#### A. Plaintiff Cannot Identify An Actionable Unfair or Deceptive Trade Practice by Crypto.com.

Plaintiff's SCUTPA theory rests on allegations that: (1) Crypto.com maintained a sign-up process through which purported red flags, such as a name mismatch, could be "bypassed," and (2) that Crypto.com failed to investigate Rivera's account over a period of thirteen months—including during the twelve months preceding the alleged fraud—despite purportedly "clear evidence of consistent fraudulent activity." *See* Opp. at 9-10. Neither theory gives rise to an actionable unfair or deceptive trade practice under SCUTPA for several independent reasons.

First, Plaintiff's effort to recast an alleged KYC name mismatch as an intentional "bypass" mechanism does not transform a theoretical regulatory compliance issue into an actionable unfair trade practice. *See* Opp. at 9-10. In its Opposition, Plaintiff contends that Crypto.com's sign-up process and purported ability to override a name mismatch constitute an "intentional act" that is "completely separate from its regulatory obligations," while acknowledging that the purported "bypass mechanism" is the very foundation of its SCUTPA claim. *Id.* at 10. But the procedures Plaintiff challenges, including the name-matching and customer-verification protocols, exist to satisfy anti-money laundering and KYC regulatory requirements. Whether framed as an intentional

"bypass," a deficient screening process, or failure to follow internal policies, the alleged misconduct derives entirely from regulatory obligations owed to governmental authorities, not duties owed to non-customer third parties such as Plaintiff. As explained in Crypto.com's Motion, such alleged noncompliance with those regulatory requirements does not give rise to a private cause of action and cannot be repackaged as a SCUTPA claim. *See* Motion at 9-10. *See also Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) ("[T]here can be no duty of care arising out of the BSA's monitoring requirements.") (citing *Lusk v. Kellogg*, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) ("The Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank customer.")); *Douglas v. Trustmark Nat'l Bank*, 201 F. Supp. 3d 800, 807-08 (S.D. Miss. 2016) ("Courts addressing the issue have consistently held that the Bank Secrecy Act requiring such reports does not create a private right of action or establish a duty of care to private parties.") (citing *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009)); *Wiand v. Wells Fargo Bank, N.A.*, 2014 WL 1819616, at *6 (M.D. Fla. May 7, 2014) ("It is well-established that banks do not owe a duty of care to non-customers, and […] this longstanding principle cannot be overcome by the requirements of the BSA.").

Further to that point, Plaintiff is not a Crypto.com customer and alleges no customer-facing agreement, fiduciary relationship, or other special relationship with Crypto.com that would otherwise convert any alleged regulatory or program-level obligations into duties owed to Plaintiff. This deficiency also independently bars Plaintiff's SCUTPA claim. *See Britt v. Sorin Grp. Deutschland GMBH*, 690 F. Supp. 3d 538, 549 (D.S.C. 2023) (rejecting SCUTPA claim where a third party, rather than the plaintiffs, purchased the product at issue and the plaintiffs did not interact with or receive communications from the defendants regarding the alleged misconduct).

Second, Plaintiff's characterization of Rivera's account activity as a thirteen-month pattern of fraud is entirely conclusory. *See* Opp. at 2; *id.* at 10 (contending that Crypto.com "failed to conduct any investigation of Defendant Rivera's account over a period of thirteen (13) months, despite clear evidence of consistent fraudulent activity."). The Complaint alleges only that Rivera's Crypto.com account received wire transfers, converted funds into cryptocurrency, and transferred them to external wallets. *See* Complaint at ¶¶ 25-34. Plaintiff alleges no facts showing that those transactions were themselves fraudulent, suspicious, or otherwise indicative of any misconduct. At bottom, Plaintiff seeks to impose a duty on financial institutions to treat ordinary account activity as inherently suspicious—a duty South Carolina law does not recognize. *See* Motion at 11-12 (citing *Big Red Box, LLC v. Square, Inc.*, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002)).

Third, Plaintiff's attempt to distinguish *Nauful v. Navy Fed. Credit Union*, No. 3:23-CV-02357-JDA, 2025 WL 1836702 (D.S.C. July 3, 2025), is unavailing. Plaintiff argues that unlike in *Nauful*, where the financial institution attempted to protect its customer, Crypto.com "enabled its client to conduct fraud on others." *See* Opp. at 10. But Plaintiff mischaracterizes both cases. The court in *Nauful* did not hold that the bank's awareness of suspicious activity defeated the SCUTPA claim. Rather, it held that the plaintiff failed to identify any authority "establishing that a business's failure to refuse its customer's directions when the business suspects doing so might better serve the customer's interests amounts to an unfair trade practice." 2025 WL 1836702, at *4. That reasoning applies with even greater force here, where Plaintiff identifies no authority imposing a duty on a financial institution to refuse or override customer-directed transactions based on suspicions of fraud. Therefore, Plaintiff's theory rests on a duty that does not exist under South Carolina law.

**B. Plaintiff Still Fails to Plausibly Allege That Any Conduct by Crypto.com Caused Its Injury.**

The Opposition fails to establish causation. Plaintiff argues that absent a Crypto.com account, Rivera "would not have been able to complete her fraudulent scheme" because she needed a means of converting funds "into some other fungible asset." *See* Opp. at 11. But Plaintiff's own allegations demonstrate that the fraud had already occurred before any involvement by Crypto.com. Plaintiff wired $310,583.74 to an ARGM Global account at Citibank; Rivera then transferred approximately $300,000 through a separate personal Citibank account before sending a portion of those funds to her Crypto.com fiat wallet. *See* Complaint at ¶¶ 17-18, 24-29. Plaintiff's loss was complete when it wired funds to the allegedly fraudulent Citibank account—neither the Crypto.com account nor any subsequent transfer was necessary for that loss to occur.

Even accepting Plaintiff's allegation that Rivera needed "a method by which she could immediately convert the cash funds she received into some other fungible asset," *see* Opp. at 11, that allegation does not establish that Crypto.com played a necessary or unique role in the alleged scheme. Rivera could have used any number of financial institutions, cryptocurrency exchanges, or other asset-conversion services to accomplish that objective. Indeed, Plaintiff's own allegations indicate that Rivera did utilize multiple other entities in connection with the movement of funds. The Complaint further alleges that only a portion of the funds stolen from Plaintiff was ultimately transferred to an account associated with Crypto.com, underscoring that Crypto.com was merely one of several downstream entities allegedly involved and not an essential participant in the purported scheme. *See, e.g.,* Complaint at ¶¶ 6-7 (alleging that only "$112,400.00 of Plaintiff's stolen funds" was deposited into Rivera's Crypto.com account and that "Cross River received at least $210,000.00 in wire transfers originating from Plaintiff's stolen funds"). Plaintiff therefore fails to allege facts showing that its loss is attributable to any conduct unique to Crypto.com.

Further, the mere movement of funds through an account associated with Crypto.com—after the fraud was accomplished and after funds had passed through multiple third-party accounts—does not plausibly establish causation. As the Motion explains, and as the Opposition does not meaningfully dispute, Plaintiff's alleged loss occurred when it transferred funds to ARGM Global's Citibank account, well before Crypto.com allegedly became involved. *See* Motion at 10. Because the Complaint alleges only that a portion of the funds later passed through a Crypto.com account and were subsequently converted into cryptocurrency after Plaintiff's injury had already occurred, Plaintiff cannot plausibly allege that any act or omission by Crypto.com caused its claimed injury. *See Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (rejecting SCUTPA claim where the alleged misconduct did not change plaintiff's economic position and therefore caused no ascertainable loss).

To the extent Plaintiff seeks leave to amend its causation allegations, *see* Opp. at 11, that request should be denied because the defect is not a factual gap—it is a legal one: Plaintiff's own allegations foreclose a causal connection to Crypto.com as a matter of law.

**C. Plaintiff Still Does Not Plausibly Allege Any Adverse Impact on the Public Interest.**

Crypto.com's Motion explained that Plaintiff failed to identify any Crypto.com policy or practice creating a plausible potential for repetition. *See* Motion at 11-13. In response, Plaintiff merely repackages the same allegations discussed above, namely that Crypto.com created a "bypass mechanism to ignore name mismatches" and failed to recognize a purported "thirteen-month pattern of fraud." *See* Opp. at 11-12. None of these allegations plausibly establishes an adverse impact on the public interest.

As a threshold matter, Plaintiff's allegation that Crypto.com maintained processes that purportedly "bypass" certain name mismatches is wholly disconnected from the conduct at issue and fails to identify any specific practice with a relevant potential for repetition. Plaintiff does not,

and cannot, plausibly allege that any purported name mismatch played any role in, facilitated, or otherwise contributed to the alleged fraud scheme, which occurred approximately one year after Crypto.com allegedly bypassed Rivera's name mismatch during account opening. *See* Complaint at ¶ 27. By Plaintiff's own allegations, Rivera opened her Crypto.com account more than a year before the fraud occurred. *Id.* Those allegations confirm that the purported name mismatch was temporally and factually disconnected from the alleged fraud and cannot have had any plausible role in causing Plaintiff's injury. They further underscore that the fraud allegedly operated through bank accounts that were wholly independent of Crypto.com, including ARGM Global's Citibank account, which Plaintiff alleges Rivera used to perpetrate the fraud. *See id.* at ¶ 21-24.

Plaintiff's assertion that Crypto.com's conduct demonstrates "not only… the *potential* for repetition, but *actual* repetition," *see* Opp. at 12, is likewise unsupportable by the pleaded facts. As explained in Crypto.com's Motion, the Complaint identifies only a single Crypto.com customer account and alleges no facts showing that the challenged sign-up processes or purported bypass mechanism were used in connection with any other account, much less that it resulted in harm to any other person. *See* Motion at 11-13. Nor does Plaintiff allege any comparable past incidents, recurring conduct, or facts suggesting that the challenged practice has occurred more than once or is likely to occur again.

Plaintiff's attempt to distinguish *Ethox Chemical* fares no better. Plaintiff argues that, unlike in *Ethox Chemical*, it has identified "specific procedures and business practices" through its allegations concerning the purported bypass mechanism. *See* Opp. at 12. But even assuming those allegations identify a particular practice, Plaintiff ignores two critical defects that the *Ethox Chemical* court found fatal: (1) the absence of allegations demonstrating a potential for repetition; and (2) the absence of allegations showing any impact beyond the parties before the court. *See*

Motion at 12; *Ethox Chemical*, 2013 WL 41001, at *3 (dismissing with prejudice SCUTPA claim and noting "that the outcome of this case will affect only the parties and not the broader public"); *see also Bessinger v. Food Lion, Inc.,* 305 F.Supp.2d 574, 581 (D.S.C. 2003) ("Conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim."). The same defects are present here. Plaintiff alleges only a single purported bypass involving a single customer account and a single alleged fraud incident that allegedly occurred more than a year later. Plaintiff does not allege that the purported bypass mechanism was used with respect to other customers, that similar incidents occurred with respect to other Crypto.com accounts, or that anyone other than Plaintiff was affected by the challenged conduct.

Accordingly, Plaintiff's allegations are insufficient to establish the public impact or potential for repetition required under SCUTPA, as Plaintiff's theory rests on allegations that are both untethered to the conduct that allegedly caused its injury and unsupported by any facts suggesting recurring or repeat conduct. *See, e.g.,* Motion at 12 (citing *Ethox Chemical, LLC v. Coca-Cola Co.*, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013)); *PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x 237, 243 (4th Cir. 2017) (affirming dismissal of SCUTPA claim where allegations of public impact were "too generalized or attenuated from" the challenged trade practice and rejecting allegations of other acts because they "were not similar in kind to the deceptive practice at issue"); *In re Hughes*, 627 B.R. 327, 338 (Bankr. D.S.C. 2021) (holding that SCUTPA claim failed where "Plaintiffs have not provided any evidence in the record demonstrating that any of the alleged conduct has potential for repetition or that the same kind of actions occurred in the past").

## II. PLAINTIFF FAILS TO MEANINGFULLY REBUT THE MOTION'S UNJUST ENRICHMENT ARGUMENTS.

The Motion explains that Plaintiff fails to plausibly allege that it conferred a benefit upon Crypto.com, that Crypto.com retained Plaintiff's funds, or that any retention by Crypto.com would be inequitable. *See* Motion at 15-19. The Opposition does not cure these deficiencies.

Plaintiff quotes the elements of unjust enrichment, including the requirement of "[a] benefit conferred by plaintiff upon the defendant." *See* Opp. at 13. Yet Plaintiff identifies no benefit it conferred upon Crypto.com. Plaintiff's assertion that "unjust enrichment can also be shown when one party retains benefits or money which in justice and equity belong to another," *id.* at 14, does not excuse it from the need to plead the conferral element. Plaintiff had no relationship with Crypto.com and directed no transactions to Crypto.com. Instead, Plaintiff relies on the downstream movement of funds through accounts associated with other parties. Because the Complaint identifies no transaction, transfer, or interaction through which ***Plaintiff*** conferred a benefit on Crypto.com, it fails to plead a required element of unjust enrichment, and the claim should be dismissed on that basis.

Plaintiff likewise fails to rebut Crypto.com's argument that it did not retain the funds at issue. The Complaint affirmatively alleges that the funds deposited into Rivera's Crypto.com account were converted into cryptocurrency and withdrawn to external wallet addresses outside Crypto.com's control. *See* Complaint at ¶¶ 28-29. As the Motion explained, those allegations foreclose any plausible inference that Crypto.com retained Plaintiff's funds. *See* Motion at 17-18. The Opposition nevertheless repeats the conclusory allegation that "Crypto.com's retention of the revenue from the funds without paying restitution to Plaintiff is unjust," without meaningfully addressing the Motion's explanation that the Complaint concedes the funds were transferred off the platform and therefore were not retained by Crypto.com. *See id.;* Opp. at 14.

Plaintiff also points to its allegation that “Crypto.com retained fees, spreads or other financial benefits” associated with the transactions. *See* Opp. at 14. But that theory fails for the reasons set forth in the Motion and left unrebutted in the Opposition. *See* Motion at 17-19. Any such fees or revenues would arise, if at all, from Crypto.com’s separate customer relationship with Rivera and the services provided to her account, not from any benefit conferred or retained by Plaintiff. At most, Plaintiff speculates that Crypto.com indirectly received unidentified revenue associated with downstream account activity, which is insufficient to state a plausible unjust enrichment claim.

## III. PLAINTIFF’S CONSTRUCTIVE TRUST THEORY FAILS AS A MATTER OF LAW.

Plaintiff’s Opposition confirms, rather than cures, the deficiencies identified in Crypto.com’s Motion with respect to Plaintiff’s constructive trust claim. Plaintiff argues that Crypto.com "holds legal title to funds or assets which are traceable to Plaintiff's stolen funds, or to proceeds derived from those funds." *See* Opp. at 15 (citing Complaint at ¶ 74). But that assertion is contradicted by Plaintiff's own allegations that the funds were converted to cryptocurrency and transferred off the platform. *See* Complaint at ¶¶ 28-30.

More critically, the Opposition concedes that Plaintiff cannot presently identify any traceable res held by Crypto.com, acknowledging that "it is not yet known whether the proceeds or funds are traceable to assets currently held by Crypto.com." *See* Opp. at 15. That admission is fatal. A constructive trust requires a specifically identifiable res to which the alleged funds can be traced. Plaintiff cannot preserve its claim based on speculation that discovery may someday reveal assets held by Crypto.com. Thus, whether framed as a form of equitable relief or a standalone cause of action, Plaintiff’s constructive trust theory fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Foris DAX, Inc. d/b/a Crypto.com respectfully requests that the Court grant its Motion to Dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Jonathan M. Milling*

Jonathan M. Milling (Fed. ID No. 7754)
**MILLING LAW FIRM, LLC**
2910 Devine Street
Columbia, South Carolina 29205
Tel: (803) 451-7700
Fax: (803) 451-7701
jmm@millinglaw.net

Charles Throckmorton (*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 482-8400
charles.throckmorton@foley.com

*Counsel for Foris DAX, Inc. d/b/a Crypto.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, causing a copy to be served on counsel for all parties who have appeared in this case and are registered CM/ECF users.

*/s/ Jonathan M. Milling*