**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

ALLEN TEMPLE COMMUNITY
ECONOMIC DEVELOPMENT
CORPORATION,

*Plaintiff,*

v. Civil Action No. 6:25-cv-12713-TMC-WSB

ALEXANDRIA NICOL RIVERA, et al.,

*Defendants.*

_______________________________________/

**DEFENDANT CROSS RIVER BANK'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.07 (D.S.C.), Defendant Cross River Bank ("Defendant" or "Cross River") replies to Plaintiff Allen Temple Community Economic Development Corporation's ("Plaintiff") Response in Opposition to Defendant Cross River Bank's Motion to Dismiss (the "Opposition") [ECF No. 89] and in support of its Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [ECF No. 83].

## INTRODUCTION

Cross River has no meaningful connection to the events at issue in this lawsuit. Plaintiff alleges it was induced to wire $310,583.74 to a Citibank account – not an account with Cross River – controlled by Defendant ARGM Global LLC ("ARGM"). According to the First Amended Complaint ("FAC"), the funds were subsequently transferred through a second Citibank account controlled by Defendant Alexandria Nicol Rivera ("Rivera"), and Rivera then distributed those funds in a series of outgoing wire transfers to multiple financial institutions. Plaintiff alleges Cross River was one of those institutions. None of this is sufficient to state a claim against Cross River.

Cross River is not alleged to have initiated or solicited any transaction with Plaintiff. It is not alleged to have communicated with Plaintiff. It is not alleged to have operated any of the

Citibank accounts through which Plaintiff's funds passed. It is not alleged to have any customer relationship with Plaintiff, any involvement in the fraud scheme, or any connection to any of the other defendants' conduct. Its only alleged link is a transfer (initiated in Florida) of funds by Rivera into an account at Cross River.

Moreover, this Court lacks personal jurisdiction over Cross River. Cross River is a New Jersey (not South Carolina) state-chartered bank with its principal office at 2114 Linwood Ave, Fort Lee, New Jersey. It is not alleged to have any offices, branches, employees, or agents in South Carolina. Its sole alleged involvement in this matter is that it allegedly received about $210,000 in incoming wire transfers on August 13–14, 2025 – which is five to six days after Plaintiff's funds were stolen – initiated by Rivera from her personal Citibank account in Florida to a Cross River account.

For the reasons set forth in Cross River's Motion and below, Plaintiff still fails to establish: (1) personal jurisdiction over Cross River; (2) a plausible SCUTPA claim; (3) a viable unjust enrichment claim; and (4) any basis for a constructive trust as either a standalone cause of action or equitable remedy against Cross River. As a result, the Court should grant Cross River's Motion.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Cross River, and Jurisdictional Discovery Would Not Uncover a Basis for Jurisdiction.

In its Motion, Cross River demonstrated that this Court lacks both general and specific personal jurisdiction over Cross River. (*See* Motion at 5–11). In response, Plaintiff does not argue that the Court has general jurisdiction over Cross River. Plaintiff argues that specific jurisdiction exists, but it is incorrect for the reasons discussed below.

#### *A. Plaintiff Fails to Identify Any Conduct by Cross River Purposefully Directed at South Carolina.*

To show that Cross River is subject to personal jurisdiction in South Carolina, Plaintiff was required to allege facts showing: (1) that Cross River "purposefully availed itself of the privilege of conducting activities in the State[;]" (2) that Plaintiff's claims "arise out of those activities directed at the State[;]" and (3) that the exercise of personal jurisdiction "would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). As Cross River argued in its Motion, none of these elements are satisfied. Plaintiff ignores the second and third elements in its Opposition.

1. Plaintiff has not alleged Cross River purposefully availed itself of the privilege of conducting activities in South Carolina.

As to the first element, Plaintiff has failed to allege facts showing that Cross River "purposefully availed itself of the privilege of conducting activities in the State[.]" Plaintiff's argument otherwise relies on the following allegations: (a) its allegations that Rivera committed a fraud that "aimed squarely at South Carolina" (Opp. at 4; *see also* FAC ¶¶ 14-20); (b) its allegation that Cross River "receive[d] at least $210,000" of Plaintiff's funds (Opp. at 4; *see also* FAC ¶ 54); and (c) its allegation that it "regularly conduct[s] and solicit[s] business in South Carolina[.]" None of these allegations satisfy the first element of specific jurisdiction:

Plaintiff's allegations that Rivera committed a fraud "aimed squarely at South Carolina" are completely irrelevant. The issue is whether Cross River, not Rivera, conducted activities in South Carolina.

Plaintiff's allegations that Rivera transferred some of the allegedly stolen funds to an account at Cross River are similarly irrelevant. Receiving money in New Jersey does not amount to "conducting activities" in South Carolina. Plaintiff tries to get around this fundamental problem by pointing to its allegation that Cross River received the funds "without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds[.]"

(*See* Opp. at 4; *see also* FAC ¶ 54). According to Plaintiff, under *Calder v. Jones*, 465 U.S. 783 (1984), "jurisdiction is proper where a defendant's conduct is intentionally directed at the forum and causes injury there, and the Fourth Circuit applies *Calder* where a defendant's conduct causes harm in the forum that the defendant knew would be felt there." (Opp. at 4).

Plaintiff's invocation of *Calder* does not make sense and should be rejected. The *Calder* effects test requires that "the defendant expressly aimed his tortious conduct at the forum." *Consulting Eng'rs*, 561 F.3d at 280; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum state.") (internal quotations omitted). Plaintiff's allegations regarding the transfer of funds to a Cross River account do not satisfy this test: (1) Plaintiff does not (and cannot) allege that Cross River designed its "fraud detection or account monitoring" systems with an eye toward South Carolina; (2) Plaintiff does not (and cannot) allege that Cross River knew when it designed its "fraud detection or account monitoring" systems that Plaintiff would feel harm from them in South Carolina; (3) Plaintiff does not allege conduct at all, it alleges *lack* of conduct – the failure to freeze an account; and (4) Plaintiff does not allege that Cross River somehow directed its supposed failure to freeze the account (funded with a transfer from a Florida bank account) at South Carolina.

Also, (5), Plaintiff's reliance on its South Carolina residence and the location of injury runs headlong into the Supreme Court's ruling in *Walden*, which holds that "it is the ***defendant's*** conduct that must form the necessary connection with the forum State." 571 U.S. at 285. Plaintiff is unable to do more than argue that fraudsters targeted a South Carolina entity and that injury was felt there, which is insufficient to establish jurisdiction. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020) (declining to find that South Carolina court had jurisdiction over Marriott simply because the plaintiff was injured there and less than 2% of Marriott's branches were located

there). It is unable to point to any specific conduct by Cross River that targeted South Carolina specifically. Under *Walden*, "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285.

Finally, Plaintiff's allegation that Cross River "regularly conduct[s] and solicit[s] business in South Carolina" cannot satisfy the first element of personal jurisdiction, either. This allegation is just a formulaic recitation of the first element of specific jurisdiction, and it is therefore irrelevant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…."). The law is clear that Plaintiff must identify <u>specific facts</u> in its FAC to establish personal jurisdiction. *See Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012) ("A court, however, need not credit conclusory allegations or draw farfetched inferences. A plaintiff must also base his claim for personal jurisdiction on specific facts set forth in the record.") (internal quotations and citations omitted).

2. <u>Plaintiff's claims do not arise out of Cross River's alleged "business in South Carolina</u>."

Plaintiff's vague and conclusory allegation that Cross River "regularly conduct[s] and solicit[s] business in South Carolina" is insufficient to satisfy the first element of personal jurisdiction for the reasons discussed above. Even if Plaintiff had alleged actual facts supporting the idea that Cross River "regularly conduct[s] and solicit[s] business in South Carolina[,]" however, it would not matter because Plaintiff does not allege how its claims are connected to that business. Plaintiff ignores this requirement entirely in its Opposition.

3. <u>The exercise of personal jurisdiction would not be "constitutionally reasonable."</u>

Finally, the exercise of personal jurisdiction over Cross River would not be constitutionally reasonable for the reasons outlined in Cross River's Motion. (*See* Motion at 7). Plaintiff does not dispute this in its Opposition.

***B. Plaintiff Identifies No Basis for Jurisdictional Discovery.***

Plaintiff's alternative request for jurisdictional discovery should be denied. (*See* Opp. at 5). Neither the FAC nor the Opposition identifies any disputed jurisdictional fact or explains what discovery could reveal to establish personal jurisdiction over Cross River. That is insufficient. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 716 (4th Cir. 2002) (affirming denial of request for jurisdictional discovery where plaintiff offered only "conclusory allegations in support of its request"); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery").

No amount of discovery can change the fact that Plaintiff is the only party with any kind of meaningful relationship with South Carolina, and that Rivera is the only entity who can reasonably be argued to have directed her actions at South Carolina. Because Plaintiff identifies no missing fact that, if proven, would establish personal jurisdiction, jurisdictional discovery is unwarranted.

**II. <u>The FAC Fails to State a Claim Against Cross River Under SCUTPA.</u>**

As Plaintiff identifies in the FAC and its Opposition, there are three elements it must allege to successfully plead a SCUTPA claim: (1) an unfair or deceptive act in the conduct of trade or commerce, (2) that affected the public interest, and (3) monetary or property loss as a result. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 337, 732 S.E.2d 166, 174 (S.C. 2012). Once

more, Plaintiff's FAC does not allege specific facts supporting these elements, and the Opposition does not save it.

### *A. The FAC Fails to Allege an Unfair or Deceptive Act in the Conduct of Trade or Commerce.*

Plaintiff's FAC alleges that Cross River committed an "unfair or deceptive act" under South Carolina statute by "receiving at least $210,000 in wire transfers on August 13 and 14, 2025, funds originating directly from Plaintiff's stolen proceeds, without implementing adequate fraud detection or account monitoring sufficient to identify and freeze the incoming proceeds of a reported BEC fraud scheme." (FAC ¶ 55). This allegation cannot satisfy the first element of a SCUTPA claim.

Plaintiff alleges that the funds transferred were the proceeds of a "reported BEC fraud scheme" but this is misleading. The FAC does <u>not</u> actually allege that the fraud was reported to *Cross River*, or that it was otherwise aware of the fraud. Merely stating that the fraud was "reported" does not establish that it was reported to Cross River, or when. Indeed, Plaintiff does not even attempt to allege that the transfer to the Cross River account was itself fraudulent or suspicious. Cross River had no duty to freeze the account, despite Plaintiff's suggestion otherwise. *See Big Red Box, LLC v. Square, Inc.*, 2020 WL 465928, at *9 (D.S.C. Jan. 22, 2020) (the "mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers."); *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.") (citing cases).

Moreover, Plaintiff is essentially arguing that Cross River failed to comply with regulations promulgated pursuant to, for example, the Bank Secrecy Act. But any such duties owed by Cross

River are owed to the government, not to Plaintiff. *See, e.g.*, *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) ("[T]here can be no duty of care arising out of the BSA's monitoring requirements.").

### B. Even if the FAC Were to Identify an Unfair Act, It Does Not Establish the Act's Effect on the Public Interest.

Even if the FAC alleged an unfair or deceptive act – in essence, Cross River's failure to freeze the account – it fails to establish how that alleged failure could and would happen again. "An unfair or deceptive trade practice has an impact upon the public interest if it has the potential for repetition." *Bessinger v. Food Lion, Inc.,* 305 F. Supp. 2d 574, 584 (D.S.C. 2003), aff'd sub nom. Bessinger v. Food Lion, LLC, 115 F. App'x 636 (4th Cir. 2004) (citing *York v. Conway Ford,* 325 S.C. 170 (S.C. 1997). The Opposition merely restates the conclusion from the FAC: that BEC fraud is "systemic" and therefore, Cross River's unspecified fraud detection policies would "treat the next victim similarly." (Opp. at 7). Plaintiff is effectively saying that because Cross River allegedly did not catch fraud in this instance, it will fail to catch fraud in future instances.

Plaintiff relies on *Daisy Outdoor Advertising Company, Inc. v. Abbott* to claim that it does not need to "show that the conduct adversely affected the public at large" (Opp. at 7), but instead, can offer "evidence of a potential for repetition," 322 S.C. 489, 496-97 (S.C. 1996). But as an initial matter, the FAC does not identify the "evidence" that *Daisy* requires – just a recitation that Cross River's systems will fail to detect and stop fraud in the future. *Daisy* requires a showing that the challenged conduct itself has a "potential for repetition," not a statement that fraud generally is recurring.

Additionally, neither the FAC nor the Opposition explains how the "unfair" conduct affected a person or entity other than Plaintiff. The FAC identifies a single incident involving two wire transfers to a single Cross River account over a two-day window – nothing more. It does not

allege that Cross River's institutional account monitoring procedures have ever been at issue in any other transaction, that similar incidents have occurred with respect to other Cross River accounts, or that anyone other than Plaintiff was affected. Neither the FAC nor the Opposition identify any Cross River-specific policy, practice, or procedure with a potential for repetition. Instead, Plaintiff speculates that Cross River's systems failed to detect that a transaction involved funds that previously had been obtained through fraud, and then expects this Court to extrapolate that it will fail to do so in every case of BEC fraud. These allegations are not enough to satisfy SCUTPA's second element. *See PTA-FLA, Inc. v. ZTE Corp.*, 715 F. App'x 237, 243 (4th Cir. 2017) (affirming dismissal where allegations of public impact were "too generalized or attenuated from" the challenged trade practice); *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 455, 814 S.E.2d 643, 655 (S.C. Ct. App. 2018) (potential for repetition must be shown by evidentiary support, not "the mere allegations in [the plaintiff's] complaint"); *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992) ("South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects.").

***C. Plaintiff Has Not Alleged Causation.***

The FAC offers nothing more than a single assertion to establish the element of causation under SCUTPA: "[a]s a direct and proximate result of the Defendants' unfair and deceptive acts or practices, Plaintiff suffered actual damages of $310,583.74." (FAC ¶ 56). The Opposition does not even try to claim that the FAC offers any kind of factual support for this proposition. Instead, it continues with Plaintiff's strategy to revise the allegations in the FAC by arguing that "Cross River's failure to detect and freeze a substantial share of the stolen proceeds…enabled the

permanent dissipation of those funds." (Opp. at 7). However, this revision is still not enough to successfully plead the element of causation.

Putting aside the fact that both the FAC and the Opposition are bereft of specific facts, Plaintiff misunderstands the concept of proximate cause. The Fourth Circuit defines proximate cause as "that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009); *see also Singleton v. Sherer,* 377 S.C. 185, 203 (S.C. Ct. App. 2008) ("Proximate cause is the efficient, or direct, cause – the thing which brings about the injuries complained of.") (citing *Hughes v. Children's Clinic, P.A.,* 269 S.C. 389, 398 (S.C. 1977). The superseding intervening cause of Plaintiff's loss was, of course, Rivera's actions, meaning that the chain of causation was broken by the time any funds reached a Cross River account. Additionally, Plaintiff does not (and cannot) allege in either the FAC or the Opposition that but-for Cross River's allegedly insufficient institutional practices, it would have been able to recover its funds. Nothing Cross River did or failed to do on August 13–14 could have prevented the loss that was already complete by August 8.

Plaintiff should not be permitted to again amend its complaint to attempt to establish causation. There are no additional facts Plaintiff can allege that would overcome the legal issue that Cross River was not the direct result or proximate cause of its loss. Indeed, Plaintiff has not even attempted to describe what additional facts it would include in yet another amended pleading. (Opp. at 7-8).

## III. <u>The FAC Fails to State a Claim for Unjust Enrichment.</u>

"To recover for unjust enrichment, a plaintiff must show three elements: (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value

from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 687 (D.S.C. 2021). None of these elements is satisfied.

First, and again, Plaintiff does not allege that it conferred any benefit on Cross River. To the extent any benefit has been conferred on Cross River, the FAC makes it clear that Rivera, not Plaintiff, conferred that benefit. (FAC ¶¶ 61-62). Plaintiff argues that it does not matter who conferred the benefit by quoting *Inglese v. Beal*, 403 S.C. 290, 297 (S.C. Ct. App. 2013), which states that "[a] party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." (*See* Opp. at 8). This is an accurate quote from *Inglese*, but Plaintiff omits that in the very next sentence, *Inglese* clarifies that for a plaintiff to "recover restitution in the context of unjust enrichment[,]" it must show that "he conferred [the] non-gratuitous benefit on the defendant[.]" *Inglese*, 403 S.C. at 297 (emphasis added). Because the FAC identifies no transaction, transfer, or interaction through which Plaintiff conferred a benefit on Cross River, it fails to plead a required element of unjust enrichment, and the claim should be dismissed on that basis.

Second, Plaintiff has not alleged that Cross River realized some value from the benefit which it would be inequitable for Cross River to retain. And it cannot make such an allegation. Again, it is not unjust to receive one's "regular rate[]" in exchange for a service rendered. *See Atherton v. Tenet Healthcare Corp.*, 2005 WL 7084013, at *6 (S.C. Ct. App. May 25, 2005). Plaintiff does not allege that Cross River received anything other than its "regular rate" in connection with the transfer of funds into an account at Cross River.

Finally, Plaintiff's invocation of Rule 8(d)(2) is without merit. The issue is whether there exists an "adequate remedy at law[,]" *see, e.g.*, *Milliken & Co. v. Morin*, 386 S.C. 1, 8 (S.C. Ct.

App. 2009), not whether Plaintiff's "*legal claims*" – which are distinct from the remedy sought – will "ultimately provide [that] remedy" as Plaintiff suggests. (Opp. at 9). Plaintiff alleges that it lost $310,583.74, and it can thus be made whole via damages in the amount of $310,583.74. So, its claim for an equitable remedy must be dismissed now. Plaintiff's suggestion that its claim for an equitable remedy can only be dismissed if it later wins on the merits of its claims for damages is simply incorrect. *See Carolina Park Assocs., LLC v. Marino*, 400 S.C. 1, 8 (S.C. 2012) (dismissing claim for constructive trust on a motion to dismiss because the plaintiff sought money damages and "stated no reason why this relief [would be] inadequate[.]").

## IV. <u>Plaintiff's Constructive Trust Theory Fails as a Matter of Law.</u>

Plaintiff's Opposition confirms, rather than cures, the deficiencies identified in Cross River's Motion with respect to Plaintiff's constructive trust claim. Plaintiff argues that Cross River "hold[s], or ha[s] held, legal title to funds or assets traceable to Plaintiff's stolen funds, or to proceeds derived from those funds." (*See* Opp. at 9 (citing FAC ¶ 74)). But elsewhere, the FAC clarifies that the funds are no longer in an account at Cross River. Indeed, the central allegation against Cross River is that Cross River failed to "freeze the incoming proceeds[.]" (FAC ¶ 54). This allegation is fatal to Plaintiff's attempt to seek a constructive trust. To seek a constructive trust, Plaintiff must be able to allege that its funds are traceable to a res in Cross River's possession. *See In re Stevenson*, 668 B.R. 366, 377 (Bankr. D.S.C. 2025) ("In order to maintain a claim for constructive trust, the plaintiff must be able to trace the funds into the res at issue."). Plaintiff has not alleged that its funds remain at Cross River, or that they were converted into some other res held by Cross River. It alleges instead that the funds left the account at Cross River.

Plaintiff also argues that although fraud is "generally an element, '[a]ctual fraud is not necessary[.]'" (Opp. at 9 (quoting *Bank of Williston v. Alderman*, 106 S.C. 386 (S.C. 1917))).

Plaintiff omits to mention that the 1917 case it relies on, *Bank of Williston*, held that "fraud, actual or constructive" is an "essential element" of a constructive trust. 106 S.C. at 386 (emphasis added). Plaintiff has not even attempted to plead a claim against Cross River for actual "or constructive" fraud. Nor has Plaintiff attempted to plead the other claims that can give rise to a constructive trust, such as "bad faith, abuse of confidence, or violation of a fiduciary duty." *See Lollis v. Lollis*, 291 S.C. 525, 529 (S.C. 1987). For all of these reasons, its "claim" for a constructive trust must be dismissed.

## CONCLUSION

For the reasons discussed above, Defendant Cross River Bank respectfully requests that the Court grant its Motion to Dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

*/s/ Rivers S. Stilwell*

Rivers S. Stilwell (Fed. ID No. 6271)
Claire K. Atwood (Fed. ID No. 14466)
**MAYNARD NEXSEN PC**
104 Main Street South, Suite 900
Greenville, South Carolina 29601
Telephone: 864.370.2211
rstilwell@maynardnexsen.com
catwood@maynardnexsen.com

*Attorneys for Defendant Cross River Bank*

August 6, 2026
Greenville, South Carolina

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of the foregoing document to all counsel of record via CM/ECF and all Pro Se Parties by pre-addressed, postage paid United States Mail, as follows:

**PRO SE PARTIES SERVED:**

Alexandria Nicol Rivera
25064 SW 107th Ave.
Homestead, FL 33032

*/s/ Rivers S. Stilwell*
Attorney for Cross River Bank

August 6, 2026